**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| JIM and BECKY McGAFFIN; | ) | |
| RACHALE and NATHAN LaVOIE; and | ) | |
| DANIEL and STEFANIE NUNN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: _____ |
| | ) | |
| CEMENTOS ARGOS S.A.; | ) | |
| ARGOS USA CORP.; | ) | **JURY TRIAL REQUESTED** |
| ARGOS CEMENT, LLC; and | ) | |
| ARGOS READY MIX LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Jim and Becky McGaffin ("McGaffins"), Rachale and Nathan LaVoie ("LaVoies"), and Daniel and Stefanie Nunn ("Nunns") file this Class Action Complaint alleging that Defendants Cementos Argos S.A., Argos USA Corp., Argos Cement, LLC, and Argos Ready Mix LLC, (collectively "Argos"), a designer, manufacturer, seller, and supplier of concrete, has breached certain duties and otherwise violated State law resulting in property damage. Plaintiffs seek relief on behalf of themselves and all others similarly situated.

## INTRODUCTION

The Plaintiffs in this action are homeowners. Their real property and personal property have been damaged by Defendant Argos's negligence.

1

Defendant Argos designed, manufactured, sold, and supplied concrete that has failed and is failing, which failure has proximately caused damage to Plaintiffs' houses (real property) and the contents of their houses (personal property, e.g., furniture, drapes, electronics, etc.). Argos designed, manufactured, sold, and supplied negligently designed and manufactured concrete for at least 250 homes in Georgia (and other states) over the relevant period.

Generally, concrete is a composite material made up of a filler (aggregate) and a binder (cement paste made of cement and water) which together form a synthetic conglomerate used in buildings, including in residential homes, as foundations, footings, garages, driveways, walkways and patios. Concrete also can include supplementary cementitious materials which contribute to the properties of hardened concrete through hydraulic and/or pozzolanic activity. Such supplementary cementitious materials ("SCM") include fly ash, silica fume, calcine clay and shale, volcanic ash, and granulated blast furnace slag. The Argos concrete used in the foundations, footings, garages, driveways, walkways, patios, and other areas of the Plaintiffs' houses, and hundreds of other houses, is defective and the defect arises from Argos's use of insufficient amounts of cement and/or too much fly ash and/or too much Class C fly ash in its concrete product. Wherefore, Argos's conduct with respect to its design, manufacture, sale and supplying of its concrete product gives rise to the claims herein.

2

Fly ash is a by-product of burning coal.  It is the residue carried from the burning zone by flue gases, then collected by mechanical or electrostatic separators.  Fly ash is a pozzolanic material that can, if the calcium content is high enough, also display cementitious or hydraulic behavior.  When mixed with cement and water, fly ash will react to produce various calcium-silicate hydrates and calcium-aluminum hydrates.

Calcium content is one indicator of how fly ash will behave in concrete.  Other content indicators include alkalis, carbon and sulfate.  Low calcium fly ash, produced from burning anthracite or bituminous coal, is usually labelled Class F fly ash, and exhibits only pozzolanic behavior.  Higher calcium fly ash, produced from burning lignite or sub-bituminous coal, is usually labelled Class C fly ash, and exhibits both pozzolanic and hydraulic behaviors.

The use of a good quality fly ash can reduce the water demand of concrete.  A well-proportioned fly ash concrete mixture can have improved workability and can increase the cohesiveness and reduce segregation of concrete.  These benefits will only be realized in properly-proportioned concrete, both in design and manufacture.  The fresh properties of concrete are influenced by the proportions of various ingredients in the mixture, including the type and amount of cementing material, water content, grade of aggregate, presence of entrained air and any chemical admixtures.  The properties of fresh concrete and the mechanical

properties and durability of hardened concrete are strongly influenced by the incorporation of fly ash into the mixture, and the extent of such influence depends on the class level and composition of fly ash, as well as the composition and proportions of other ingredients in the mixture.

The concrete designed, manufactured, sold, and supplied by Defendant Argos and used in Plaintiffs' homes contains fly ash, which in and of itself is not a defective design.  There is an optimum ratio of fly ash to cement to produce a concrete mixture that will maximize the technical, environmental, and economic benefits of fly ash without significantly impacting the rate of construction or impairing the long-term performance of the finished product.  However, a poorly proportioned concrete mixture, i.e., insufficient cement with too much or the wrong class fly ash, will not set and harden properly.

The concrete designed, manufactured, sold, and supplied by Argos for use in Plaintiffs' properties and houses contained inappropriate proportions of cement and fly ash.  The use of this negligently designed and manufactured product meant the poured concrete did not set, harden or otherwise perform properly and created a fine silicate dust, causing structural damage to Plaintiffs' homes and property, and causing damage to other personal property that is constantly coated with this fine dust.

## PARTIES, JURISDICTION AND VENUE

1.      Jim and Becky McGaffin own their home at 412 Lion's Den Drive, Pooler, Chatham County, Georgia 31322.  They purchased their home on or about September 27, 2013, from Beazer Homes for $175,000.00.  Argos Ready Mix Concrete was used in the foundation, driveway, garage, and patio areas.  The McGaffins are and at all pertinent times have been residents of the State of Georgia.

2.      Rachale and Nathan LaVoie own their home at 410 Lion's Den Drive, Pooler, Chatham County, Georgia 31322.  They purchased their home on or about March 10, 2014, from Beazer Homes for $197,900.00.  Argos Ready Mix Concrete was used in the foundation, driveway, garage, and patio areas.  The LaVoies are residents of the State of Arizona, though they own the real property noted above, within the State of Georgia.

3.      Daniel and Stefanie Nunn own their home at 4 Central Park Way, Savannah, Chatham County, Georgia 31407.  They purchased their home in November 2013, from D.R. Horton for $194,900.00.  Argos Ready Mix Concrete was used in the foundation, driveway, walkway, garage, and patio areas. The Nunns are and at all pertinent times have been residents of the State of Georgia.

4.      Defendant Cementos Argos S.A. is a publically traded corporation based in Columbia, South America.  According to its website (www.argos-

us.com/About-Argos), Cementos Argos is the fifth largest cement producer in

Latin America and the fourth largest concrete producer in the United States.

Because Columbia is a signatory to the Hague Convention, Defendant Cementos

Argos S.A. can be served at:  Av. Street 24A No. 59-42, Bogata, Columbia.

5.      Defendant Argos USA Corp. is a foreign corporation incorporated in

Delaware.  According to its website (website www.argos-us.com/about-argos/US-

Corporate-Information), Argos USA employs about 2,000 people at its offices and

has over 220 concrete plants, 3 cement plants, and 9 cement terminals located in

Alabama, Arkansas, Georgia, Florida, Mississippi, North Carolina, South Carolina,

Texas and Virginia.  Defendant Argos USA Corp.'s registered agent is Corporation

Service Company, 40 Technology Parkway South, Suite 300, Ben Hill, Norcross,

Gwinnett County, Georgia 30092

6.      Defendant Argos Cement LLC is a foreign limited liability company

created in Delaware and its principal office is located in Alpharetta, Fulton County,

Georgia. Defendant Argos Cement LLC's registered agent is Corporation Service

Company, 40 Technology Parkway South, Suite 300, Ben Hill, Norcross, Gwinnett

County, Georgia 30092.

7.      Argos Ready Mix LLC is a foreign limited liability company

incorporated in Delaware, with a principal place of business at 3015 Windward

Plaza, Alpharetta, Fulton County, Georgia 30005.  Defendant Argos Ready Mix

LLC operates as a subsidiary of Cementos Argos S.A.  Defendant Argos Ready

Mix LLC's registered agent is Corporation Service Company, 40 Technology

Parkway South, #300, Norcross, Gwinnett County, Georgia 30092.

8.     Defendant Cementos Argos S.A., Argos USA Corp., Argos Cement

LLC and Argos Ready Mix LLC are alter-egos of one another and operate and

hold themselves out as one company called "Argos."

9.     The matter in controversy exceeds the sum or value of $5,000,000.00.

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) and (C)

because more than one plaintiff is a citizen of a State different from any defendant

and because any member of a class of plaintiffs is a citizen of a State and

defendant Cemetos Argos S.A. is a citizen of a foreign state.

10.     Defendant Argos is subject to the Court's personal jurisdiction as a

resident of the State of Georgia.  Defendant Argos Ready Mix owns several

concrete manufacturing plants in the State of Georgia, including plants in

Savannah, Richmond Hill, Pooler, Hinesville, and Rincon, all in the State of

Georgia.  Defendant Argos designs, formulates, manufactures, mixes and blends

concrete at these plants and sells and pours concrete in locations throughout

Georgia, South Carolina and other states.  Defendant Argos designed, formulated,

manufactured, mixed, blended and supplied the concrete poured on Plaintiffs'

properties in Pooler and Savannah, Georgia.  Defendant Argos has transacted

business and continues to transact business in the State of Georgia, as well as in

other states, and it specifically transacted business in Pooler and Savannah,

Georgia when it designed, formulated, manufactured, mixed, blended, sold,

supplied and/or poured the concrete at 410 and 412 Lion's Den Drive and at 4

Central Park Way.  Argos has sufficient minimum contacts with Georgia and with

this judicial district such that the exercise of jurisdiction over Argos would not and

does not offend traditional notions of fair play and substantial justice.  By

designing, formulating, manufacturing, mixing, blending, pouring, and supplying

concrete in the State of Georgia, Defendant Argos reasonably could expect and

foresee that it could be sued in the State of Georgia.

  11. Defendant Argos is a corporation and is deemed to reside in any

judicial district in which it is subject to personal jurisdiction.  <u>See</u> 28 U.S.C.

§ 1391(c).  In that Defendant Argos is subject to personal jurisdiction in Georgia,

and in that a substantial part of the events giving rise to these claims occurred in

this judicial district, venue is proper in this Court.  <u>See</u> 28 U.S.C. § 1391(a) (1).

Furthermore, because Argos is a non-resident defendant that transacts business in

Chatham County, Georgia, and because a substantial part of the acts and omissions

set forth herein occurred in Chatham County, Georgia, venue is appropriate in the

Savannah Division of the Southern District of Georgia.  <u>See</u> S.D. Ga. Local Rules

2.1 (c) and (d).

12.     At all times relevant hereto, Defendant Argos concealed the cement to fly ash ratio used in its concrete, concealed the type and relative proportions of other ingredients, concealed the reasonably foreseeable consequences of its concrete as designed, formulated, manufactured and sold, from the Plaintiffs, from their builders/contractors and from their builders' subcontractors, including but not limited to the concrete finishers.

## FACTS

13.     Defendant Argos designs, formulates, manufactures, mixes, blends, pours, sells and otherwise places concrete into the stream of commerce, including the concrete used in and on Plaintiffs' houses and properties.

14.     Defendant Argos holds itself out as, and should be treated as, an expert in the field of concrete design and manufacture.  Concrete designers and manufacturers, including Defendant Argos, are responsible for optimizing the design and mixture of the various ingredients to accommodate the job.

15.     Defendant Argos sold, supplied, delivered, and poured the concrete it had designed and manufactured for use on the property of Plaintiffs Jim and Becky McGaffin (412 Lion's Den Drive, Pooler, Georgia), and the concrete reached the property without alteration in its condition.

16.     The McGaffins began having problems with their house, driveway, patio, and foundation built on and/or with Argos's negligently designed and

manufactured concrete.  The concrete on the driveway, the back patio, and the garage "pitted" and disintegrated.  A fine dust manifested.  Defendant Argos removed and replaced the back patio.  Defendant Argos put a sealer on the garage floor in an attempt to stop the dusting.  The driveway continues to develop small holes throughout.  Dusting still occurs, covering furniture and other household properties with a fine white dust.

17.    Defendant Argos sold, supplied, delivered, and poured the concrete it had designed and manufactured for use on the property of Plaintiffs Nathan and Rachale LaVoie (410 Lion's Den Drive, Pooler, Georgia), and the concrete reached the property without alteration in its condition.

18.    Beginning on or about March 10, 2014, the LaVoies began having problems with their house and driveway.  A large chunk of concrete was missing in the garage.  The driveway had numerous cracks.  Argos replaced the driveway in September of 2014.

19.    A fine dust remains and permeates the LaVoies' home.  It coats the furniture and other household possessions.

20.    Defendant Argos sold, supplied, delivered, and poured the concrete it had designed and manufactured for use on the property of Plaintiffs Daniel and Stefanie Nunn (4 Central Park Way, Savannah, Georgia), and the concrete reached the property without alteration in its condition.

21.     The Nunns began having problems with their house and property, including their floors, driveway, and walkways.  They saw a large amount of white dust being tracked inside the home from the front walkway area when they were moving into their home in November of 2013.  Mr. Nunn produced dust simply by scraping his foot back and forth over the concrete.  Shortly after Thanksgiving of 2013, due to deterioration and dusting, the driveway, front walkway, and the sidewalk in front of the home were removed.  Plaintiff Nunn's builder, D.R. Horton, through a representative, explained that a problem with the concrete necessitated that the driveway, front walkway and sidewalk be replaced.  White dust is produced from the slab under the carpet in two bedrooms, and this white dust frequently coats their furniture and other household possessions.

22.     Plaintiffs have notified their builders and sought remediation regarding damages to their real and personal property as caused by Argos's negligently designed and manufactured concrete.  Although some remediation has been attempted, those attempts have failed, and Plaintiffs' homes are practically impossible to sell, practically impossible to refinance and, eventually, will be impossible to safely live in.

23.     Defendant Argos had a duty to Plaintiffs, and to similarly situated homeowners, to design and manufacture concrete that would set and harden properly, and not crack, flake, pit, scale or dust.  Argos, furthermore, had a duty to

design and manufacture a concrete mix that contained sufficient cement and otherwise was well proportioned and thus accounted for the percentage and type of fly ash in the concrete mixture.

24.  Plaintiffs at all relevant times did not know and could not have known of the negligently designed and manufactured concrete used in their houses and other property, or know of Argos's acts and omissions giving rise to the use of such concrete in their houses and other property.

25.  Defendant Argos had a duty to manufacture and sell concrete that would not crack, scale, flake, pit or dust, and that would not cause damage to Plaintiffs' real and personal property.

26.  Defendant Argos knew that its concrete used in Plaintiffs' houses, and other houses, would be exposed to freezing and thawing and would be in continuous contact with moisture and exposed to de-icing chemicals, and that the proportion of cement to fly ash or other pozzolans in the concrete mixture would have a direct effect on the product's quality, integrity, and propensity to deteriorate and to create powder or dust.

27.  Defendant Argos breached its duty to design and manufacture a well-proportioned concrete mixture for use at 412 Lion's Den Drive, 410 Lion's Den Drive and 4 Central Park Way.  Specifically, the concrete was negligently designed to contain and did contain an insufficient amount of cement, and an excessive

percentage of fly ash, and it did not contain other ingredients at all or in appropriate proportions so as to account for the percentage of fly ash Defendant Argos incorporated into its design.

28. The concrete designed, manufactured and sold by Argos for use in the Plaintiffs' homes violated standards in the concrete industry. For example, the industry-standard International Residential Code, or IRC, creates minimum regulations for one- and two-family dwellings of three stories or less. It brings together all building, plumbing, mechanical, fuel gas, energy and electrical provisions for one- and two-family residences, and includes the Structural Concrete Building Code, ACI 318-11. Under this industry-standard regulation, Section R404.2, Concrete, Table R402.2, Minimum Specified Compressive Strength of Concrete, and Section R506.1, Concrete Floors (on Ground), provide industry standards as to the concrete utilized in Plaintiffs' (and other) homes. These include, among other standards, that the maximum percent of fly ash or other pozzolans conforming to ASTM C618, can comprise a maximum of 25% by weight of total cementitious materials.

29. The amount of cement in relation to the percentage of fly ash in the concrete designed, manufactured, sold, and supplied by Defendant Argos at 412 Lion's Den Drive, 410 Lion's Den Drive, and 4 Central Park Way did not meet industry standards. Rather, Argos's cement was negligently designed and

manufactured, and was defective as ultimately sold, supplied, delivered, poured, and used in Plaintiffs' houses and properties, resulting in damage to Plaintiffs' real and personal property.

## COUNT ONE

## NEGLIGENCE

30.     Plaintiffs incorporate by reference the factual allegations in paragraphs 1 through 29.

31.     Defendant Argos, had a duty to exercise reasonable care in the design, formulation, manufacture, testing, quality assurance, quality control, warning, delivery, supply, and sale of its concrete, including but not limited to: (a) duty to design a concrete that would perform up to industry standards for the residential purposes intended and known to Defendant Argos, and that would not crack, flake, scale, pit or dust; (b) duty to manufacture a concrete that would perform up to industry standards, that was fit for the residential purposes intended and known to Defendant Argos, that would not crack, flake, scale, pit or dust; (c) a duty to test or otherwise assure that their concrete would satisfy industry standards, for the residential purposes intended, would not crack, flake, scale, pit or dust, and did not pose a significantly increased risk of causing property damage to reasonably foreseeable users such as Plaintiffs; and (d) duty to warn foreseeable users of the deviation from a concrete mix standard in the industry.

32.     Defendant failed to exercise ordinary care in the design, manufacture, sale, testing, quality assurance, quality control, warning, delivery and sale of the concrete in that Defendant knew or should have known that significant property damage was reasonably likely to occur and that the concrete would fail and cause damage to the Plaintiffs' real and personal property, who were and are reasonably foreseeable users of Argos's concrete.

33.     Defendant failed to exercise ordinary care in testing its concrete.  On information and belief, Defendant Argos did not test the design or formulation of its concrete destined for, sold to and used in the houses of the Plaintiffs.  Had Argos properly tested its concrete, Argos would have discovered that the design, formulation and manufacture of concrete with the ratio of cement to fly ash in said design and formulation could not and would not withstand the stress resulting from the ordinary wear and tear of the concrete, could not and would not function and perform as intended, would crack, scale, flake, pit and dust, and would cause a fine silicate dust to be spread throughout the houses.

34.     Defendant Argos was negligent in designing, formulating, manufacturing, delivering and selling the concrete to Plaintiffs and/or for use at Plaintiffs' properties and in their houses, and Defendant Argos was negligent in failing to warn persons associated with constructing the houses or working with the concrete of its design, formulation and manufacture, including specifically the

deficient amount or quality of cement, excessive percentage and/or type of fly ash, and the absence of other ingredients and admixtures which might make the concrete properly proportioned.

35.     Defendant Argos was negligent in incorporating fly ash in excess of 25% of the mix without incorporating sufficient cement or other appropriate ingredients and admixtures in an appropriate percentage.

36.     At all relevant times, it was reasonably foreseeable to Defendant Argos that its concrete would be used in houses and the surrounding property generally, and in and on Plaintiffs' houses and properties at 410 and 412 Lion's Den Drive and at 4 Central Park Way, in particular.

37.     Defendant Argos knew or reasonably should have known of the risks and damages associated with the manner and circumstances of each Plaintiff's foreseeable use of Defendant Argos's concrete, which risks and damages would not be obvious to the general public and were not obvious to Plaintiffs or to persons working with Argos's concrete for use in Plaintiffs' properties.

38.     Despite the fact that Defendant Argos knew or should have known that its concrete posed a serious risk of property damage to foreseeable users like Plaintiffs, Defendant Argos continued to design, formulate, manufacture, deliver, sell, supply, and deliver its concrete to Plaintiffs for the use in Plaintiffs' houses and properties.

39.     Defendant Argos knew or should have known that homeowners like Plaintiffs are persons whose use of concrete was reasonably foreseeable and that the use of Defendants' concrete would cause damage to real and personal property in the manner herein alleged, including but not limited to property damage caused by constant exposure to a fine silicate dust, as a result of Defendant's failure to exercise ordinary care as described above, including failure to comply with industry standards.

40.     Defendant Argos's conduct, as described above, and including but not limited to Defendant's design and manufacture of the concrete, as well as its failure to adequately test the concrete and warn Plaintiffs when Argos knew or should have known of the serious risks the concrete posed, was and is negligent.

41.     As a direct and proximate result of Defendant's negligence as set forth herein, Plaintiffs have suffered property damage to their real and personal property, that is, to their houses and contents, through use of a negligently designed and manufactured concrete product and exposure to the silicate dust.  Plaintiffs will continue to suffer damages because the failure of the concrete is continuous and ongoing, thus causing continuous and ongoing damage to Plaintiffs' real and personal property.

42.     As a direct and proximate result of the use of Defendant Argos's concrete in Plaintiffs' houses, as negligently designed, formulated, manufactured,

sold, delivered, and poured at Plaintiffs' properties, the Plaintiffs have been harmed, injured and damaged in one or more of the followings ways:

a)      the Argos cement constantly cracks, flakes, scales, pits and generates silica dust;

b)      the Argos cement constantly produces white, powdery dust that coats all surfaces and personal property in the Plaintiffs' homes, requiring daily cleaning;

c)      the white, powdery dust coats furniture, floors and has seeped into electronic devices; and

d)      the white, powdery dust has caused other damages yet to be identified.

43.      As a direct and proximate result of Defendant Argos's negligence, the Plaintiffs and the Class have suffered and will continue to suffer injuries, damages and losses and are entitled to compensatory damages in an amount to be determined by the trier of fact, but in excess of $5,000,000.00.

## CLASS ALLEGATIONS

44.      Plaintiffs incorporate by reference the facts alleged in paragraphs 1 through 29, above.

45.      Plaintiffs bring this action as a class action pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

46.    At this time, and subject to revision in a motion seeking class certification, Plaintiffs propose the following class definition:

All persons who own a home in the State of Georgia, purchased during the period May 6, 2013 to and including May 6, 2016, where and when Argos designed and manufactured concrete not properly proportioned in that it contained insufficient cement and/or excessive fly ash and/or the wrong type of fly ash and when said concrete was used in foundations, footings, driveways, walkways, garages, patios, slabs and other areas of the person's house and property.

Persons employed by Argos, and their spouses and children, and judicial officers serving in the U.S. District Courts for the three Districts in Georgia and serving on the Eleventh Circuit Court of Appeals are excluded.

47.    The requirements set forth in Fed.R.Civ.P. 23(a) are satisfied:

a.    **Numerosity** is satisfied in that there are at least 100 houses and properties where the deficient cement/fly ash-intensive, negligently designed and manufactured concrete was delivered and sold.  Joinder of all persons owning those houses and properties is not practical and not efficient.  Batch tickets (by that or some other name) and other records in the possession of

Defendant Argos make it practical and feasible to identify and describe the Class.

b.   **Commonality** is satisfied in that there are numerous questions of law and fact common to and with all Class Members.  These common issues are focused upon Defendant Argos's conduct and the concrete it designed, manufactured, sold, and supplied and they include:

i.   Whether the concrete Argos designed, manufactured and sold to Plaintiffs and others similarly situated, which concrete included insufficient cement and/or excessive fly ash, was negligently designed and/or manufactured.

ii.   Whether Defendant Argos included any or enough other ingredients or components in the concrete it designed, manufactured, sold, and supplied to Plaintiffs, and to others similarly situated, so as to constitute a properly proportioned concrete mix.

iii.   Whether the concrete designed, manufactured and sold has caused the fine silicate dust found in the Plaintiffs' houses, and the houses of others similarly situated.

iv.    Whether Defendant Argos advised, told or warned Plaintiffs, or builders and concrete finishers, that the concrete it designed, manufactured, sold, and supplied lacked sufficient cement and/ or contained the percentage fly ash it actually contained.

v.    Whether Defendant Argos acted negligently in designing, testing, manufacturing and selling concrete with the cement to fly ash ratio it adopted and supplied for use for Plaintiffs' houses and properties, and those others similarly situated.

vi.    Whether Defendant Argos has concealed from Plaintiffs, and others similarly situated, and from the builders and concrete finishers, the ingredients, or lack thereof, in the concrete mix, and the percentages of those ingredients in the concrete.

vii.    Whether the subject concrete was manufactured in all of Defendant Argos's plants and delivered and poured at and on Plaintiffs' properties and the properties of others similarly situated.

viii.    Whether Defendant Argos's "batch tickets" or documents by some other name accurately reveal the design of the concrete manufactured for and delivered and sold to Plaintiffs and others similarly situated.

ix.    Whether Defendant Argos's design, manufacture and sale of the subject concrete, satisfied industry standards for use on residential properties for home-building purposes.

x.    Whether Defendant Argos designed, manufactured and sold a concrete with insufficient cement and/or excessive fly ash to Plaintiffs and others similarly situated for economic motives, and whether Defendant Argos knew when the concrete/concrete mix was designed, manufactured and sold to Plaintiffs that it failed to meet industry standards and/or was susceptible to cracking, scaling, flaking, pitting and dusting.

xi.    Whether the fly ash used by Defendant Argos in the design and manufacture of the concrete delivered and sold to Plaintiffs and others similarly situated was of Class C or Class F, and whether the use of such "class"

of fly ash in the design and manufacture of the concrete was negligent.

c.  **Typicality** is satisfied in that each Plaintiff's claims arise from the same basic set of operative facts, and that some basic set of operative facts gives rise to the claims of others similarly situated.  In particular, the Plaintiffs' and putative class members' claims all arise from the use of concrete designed, manufactured and sold by Defendant Argos, concrete which contained an insufficient amount of cement and/or excessive fly ash and which otherwise contained an inappropriate formulation of other ingredients to result in a properly proportioned concrete mix.  The named Plaintiffs each have the same or substantially similar manifestations of harm, injury and damage involving real and personal property, including but not limited to cracking, scaling, flaking, pitting and dusting.

d.  **Adequacy** of representation is satisfied in that the named Plaintiffs each have substantive claims involving the use of Defendant Argos's negligently designed, manufactured, and tested concrete.  The named Plaintiffs each have the same or very similar combinations of manifestations of harm, including

23

but not limited to cracking, scaling, flaking, pitting and dusting, and resulting damage to real and personal property.  No Plaintiff has any interest antagonistic to the interests of others similarly situated.

Moreover, counsel for Plaintiffs and for any certified class are experienced and competent in complex litigation, negligent design and manufacturing litigation and class actions.  Pope, McGlamry, Kilpatrick, Morrison & Norwood, P.C.  has represented, and have been found to be adequate counsel to represent, thousands of persons in dozens of class action cases. Also, the members of Moss & Gilmore LLP have long term, extensive experience in complex litigation.  The Plaintiffs and their retained counsel will fairly, adequately and vigorously pursue and protect the interests of all members of a certified class.

48.     The requirements set forth in Fed.R.Civ.P. 23(b)(3) are satisfied:

a.     Common questions of law and fact, many of which are set forth above, predominate over any issues that might affect only individual members.  The heart of Plaintiffs' cases, and those of all others similarly situated, focuses upon the design,

manufacture, and testing of Defendant Argos's concrete and its

delivery and use in houses and surrounding property.  That

focus includes the negligence or not of the design and

manufacture of the concrete, Defendant Argos's negligent

conduct in designing, formulating, manufacturing, delivering

and selling the concrete to Plaintiffs and others similarly

situated, the adequacy or not of any testing and warnings, and

the evidence that will prove or disprove that Defendant Argos's

negligently designed and manufactured concrete proximately

caused the Plaintiffs' harm, injuries and damages.

b.      A class action is **superior** to other available methods for the

fair and efficient adjudication of this controversy.  While the

claims herein give rise to more than negligible damages, no

other actions have been filed.  A single class action would

avoid potentially inconsistent adjudications which would create

incompatible standards of conduct for Defendant Argos, and it

would achieve maximum efficiencies as opposed to a plethora

of individual actions each of which would likely lead to

protracted and complex lawsuits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for certification of a class upon proper motion, for judgment in favor of Plaintiffs and against Defendant Argos, and for an award of damages, as follows:

(a)     for certification of the Federal Rule of Civil Procedure, Rule 23(b)(3) class;

(b)     for damages, to include the value of property damage and/or remediation of Plaintiffs' homes and properties, or alternatively for damages sufficient to demolish the existing homes and to replace and/or rebuild the homes on newly poured foundations and slabs using appropriate, non-negligently designed and manufactured concrete;

(c)     for compensatory damages, including incidental costs associated with Plaintiffs not being able to live in their homes during relocation, replacement, rebuilding and/or remediation;

(d)     for damages to personal property and other household possessions due to exposure to and coverage with fine silicate dust;

(e)     for pre-judgment and post-judgment interest;

(f)     for the costs of this action, including reasonable attorneys' fees; and

(g)     granting any and all such other and further legal and equitable relief as the Court deems necessary, just and proper.

## REQUEST FOR JURY TRIAL

Plaintiffs respectfully request that this matter be tried by a jury.

DATED:      May 6, 2016.

Respectfully submitted,

/s/ *Michael J. Moore*

**C. Neal Pope**
GA Bar No. 583769
**Wade H. Tomlinson, III**
GA Bar No. 714605
**Michael J. Moore**
GA Bar No. 520109
**Jay F. Hirsch**
GA Bar No. 357185
**Kimberly J. Johnson**
GA Bar No. 687678
POPE, McGLAMRY, KILPATRICK,
MORRISON & NORWOOD, P.C.
3391 Peachtree Road, NE, Suite 300
P.O. Box 191625 (31119-1625)
Atlanta, GA  30326
(404) 523-7706
Fax:  (404)524-1648
Email:  efile@pmkm.com

**Raymond L. Moss**
GA Bar No. 526569
MOSS & GILMORE LLP
3630 Peachtree Road, Suite 1025
Atlanta, GA  30326
(678) 381-8601
Fax:  (815) 364-0515
Email:  rlmoss@mossgilmorelaw.com

*ATTORNEYS FOR PLAINTIFFS*

27