# In the United States District Court
## for the Southern District of Georgia
## Savannah Division

JIM and BECKY MCGAFFIN, RACHALE
and NATHAN LaVOIE, and DANIEL
and STEFANIE NUNN,

      Plaintiffs,

v.

CEMENTOS ARGOS S.A.; ARGOS USA
CORP.; ARGOS CEMENT, LLC; and
ARGOS READY MIX LLC,

      Defendants.

No. 4:16-CV-104

## ORDER

Before the Court in this product liability case is Defendants Cementos Argos S.A.; Argos USA Corp.; Argos Cement, LLC; and Argos Ready Mix LLC's (collectively, "Argos") Motion to Dismiss Plaintiffs' Amended Class Action Complaint, dkt. no. 28. The Motion has been fully briefed, dkt. nos. 37, 41, and is now ripe for decision.

Plaintiffs Jim and Becky McGaffin, Rachale and Nathan LaVoie, and Daniel and Stefanie Nunn allege that Argos concrete is deficient, causing tremendous amounts of dust that fills their homes. See generally Dkt. No. 23. Although Plaintiffs cannot sue Argos for damage to the concrete itself

because of the economic loss rule, they have adequately alleged that the dust has damaged other property and requires cleaning. Thus, for the reasons stated below, Argos's motion will be **GRANTED in part** and **DENIED in part**.

FACTUAL BACKGROUND

Under Federal Rule of Civil Procedure 12(b)(6), the Court assumes the truth of the facts alleged in the complaint. Argos manufactures concrete and supplied at least 250 homes during the time period relevant to this case. Dkt. No. 23 at 2. Argos holds itself out to be "an expert in the field of concrete design and manufacture." Id. at 9.

According to the complaint, Argos concrete is defective because of "insufficient amounts of Portland cement and/or too much fly ash[1] and/or too much poor quality fly ash." Id. at 11. This means that Argos concrete used in Plaintiffs' homes "did not set, harden or otherwise perform properly . . . with the result that it continually . . . releases a fine, white-colored silicate dust." Id. at 11–12. This dust "has damaged Plaintiffs' dwellings and real property as well as their personal property." Id. at 12. "HVAC systems (including

---

[1] Allegedly "a by-product of burning coal" that can "display cementitious . . . behavior." Id. at 3. According to Plaintiffs, "There is an optimum ratio of fly ash to cement to produce a concrete mixture that will maximize the technical, environmental, and economic benefits of fly ash without significantly impacting the rate of construction or impairing the long-term performance of the finished product. However, a poorly proportioned concrete mixture, i.e., insufficient cement with too much or the wrong class fly ash, will not set and harden properly." Id. at 4.

AO 72A
(Rev. 8/82)

components and filters that require frequent changing . . .), electronic devices (including computer equipment, televisions, stereos), furniture, carpet, rugs, clothing – literally everything in the dwellings – is constantly coated, re-coated and damaged by the fine, white silicate dust . . . ." Id. at 15.

The dust also poses health risks in the form of "increase[d] . . . risk of silicosis, lung cancer, other nonmalignant respiratory disease, as well as renal and autoimmune problems." Id.

Plaintiffs describe their injuries as follows:

- The McGaffin Plaintiffs' "concrete on the driveway, the back patio, and the garage has 'pitted' and disintegrated, manifesting a fine silicate dust." Id. at 12–13. "Argos . . . has removed and replaced the concrete on back patio and put a sealant on the concrete on the garage floor in an unsuccessful attempt to stop the dusting. The McGaffins' driveway also develops small holes." Id. at 13.

- The LaVoie Plaintiffs "began having problems with the concrete in their dwelling and on their driveway. A large chunk of concrete was missing in the garage. The driveway had numerous cracks. A fine silicate dust from the concrete in the slab under the floors of the dwelling infiltrates and permeates the dwelling." Id.

AO 72A
(Rev. 8/82)

- The Nunn Plaintiffs "saw a large amount of white dust being tracked inside the dwelling from the front walkway area when they were moving into their home . . . Argos concrete dust appears when a foot is scraped back and forth over the concrete. . . . Argos removed and replaced the driveway, front walkway, and sidewalk in front of the Nunns' dwelling. . . . White dust is still continually produced from the slab under the carpet in two bedrooms of the Nunn dwelling, as well as from the slab under the rest of the flooring . . . ." Id. at 14.

Argos has not remediated "concrete in the slabs under the floors of Plaintiffs' houses." Id. at 14-15.

Plaintiffs sued Argos in this Court on May 6, 2016. See generally Dkt. No. 1. They amended their complaint on July 21, 2016. Dkt. No. 23. They raise four claims: negligent design and manufacture, negligent failure to warn, negligent remediation, and concealment/suppression. Id. at 19-32. They also seek to bring this case as a class action. Id. at 32. Argos moved to dismiss on August 18, 2016. Dkt. No. 28. The parties fully briefed the Motion, dkt. nos. 37, 41, and it is ripe for decision.

## LEGAL STANDARD

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires

the . . . court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). A complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Its "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Iqbal, 556 U.S. at 678. It has to "contain inferential allegations from which [the court] can identify each of the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 684 (11th Cir. 2001). Although a court must assume the truthfulness of the complaint's factual allegations, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## DISCUSSION

Plaintiffs raise four claims: negligent design and manufacture, negligent failure to warn, negligent remediation, and concealment/suppression. Dkt. No. 23 at 19-32. They also seek to bring this case as a class action. Id. at 32. For the reasons that follow, the first two claims survive in part, as do the class allegations.

## I. PLAINTIFFS' NEGLIGENT DESIGN AND MANUFACTURE CLAIM IS DISMISSED IN PART.

Plaintiffs allege four categories of injuries from Argos's negligent design and manufacture: (a) needing to "inspect and remedy, replace and remove the defective concrete"; (b) "other damages yet to be identified"; (c) dangers to Plaintiffs' health and that of their visitors; and (d) the need to clean, inspect, remedy, repair, and remove non-concrete property due to dust damage. Dkt. No. 23 at 24. Only the last allegation survives dismissal.

To prove negligent design and manufacture, Plaintiffs must establish four elements:

> (1) A legal duty to conform to a standard of conduct raised by the law . . . ; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiffs legally protected interest as a result of the alleged breach of the legal duty.

Coney v. Mylan Pharms., Inc., No. 6:11-CV-35, 2012 WL 170143, at *6 (S.D. Ga. Jan. 19, 2012) (quoting Dixie Grp., Inc. v. Shaw Indus. Grp., Inc., 693 S.E.2d 888, 895 (Ga. Ct. App. 2010) (quoting Bradley Ctr., Inc. v. Wessner, 296 S.E.2d 693, 695 (Ga. 1982) (citation omitted))).[2]

---

[2] Argos contests different elements for different allegations, so no general discussion will be attempted here. If an element is not discussed, it is because Argos did not argue that it was inadequately pled and the Court saw no obvious deficiency. See Argo v. Gregory, No. CV 212-213, 2014 WL 4467268, at *11 (S.D. Ga. Sept. 10, 2014) ("[T]he onus is upon the parties to formulate arguments.").

AO 72A
(Rev. 8/82)

**A. The Claim Is Dismissed as to Inspecting, Removing, and Replacing Defective Concrete.**

Plaintiffs allege that Argos's negligence has required them to "inspect and remedy, replace and remove the defective concrete." Dkt. No. 23 at 24. This allegation must be dismissed under Georgia's economic loss rule. "[T]here can be no action in negligence to recover the loss of the economic value of a defective product . . . ." Vulcan Mats. Co. v. Drilltech, Inc., 306 S.E.2d 253, 254 (Ga. 1983). Plaintiffs want to recover in negligence for the loss of the value of the defective concrete. They cannot do so.[3]

Plaintiffs contend that they in fact want to recover for negligent construction. Dkt. No. 37 at 16. But negligent construction does not apply to providers of building supplies like Argos—only providers of building services. See Unger v. Bryant Equip. Sales & Servs., Inc., 335 S.E.2d 109, 111 (Ga. 1985); Fields Bros. Gen. Contractors, Inc. v. Ruecksties, 655 S.E.2d 282, 285 (Ga. Ct. App. 2007); Fussell v. Carl E. Jones Dev. Co., 428 S.E.2d 426, 427 (Ga. Ct. App. 1993) ("[A] negligent construction claim arises . . . from breach of a duty implied by law to perform the work in accordance with industry standards." (emphasis added)); Howell v. Ayers, 202 S.E.2d 189, 190-91 (Ga. Ct. App. 1973) (describing negligent

---

[3] Plaintiffs can, however, use "the cost of repairing [or replacing] the [concrete] to make [it] safe" as a measure for damage to their other property. Shooshanian v. Wagner, 672 P.2d 455, 464 (Alaska 1983).

AO 72A
(Rev. 8/82)

construction as part of implied duty found in contracts for services). Argos's motion to dismiss is therefore **GRANTED** as to Plaintiffs' allegation of damage to their concrete.

**B. The Claim Is Dismissed as to Unidentified Damages.**

Plaintiffs next allege that Argos's negligence has caused them "damages yet to be identified." Dkt. No. 23 at 24. This pleading is too vague, so Argos's motion to dismiss is **GRANTED** as to it. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (observing complaint must "give the defendant fair notice of what the . . . claim is" (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated in other part, Twombly, 550 U.S. at 561-63)).

**C. The Claim Is Dismissed as to Health.**

Third, Plaintiffs allege that concrete dust threatens their health and that of their visitors. Dkt. No. 23 at 24. This allegation must also be dismissed as too vague.

Plaintiffs allege two facts. They say that concrete dust "is known to increase the risk of silicosis, lung cancer, other nonmalignant respiratory disease, as well as renal and autoimmune problems." Id. at 12. This does not adequately allege "injury to life or limb" under Georgia law. Parker v. Wellman, 230 F. App'x 878, 881 (11th Cir. 2007) (per curiam) (unpublished opinion). Alleging "subclinical and cellular damage" is insufficient without "an identifiable physical

AO 72A
(Rev. 8/82)

disease, illness, or impairing symptoms." Id. at 882. Thus, allegations of mere risk are not enough to survive dismissal.

Nor is Plaintiffs' allegation that they "have experienced increased respiratory symptoms." Dkt. No. 23 at 15. Plaintiffs must allege "identifiable" symptoms. Parker, 230 F. App'x at 882. They clearly have not done so. See, e.g., Jackson v. Monterey Cty. Jail, No. C 07-1202, 2008 WL 269472, at *4 (N.D. Cal. Jan. 29, 2008), aff'd, 407 F. App'x 119 (9th Cir. 2010) (per curiam) (unpublished opinion) (requiring allegations of "specific occasions on which [the plaintiff] has suffered respiratory problems, the[ir] nature . . ., and any medical treatment he has sought and received"); cf. Metallo v. Orlando Utils. Comm'n, No. 6:14-CV-1975, 2015 WL 5124866, at *1 (M.D. Fla. Sept. 1, 2015) (holding adequate allegations of "respiratory problems"—plus "[s]leepless nights, violent headaches, . . . frequent sneezing, . . . shrill ear ringing" and various other maladies).

Plaintiffs claim support from Buckeye Cotton Oil Co. v. Ragland, 11 F.2d 231, 233 (5th Cir. 1926), which they say held adequate an allegation that the plaintiff was "forced to continually breathe and inhale . . . dust . . . much to her physical injury." That allegation came from an earlier case not under the Buckeye Cotton court's review. See id. The Buckeye Cotton court found that plaintiff had evidence of

9

"chronic bronchitis and other respiratory ailments," and that her foster daughter was "underdeveloped, undersized, and practically an invalid." Id. There are no such detailed allegations here. Therefore, as to Plaintiffs' health allegations, Argos's motion to dismiss is **GRANTED**. This dismissal is **WITHOUT PREJUDICE**, because "a more carefully drafted complaint might state a claim" and health injuries might materialize in the future. Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam), overruled in part, Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541 (11th Cir. 2002) (en banc) (unanimous opinion).

### D. The Claim Survives as to Property Damage.

Plaintiffs assert that Argos's negligence has caused them to have to clean, inspect, remedy, replace, and remove property other than their concrete. Dkt. No. 23 at 24.[4] These allegations survive dismissal. Argos concedes that it had a duty to prevent "injury to . . . property" other than the concrete. Dkt. No. 41 at 4; see also O.C.G.A. § 51-1-11 (exempting from economic loss rule "cases where the party would have a right of action for the injury done independently of the contract . . . ." (emphasis added)); Unger v. Bryant Equip. Sales & Servs., Inc., 335 S.E.2d 109, 111 (Ga. 1985) ("[I]ndependently of any duty under . . . contract, the law

---

[4] These claims are sub-divided in the complaint.

10

imposed upon the [appellees] the duty not to negligently and wrongfully injure and damage the property of [the appellant]." (citations omitted)). It also concedes that Plaintiffs adequately allege breach, in that Argos supposedly used too much fly ash in making the concrete. Dkt. No. 28 at 2.

Its response is threefold. It claims that "Plaintiffs do not allege that [concrete] dust has actually and physically damaged [their] items." Dkt. No. 28 at 9. It argues that "[t]he mere presence of dust, alone, is not physical damage." Id. at 9-10. And it contends that Plaintiffs cannot recover because the concrete "allegedly cause[d] damage to the larger chattel in which it was installed"—that is, their homes—and this "is not 'other property.'" Dkt. No. 28 at 10 n.4. These arguments fail.

### i. Plaintiffs allege injury to their property.

Argos is plainly incorrect when it says that Plaintiffs do not allege property damage. Plaintiffs alleged that they have to "remedy, replace and remove . . . property." Dkt. No. 23 at 24; see also id. at 15 ("HVAC systems (including components and filters that require frequent changing due to the fine, white silicate dust), electronic devices (including computer equipment, televisions, stereos), furniture, carpet, rugs, clothing - literally everything in the dwellings - is constantly coated, re-coated and damaged by the fine, white

11

silicate dust from the Argos concrete." (emphasis added)). This allegation is adequate. See Scottsdale Ins. Co. v. Sec. Fire Prevention, Inc., No. 10-62542, 2011 WL 772779, at *2 (S.D. Fla. Feb. 28, 2011) ("The Complaint in this case clearly alleges . . . damage[ ] [to] 'the property of [the insured],' and that [the plaintiff insurer] had to compensate [the insured] for 'the property damage.' These allegations are sufficient to deny Defendant's motion to dismiss."); Centex Homes v. Mr. Stucco, Inc., No. 8:07-CV-365, 2007 WL 2264622, at *2 (M.D. Fla. Aug. 6, 2007) ("Plaintiff alleges that . . . 'substantial portions of the homes other than the work of those Subcontractor Defendants, has been damaged.' Accordingly . . . dismissal based upon the economic loss doctrine is not appropriate." (internal citation omitted)).

### ii. Plaintiffs can recover for dust's presence.

Even to the extent Plaintiffs complain of dust alone and the need to clean it, their claim survives. Most people do not enjoy living surrounded by dust. For some, it is downright dreadful. See, e.g., T.S. Eliot, "The Waste Land" v. 30 (1922), available at http://www.bartleby.com/201/1.html ("I will show you fear in a handful of dust."); but see "Quotes for Pigpen," IMDb, http://www.imdb.com/character/ch0043417/quotes (last accessed Dec. 5, 2016) ("Don't think of it as dust. Think of it as maybe the soil of some great past

civilization. Maybe the soil of ancient Babylon. It staggers the imagination. [Dusty Pig-Pen] may be carrying soil that was trod upon by Solomon, or even Nebuchudnezzar." (quoting Charlie Brown)).

This distaste has found its way into law. Georgia courts have long held that "one cannot be forced to endure [dust] from the negligence of another." Thrasher v. City of Atlanta, 173 S.E. 817, 824 (Ga. 1934); cf. Henry v. St. Croix Alumina, LLC, Civ. No. 1999/0036, 2007 WL 6030275, at *11 (D.V.I. Aug. 10, 2007) (allowing claim that the defendant negligently allowed dust to cover the plaintiffs' homes to proceed); Barker v. Geotech Servs., Inc., No. 22742, 2006 WL 2060556 (Ohio Ct. App. July 26, 2006) (affirming judgment against repairer for negligently causing dust damage to home and personal property). Plaintiffs thus have the right not to put up with pervasive dust caused by negligence, and to hold Argos liable for forcing them to choose between removing it and suffering the consequences.[5]

Argos relies on three cases, the first being Satterfield v. J.M. Huber Corp., 888 F. Supp. 1567 (N.D. Ga. 1995). There, a sister district court found that trespass in the form

---

[5] It is also worth noting that those consequences can be even direr than they were when Thrasher was decided in 1934, due to the advent of computer equipment like that Plaintiffs allege they own. See Dkt. No. 23 at 15; Marco Chiappetta, You're a Dirty, Dirty, Dusty PC, PCWorld (May 6, 2013, 3:02AM), http://www.pcworld.com/article/2037100/youre-a-dirty-dirty-dusty-pc.html.

AO 72A
(Rev. 8/82)

of "indirect invasions such as dust, smoke and noise" is not compensable without "actual and substantial physical damage to . . . property." Id. at 1572. But a more recent Georgia appellate decision held that the pervasive presence of smoke can be compensable by itself in negligence. In Weller v. Blake, 726 S.E.2d 698, 700 (Ga. Ct. App. 2012), the plaintiffs alleged that their neighbors' outdoor fireplace caused their yard and home to fill with smoke. They did "not allege actual, tangible injury to their property." Id. at 702. The Georgia Court of Appeals reversed summary judgment for the defendants on the plaintiffs' negligence claim. Id.

Plaintiffs here similarly allege that Argos's negligence has caused their home to fill with dust. If such a claim could survive summary judgment in Weller, then Plaintiffs' allegations here are surely adequate. Ergo, Satterfield is limited to trespass, pervasive particle invasion can be the sort of compensable damage that it envisioned, or the opinion has not aged well. In any event, Satterfield does not justify dismissing Plaintiffs' property allegations.

Argos also cites a nuisance and a condemnation case. Dkt. No. 41 at 13. These are distinguishable. The nuisance case held that "[i]f a public project is legislatively sanctioned it cannot be adjudged a nuisance." Downside Risk, Inc. v. Metro. Atlanta Rapid Transit Auth., 274 S.E.2d 653,

657 (Ga. Ct. App. 1980). This rule does not apply here. The condemnation case merely held that "damages from dust . . . temporarily caused by a public project . . . cannot be recovered in a condemnation action" because of a "rule prohibiting the recovery of damages for temporary inconvenience." Bill Ledford Mot., Inc. v. Dep't of Transp., 484 S.E.2d 510, 514 (Ga. Ct. App. 1997); see also Downside Risk, Inc., 274 S.E.2d at 658. This is not a condemnation case, there is no public project here, and Plaintiffs have alleged that the dust is persistent. Dkt. No. 23 at 12 (alleging property is "constantly coated and re-coated with this fine silicate dust that cannot be fully removed"). The condemnation rule does not apply. Plaintiffs' allegations of pervasive dust and their need to clean it survive.

### iii. Plaintiffs can recover for damage to home components other than the concrete.

Finally, Argos claims that Plaintiffs cannot recover for damage to their dwellings because these are not "'other property' separate from [their] component parts," including the concrete. Dkt. No. 41 at 14. This argument flatly contradicts Georgia law. A plaintiff "may proceed against [a defendant] on a theory of negligence where components supplied by sources other than [the defendant] are damaged due to defects in the [defendant-supplied] components." Mike

AO 72A
(Rev. 8/82)

*Bajalia, Inc. v. Amos Constr. Co.*, 235 S.E.2d 664, 665 (Ga. Ct. App. 1977).[6] Thus, Plaintiffs' allegation of non-concrete home damage survives. *See, e.g.*, Dkt. No. 23 at 2.[7]

The cases Argos cites are distinguishable. Some hold that the economic loss rule bars recovery for damage to an integrated system caused by one part, like a gear pin that breaks a car transmission. *Henderson v. Gen. Mot. Corp.*, 262 S.E.2d 238, 239 (Ga. Ct. App. 1979); *see also Long v. Jim Letts Oldsmobile, Inc.*, 217 S.E.2d 602 (Ga. Ct. App. 1975) (considering engine as part of car). It might seem as though concrete underneath the flooring is just such a part of an integrated home. But *Mike Bajalia, Inc.* forecloses finding this. The defendant in *Mike Bajalia, Inc.* supplied a

---

[6] *Mike Bajalia, Inc.*'s holding also forecloses Argos's reliance on caveat emptor. *See* Dkt. No. 28 at 14–15; Dkt. No. 41 at 16–17. The Court further notes that caveat emptor applies to claims against builders and sellers, by realty buyers. *See, e.g.*, *Cendant Mobility Fin. Corp. v. Asuamah*, 684 S.E.2d 617, 619 (Ga. 2009); *Reininger v. O'Neill*, 729 S.E.2d 587, 589 (Ga. Ct. App. 2012); *Sosebee v. Hiott*, 278 S.E.2d 700, 702 (Ga. Ct. App. 1981); *Welding Prods. of Ga. v. S.D. Mullins Co.*, 193 S.E.2d 881, 883 (Ga. Ct. App. 1972) ("As defendants are not seller-builders, caveat emptor does not apply."); *Amos v. McDonald*, 181 S.E.2d 515, 517 (Ga. Ct. App. 1971), *abrogated in part on other grounds*, *Holmes v. Worthey*, 282 S.E.2d 919, 925–26 (Ga. Ct. App. 1981) ("Since [the defendant] was not a builder-owner or builder-vendor, caveat emptor does not apply."). Argos did not build or sell Plaintiffs' homes, nor did Plaintiffs purchase realty from it. Dkt. No. 28 at 5. Thus, caveat emptor does not apply.

[7] They may not, however, proceed on their related allegation that "[t]he defective concrete . . . will make [their] dwellings and properties difficult to sell and to refinance." Dkt. No. 23 at 15. "An allegation of future injury" can only survive dismissal if "the alleged injury is 'imminent' or 'real and immediate.'" *31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *City of L.A. v. Lyons*, 461 U.S. 95, 101–02 (1983)). The injury alleged here is not. Rather, it is a mere "'some day' intention[ ]—without any description of concrete plans, or indeed even any specification of *when* the some day will be." *Lujan*, 504 U.S. at 564. Argos's motion to dismiss it is therefore **GRANTED**.

AO 72A
(Rev. 8/82)

building's space grid. 235 S.E.2d at 225–26. A space grid is the frame or truss. John Chilton, preface to SPACE GRID STRUCTURES at vii (2000), available at https://www.scribd.com/doc/36632904/Space-Grid-Structures. Thus, under Mike Bajalia, Inc., a building's very skeleton is not integrated enough into it to foreclose recovery for damage it causes to other parts of the building. Surely, then, neither are concrete feet integrated enough to prevent recovery for damage to other home components.[8]

One case Argos cites has nothing to do with the economic loss rule. In Mullis v. Southern Co. Services, Inc., 296 S.E.2d 579, 583–84 (Ga. 1982), the Georgia Supreme Court held that an electrical system and one of its component circuit breakers were both real estate improvements for purposes of a statute of limitations for construction planners. Id. at 581. Mike Bajalia, Inc. forecloses analogizing to integration between Argos concrete and Plaintiffs' homes.

The remaining cases Argos relies upon are from outside Georgia, and so cannot undermine Mike Bajalia, Inc. See Dkt. No. 28 at 6–7.

---

[8] Welcome news, one imagines, for King Nebuchadnezzar. Dan. 2:31–35 (describing collapse of a silver and gold statue due to damaged clay feet); "Achilles," GREEKMYTHOLOGY.COM, http://www.greekmythology.com/Myths/Heroes/Achilles/achilles.html (last accessed Dec. 5, 2016) (describing systematic structural damage due to weak foundations).

Plaintiffs' negligent design and manufacture claim survives, insofar as it alleges personal and real property damage. To this same extent, Argos's motion to dismiss is **DENIED**. For the reasons above, it is otherwise **GRANTED** as to Plaintiffs' negligent design and manufacture claims.

## II. **PLAINTIFFS' NEGLIGENT FAILURE TO WARN CLAIM IS DISMISSED IN PART.**

Plaintiffs' second claim is for negligent failure to warn. This claim will not be dismissed—except as to damage to Plaintiffs' concrete and health, for the reasons above. As another negligence action, this claim is governed by the same elements as the preceding one: (1) a legal duty; (2) breach thereof; (3) legal causation between the breach and the plaintiff's injury; and (4) legal damage to the plaintiff. Coney v. Mylan Pharms., Inc., No. 6:11-CV-35, 2012 WL 170143, at *6 (S.D. Ga. Jan. 19, 2012).

### A. Argos Owed Plaintiffs a Duty to Warn.

A duty has to be owed (a) by the defendant (b) to the plaintiff. Both needs are satisfied here. "Whether a legal duty exists is a question of law . . . ." Rasnick v. Krishna Hospitality, Inc., 690 S.E.2d 670, 673 (Ga. Ct. App. 2010). Manufacturers have a duty to warn when they know or reasonably should know about danger arising from use of their products. Certainteed Corp. v. Fletcher, No. S15G1903, 2016 WL 6996282,

18

at *2 (Ga. Nov. 30, 2016). Plaintiffs here allege that Argos knew or should have known of the concrete defect by the time that it received complaints and began remediation work in fall 2013. Dkt. No. 23 at 9-10. This pleading is adequate.

Manufacturers' duty extends to consumers and reasonably foreseeable users. Certainteed Corp., 2016 WL 6996282, at *2; see also Holmes v. Worthey, 282 S.E.2d 919, 926 (Ga. Ct. App. 1981), aff'd, 287 S.E.2d 9 (Ga. 1982) ("[P]rivity is not required to found an action for negligence."). Plaintiffs are in these classes. See R & R Insulation Servs., Inc. v. Royal Indem. Co., 705 S.E.2d 223, 233 (Ga. Ct. App. 2010) (holding building-supply manufacturer owes duty to building occupant).

Argos denies having a duty by claiming that it "had no way to determine who any of the Plaintiffs were." Dkt. No. 28 at 4 n.1. But Argos allegedly found out enough about who had defective concrete to attempt to remediate the properties of all three named Plaintiffs, plus other homeowners. Dkt. No. 23 at 13-14, 27. Plaintiffs have adequately pled that Argos could identify them. Thus, their allegation that Argos owed them a duty to warn does not fail.

B. Argos Allegedly Breached Its Duty.

A manufacturer can breach the duty to warn by failing to "adequately communicate . . . [with] the ultimate user," by not providing "warnings of 'nonobvious foreseeable dangers

from the normal use of [the] products.'" Certainteed Corp., 2016 WL 6996282, at *2 (quoting Thornton v. E.I. Du Pont De Nemours & Co., 22 F.3d 284, 289 (11th Cir. 1994)). Plaintiffs have adequately alleged this. Dkt. No. 23 at 26 (alleging, after explaining various harms caused by the defective concrete: "Argos . . . has failed to warn Plaintiffs, their builders, and others with properties that include Argos' defective concrete of the dangers presented to property and person . . . .").

Argos raises two arguments—the obviousness of concrete deterioration, and Plaintiffs' silence as to whether their home builders "knew, or should have known, of the alleged 'defect.'" Dkt. No. 28 at 4 n.1. Argos first characterizes the danger complained of by Plaintiffs as obvious and foreseeable deterioration of the concrete over time. Dkt. No. 28 at 4. Of course everyone expects things to break down as time goes by. "[T]ime is by its nature the cause . . . of decay, since it is the number of change, and change removes what is." Aristotle, PHYSICS bk. 4, part 12 (350 B.C.), trans. R.P. Hardie & R.K. Gaye, available at http://classics.mit.edu/Aristotle/physics.4.iv.html. But Plaintiffs bought their houses new over the past three-and-a-quarter years. Dkt. No. 23 at 3. No one expects that within four years of buying a new home, "white silicate dust" from the concrete will

AO 72A
(Rev. 8/82)

"infiltrate[e] and permeat[e] . . . coating and damaging"
everything inside. Id. at 13-14. This is a nonobvious
danger.

Argos then argues that it breached no duty because
Plaintiffs did not allege that their builders did not know or
should not have known of the concrete defects. Dkt. No. 28 at
4 n.1. This is an appeal to the "learned intermediary" rule,
which "relieves a product manufacturer or supplier of this
duty . . . where there is an intermediary with knowledge of
the hazard." Parker v. Schmiede Mach. & Tool Corp., 445 F.
App'x 231, 234 (11th Cir. 2011) (per curiam) (unpublished
opinion). There are two problems with this argument. First,
the rule is a defense, not an element, and so it need not be
pled away in the complaint. See, e.g., Dietz v. Smithkline
Beecham Corp., 598 F.3d 812, 814 (11th Cir. 2010). The second
is that Plaintiffs specifically alleged that "Argos . . .
failed to warn . . . [their] builders . . . of the dangers."
Dkt. No. 23 at 26. The mere presence of a builder does not
trigger the learned intermediary rule unless the defendant
shows that the builder knew of the alleged defects. See R & R
Insulation Servs., Inc., 705 S.E.2d at 428. Argos has made no
such showing here. Thus, Plaintiffs adequately alleged that
Argos breached its duty to warn.

AO 72A
(Rev. 8/82)

## C. Plaintiffs Adequately Allegedly Causation.

Argos does not contest Plaintiffs' causation allegation. The complaint states that "[a]s a direct and proximate result of Defendant Argos's failures to warn . . . the Plaintiffs and the [proposed] Class have suffered and will continue to suffer." Dkt. No. 23 at 27. Without an allegation that Plaintiffs would not have Argos concrete but for Argos's failure to warn, this paragraph "border[s] on conclusory." Brazil v. Janssen Research & Dev., LLC, No. 4:15-CV-0204, 2016 WL 3748771, at *8 (N.D. Ga. July 11, 2016) (considering complaint that did allege but-for causation).

However, the Court finds it an adequate pleading "in light of [Argos's] failure to object[,] . . . some support in the case law," and "common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Monelus v. Tocodrian, Inc., 609 F. Supp. 2d 1328, 1339 (S.D. Fla. 2009) (discussing award of costs); see also Argo v. Gregory, No. CV 212-213, 2014 WL 4467268, at *11 (S.D. Ga. Sept. 10, 2014) ("[T]he onus is upon the parties to formulate arguments."); Powell Duffryn Terminals, Inc. v. Calgon Carbon Corp., 4 Supp. 2d 1198, 1202 (S.D. Ga. 1998) (holding allegation that "failure to warn was the proximate cause" adequate). Plaintiffs are home purchasers who, as Argos points out, do not select the components of their properties a la carte. See Dkt. No. 28 at 5

AO 72A
(Rev. 8/82)

("Homeowners . . . bargain for the finished [dwellings], not their various components." (quoting *Reilly v. La. Pac. Corp.*, No. 6:12-CV-837, 2013 U.S. Dist. LEXIS 190094, at *17 (M.D. Fla. Sept. 30, 2013)). It would not be Plaintiffs' job to opt for another concrete, but rather, that of their builders, and as Argos says, "Plaintiffs cannot speak for a non-party to this litigation." Dkt. No. 28 at 4 n.1.

Nevertheless, Plaintiffs pled facts "that allow[] the court to draw the reasonable inference" that they would not have received Argos concrete given an adequate warning. *Iqbal*, 556 U.S. at 678. Namely, Plaintiffs want to replace the defective concrete with "appropriate, non-negligently designed and manufactured concrete." Dkt. No. 23 at 40. The Court can reasonably infer that if non-defective concrete exists, then Plaintiffs' builders would have gone with it, given adequate warning. Cf. *Universal Underwriters Ins. Co. v. Smith*, 322 S.E.2d 269, 273 (Ga. 1984) (observing it is "'easy' for an injured person to testify that had he not relied on [silence in place of a warning], he would have taken . . . precautionary steps."). Plaintiffs adequately plead that Argos's failure to warn caused their injuries.

AO 72A
(Rev. 8/82)

### D. Plaintiffs Alleged Compensable and Non-Compensable Injuries.

Lastly, Plaintiffs allege a mix of damages that can be compensated and others that cannot. For the reasons explained in Parts I.A and I.C., Argos's motion to dismiss is **GRANTED** as to Plaintiffs' negligent failure to warn claim insofar as they allege damage to their concrete and health.[9] Dkt. No. 23 at 26 ("Argos failed to warn Plaintiffs, their builders, other property owners, and other foreseeable persons that it's [sic] concrete would have an increased propensity to crack, flake, scale, pit or dust . . . and would pose a significantly increased risk of . . . personal injury."). But it is **DENIED** as to Plaintiffs' property damage allegations. Id. at 25-27.

### III. PLAINTIFFS' NEGLIGENT REMEDIATION CLAIM IS DISMISSED.

Plaintiffs' third claim is negligent remediation. This is simply another rendition on negligence. Dkt. No. 37 at 6-7. This claim will be dismissed because Plaintiffs have not adequately alleged that Argos breached any duty that it owed them. As with the two negligence claims above, Plaintiffs must properly plead four elements: (1) a duty on Argos's part; (2) Argos's breach; (3) a cause connecting the breach and Plaintiffs' injury; and (4) legally cognizable damages. Coney

---

[9] Again, Plaintiffs' can still use "the cost of repairing [or replacing] the [concrete] to make [it] safe" as a measure for damage to their other property. Shooshanian v. Wagner, 672 P.2d 455, 464 (Alaska 1983).

AO 72A
(Rev. 8/82)

v. Mylan Pharms., Inc., No. 6:11-CV-35, 2012 WL 170143, at *6 (S.D. Ga. Jan. 19, 2012).

Plaintiffs adequately allege that Argos owed them a duty when it undertook remediation efforts. Again, the existence of a duty is a legal question. Rasnick v. Krishna Hospitality, Inc., 690 S.E.2d 670, 673 (Ga. Ct. App. 2010). Plaintiffs assert that Argos carried out some remediation work on their properties. Dkt. No. 23 at 13–14. In particular, they allege that Argos remediated features outside of their homes, such as driveways, walkways, a patio, and a garage floor. See id. They correctly claim that "Argos . . . had a duty . . . to conduct those . . . remediation efforts . . . in a workman-like manner." Id. at 18; see also Osowski v. Smith, 586 S.E.2d 71, 73 (Ga. Ct. App. 2003).

But Plaintiffs do not allege that the remediation efforts Argos undertook were negligently performed. Rather, they claim that Argos breached a duty to expand that remediation into their homes' interiors. Dkt. No. 23 at 28. The way that Plaintiffs see it, Argos did not just voluntarily undertake to remediate the exteriors of their properties. It voluntarily undertook to remediate all of their defective concrete. This is a leap too far. That Argos took a bite at the exterior remediation apple does not mean that it must now eat the interior remediation orange, too. Cf. Great N. Ins. Co. v.

*Ruiz*, 688 F. Supp. 2d 1362, 1380 (S.D. Ga. 2010) ("Even assuming the Association assumed a duty to provide general security, it is plain that the Association never assumed a duty to regularly monitor surveillance monitors for the purpose of residential fire prevention.").

Nor does Plaintiffs' allegation that Argos remediated interior concrete in others' homes let the Court infer that Argos undertook to do this for everyone. Dkt. No. 23 at 10. "[E]very person owes . . . a duty to exercise ordinary care to guard against injury which flows . . . [from] his act"—not his decision not to act elsewhere. *Sims v. Am. Cas. Co.*, 206 S.E.2d 121, 129 (Ga. Ct. App. 1974) (citation omitted). True, in *Rymer v. Polo Golf & Country Club Homeowners Association, Inc.*, 780 S.E.2d 95, 102 (Ga. Ct. App. 2015), reconsideration den'd Dec. 8, 2015, the Georgia Court of Appeals held that the defendant homeowners association might have undertaken to repair the plaintiff's drainage damage based, in part, on its indicating that it would replace a non-plaintiff homeowner's pipes. But there was a lot of other evidence that the defendant agreed to repair damage throughout the subdivision. It commissioned a subdivision drainage study, started collecting subdivision repair funds, said that it was addressing problems throughout the subdivision, "promised to make repairs to the [plaintiff's] Property," selected a

contractor, and obtained consent to inspect homeowners' properties. Id. Plaintiffs here, by contrast, have only alleged that Argos did some interior concrete remediation in properties belonging to others. This is not akin to the systematic allegations the Rymer plaintiff made.

Plaintiffs have not alleged that Argos negligently performed any remediation effort that it actually voluntarily undertook. For this reason, Argos's motion to dismiss Plaintiffs' negligent remediation claim is **GRANTED**.

## IV. PLAINTIFFS' CONCEALMENT/SUPPRESSION CLAIM IS DISMISSED.

Plaintiffs' penultimate plaint is for concealment/suppression. This claim will be dismissed because Plaintiffs lacked any direct relationship with Argos. Concealment/suppression is a fraud claim. See, e.g., Woodall v. Orkin Exterminating Co., 332 S.E.2d 173, 174 (Ga. Ct. App. 1985). Argos cannot be liable to Plaintiffs for fraud because it "was not a party to [any] contract" with them and Plaintiffs "do[ ] not allege that [Argos] had any knowledge of the sale" of the homes to them, so they "cannot claim [that Argos] was under a duty to disclose to [them] the defect." Moore v. Meeks, 483 S.E.2d 383, 384 (Ga. Ct. App. 1997); see also McCabe v. Daimler AG, 160 F. Supp. 3d 1337, 1351 (N.D. Ga. 2015) ("Plaintiffs have failed to cite to a single case in which a court has applied Georgia law to find a duty to

AO 72A
(Rev. 8/82)

disclose outside of a confidential or special relationship in facts similar to this case, where there is no evidence that Defendants had direct knowledge of Plaintiffs' purchases of the [items] in question and had no apparent relationship with Plaintiffs.").[10]   Therefore, Argos's motion to dismiss is **GRANTED** as to Plaintiffs' concealment/suppression claim.

## V. PLAINTIFFS' CLASS ALLEGATIONS ARE NOT STRICKEN.

"[Argos] moves to dismiss Plaintiff[s'] class allegations . . . Plaintiff[s], however, ha[ve] not yet filed a motion for class certification. The Court finds dismissal of Plaintiff[s'] class allegations inappropriate at this time." Lewis v. Scotbilt Homes, Inc., No. CV510-016, 2010 WL 11066490, at *9 (S.D. Ga. Oct. 27, 2010).   This is so despite Argos's concerns about the potential size of the class, and its attack on commonality and predominance.   See Dkt. No. 41 at 21-22; Martorella v. Deutsche Bank Nat'l Tr. Co., 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013) (considering class allegations involving all Floridians with mortgages through a servicer over six years, despite defendant attacks on

---

[10]   The same rule defeats Plaintiffs' argument that Argos's misrepresentations let them escape the economic loss rule. Dkt. No. 37 at 19-20.   Argos did not owe a duty against misrepresentation to all foreseeable users of its information, but only to those whom it was "actually aware [would] rely upon the information." Badische Corp. v. Caylor, 356 S.E.2d 198, 200 (Ga. 1987).   Although Plaintiffs were certainly foreseeable concrete users, they have not alleged that Argos was actually aware that they would rely on any of its representations.   The economic loss rule therefore applies with full force to Plaintiffs' claims for damage to their concrete, as discussed in Part I.A.

AO 72A
(Rev. 8/82)

typicality and predominance: "The question of class certification is generally not addressed on a motion to dismiss. [T]he shape and form of a class action evolves only through the process of discovery, and it is premature to draw such a conclusion before the claim has taken form." (citations and quotation marks omitted) (alteration in original)).

## CONCLUSION

For the reasons above, Argos's Plaintiffs' Amended Class Action Complaint, dkt. no. 28, is **GRANTED in part** and **DENIED in part**. Plaintiffs may proceed on their negligent design and manufacture claim to the extent that they allege that Argos is liable because the dust damages their real and personal property[11] and requires them to clean. They may proceed on their negligent failure to warn claim, except insofar as they allege that Argos is liable for damage to their Argos concrete itself. They may proceed in their effort to seek class certification. The remainder of their claims is hereby **DISMISSED**.

---

[11] Again, though, they may not proceed on their allegations relating to future home sale and refinancing.

AO 72A
(Rev. 8/82)

**SO ORDERED**, this 13th day of January, 2017.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)