IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| BECKY MCGAFFIN, JIM MCGAFFIN, ) <br> NATHAN LAVOIE, DANIEL NUNN, ) <br> STEFANIE NUNN, and RACHALE LAVOIE, ) <br>   ) <br> Plaintiffs, ) <br>   ) <br> v.   ) <br>   ) <br> CEMENTOS ARGOS, S.A., ARGOS USA CORP., ) <br> ARGOS CEMENT, LLC, and ARGOS READY ) <br> MIX LLC, ) <br>   ) <br> Defendants. ) <br>   ) | CIVIL ACTION FILE <br> NO. 4:16-cv-00104-LGW-GRS |

**ARGOS DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, IN PART**

This lawsuit was brought by Georgia homeowners suing for themselves and purportedly on behalf of other Georgians. (*See* Doc. 23 ¶¶ 4-6.) It involves claims under Georgia law relating to concrete poured in Georgia. (*See id*.) The Court need not take Argos Defendants' word for it—that is precisely how Plaintiffs have framed their lawsuit not once, but twice, in the operative pleadings submitted to this Court. From the outset of this litigation, Plaintiffs have pursued redress on behalf of individuals owning a home or lot and dwelling "*in the State of Georgia*." (Doc. 1 ¶ 46; Doc. 23 ¶ 95 (emphasis added).)

Despite the clear scope of their lawsuit, Plaintiffs have now tried to expand this litigation through an improper procedural mechanism: their motion for class certification. In that motion, Plaintiffs would fundamentally alter the scope of this litigation by adding a whole new group of persons (South Carolinian homeowners) who have entirely new types of claims (under South Carolina law). In doing so, Plaintiffs would impermissibly leapfrog the Rule 12 and Rule 15 limits

on claims brought in federal court, rewarding this type of procedural gamesmanship to Argos Defendants' prejudice.

As Plaintiffs acknowledge, Argos Defendants repeatedly objected to the inclusion of South Carolina homeowners in this litigation.[1] Plaintiffs had ample opportunity to move for leave to amend their pleadings to include South Carolina homeowners. They chose not to do so. Plaintiffs improperly now seek—for the first time almost two years after first filing suit—to include South Carolina homeowners in their proposed class. Plaintiffs cannot simply add South Carolina homeowners at this juncture and claim that their "broad claims for product defects" suffice. This deprives the parties and the Court of critical choice of law and other threshold analysis regarding any claim under South Carolina law. Plaintiffs fail to cite any case supporting their proposition that they may now, at this stage and in this manner, add non-Georgia residents to a class pursuing liability under Georgia or South Carolina law.

For these reasons and the reasons stated more fully in the Motion to Strike Plaintiffs' Motion for Class Certification, In Part, this Court should strike Plaintiffs' Motion for Class Certification to the extent it seeks to include South Carolina homeowners.

**I.     Plaintiffs cannot pursue "broad claims for product defects" unmoored from any law.**

Plaintiffs assert that their Amended Complaint stated "broad claims for product defects" and that it "did not specify application of Georgia law." (Doc. 98 at 8.) Thus, according to

---

[1] Plaintiffs' argument that Argos should have known they would change their class definition to include South Carolina residents because they sought discovery on South Carolina properties is unavailing. Plaintiffs sought expansive, inappropriate discovery on a number of topics—such as health issues (previously dismissed by the Court) and documents related to all Argos customers in the United States who purchased a variety of mixes. Serving discovery on topics outside the scope of the operative pleadings does not transform the litigation to include those topics, nor should it. Plaintiffs' attempt to end-run around the Civil Rules is improper.

Plaintiffs, inclusion of South Carolina homeowners is appropriate because these "broad claims" do not implicate any choice of law or other legal analysis. Plaintiffs are incorrect.

As an initial matter, Plaintiffs wrongly state that they "did not specify application of Georgia law." In Paragraph 92 of their Amended Complaint, Plaintiffs contend that Argos Defendants' conduct was so egregious that Plaintiffs are "entitled to an award of punitive damages under O.C.G.A. § 51-12-5.1." Thus, far from "not specify[ing] application of Georgia law," Plaintiffs unequivocally did so. In addition, their two proposed class definitions in two separate complaints limited the class to "the State of Georgia." (Doc. 1 ¶ 46; Doc. 23 ¶ 95.)

Indeed, it strains credulity that Plaintiffs asserted anything *but* claims under Georgia law in their pleadings. The parties have briefed Rule 12 arguments three times already: once for the original Complaint, and twice for the Amended Complaint in an initial motion to dismiss and a motion for reconsideration. (*See* Docs. 17, 28, 37, 41, 48, 49, 51.) In all, over 140 pages of briefing were submitted by the parties. In those 140 pages, there was not a single substantive discussion of South Carolina law. Nor did the Court in its order resolving Argos Defendants' motions discuss or cite to any South Carolina cases. (*See* Docs. 44, 55.) The Court relied on and discussed Georgia law—understandably, given that the Amended Complaint presented claims under only Georgia law. Plaintiffs never indicated to Argos Defendants or this Court that their claims were about non-Georgia law.

To this end, Plaintiffs' assertion that they seek "broad claims for product defects" makes no sense. Plaintiffs essentially claim that they seek recovery under some amorphous, general "product defects" law unmoored from any state's actual law. Not so. Some sovereign's law *must* apply to recover, whether Georgia's, South Carolina's, or some other state's. As discussed more fully in Section II, the Court must determine which law may apply to any South Carolina

3

homeowner's claims, and Plaintiffs cannot avoid such analysis just because it is convenient for them to do so.[2]

Taken to its logical end, Plaintiffs' position would allow a plaintiff to file a complaint with class action claims tagged on without specifying which jurisdiction's laws apply, thus upending the notion of a well-briefed Rule 12 practice. Then, only when filing a motion for class certification, a plaintiff could decide which state's or states' laws to use—whether Hawaii, California, Georgia, or South Carolina—regardless of whether the plaintiffs' claims were well-pled under that sovereign's laws. This procedure flies in the face of the Civil Rules. It should not be permitted here.

## II. This eleventh-hour attempt to include South Carolina homeowners has deprived this Court and Argos Defendants of critical, threshold briefing.

### A. Plaintiffs seek to bring claims under South Carolina law.

Plaintiffs' incorrect claim—that they seek "broad claims for product defects," without reference to any state's law—highlights the problem with their attempt to add South Carolinian homeowners at this late juncture. Specifically, the Court and the parties have not had the benefit of threshold briefing on any choice of law analysis or any ability for a South Carolina homeowner to pursue claims under South Carolina law at the outset.

---

[2] Plaintiffs' focus on the physical proximity of events at the center of this litigation is similarly unavailing. (*See, e.g.*, Doc. 98 at 8-9 ("Here, Plaintiffs' class definition includes only injured homeowners with the same Argos product—Argos' 868 design mix concrete used in residential flatwork applications—adding putative class members *who just happen to reside a few miles across the state line*." (emphasis added).) To Plaintiffs, the inconvenience of a state line cannot impede their pursuit of a class. Yet they acknowledge their definition now implicates two states with two separate legal regimes governing potential claims. Whether by an inch or a mile, the physical proximity is irrelevant when a state border is involved, and the import of that border cannot be jettisoned because its existence is an impediment to a litigant's desire for greater recovery.

Such threshold briefing would include a choice of law analysis. Take, for example, how things would have played out had Plaintiffs acted in a procedurally proper manner. Plaintiffs might have included claims on behalf of South Carolinian homeowners in their original Complaint or Amended Complaint. Then, during briefing for and in any decision on Argos Defendants' motion to dismiss, the parties and then the Court would have addressed whether Georgia or South Carolina law would apply to those South Carolinians' claims. And because Georgia applies the choice of law rule *lex loci delicti* for tort actions, *see Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 808 (2005), South Carolina substantive law would have applied to any claims brought on behalf of South Carolina homeowners. Plaintiffs may disagree with Argos Defendants' position, but this is the very type of disagreement that Rule 12 briefing would have resolved.

### B. Plaintiffs' cursory treatment of substantive South Carolina law is incorrect.

After determining that South Carolina law would apply to South Carolinian homeowners' claims, the parties would then need to address the merits of any claim under South Carolina law. Plaintiffs' terse treatment in a single footnote on this point implies that this crucial, preliminary briefing would be useless because "South Carolina law excludes new homebuyers from operation of the economic-loss rule." (Doc. 98 at 10 n.8 (citing *Kennedy v. Columbia Lumber & Mfg. Co.*, 386 S.C. 143 (1989).) This position does not comport with the class that they seek to certify, does not correctly state South Carolina law, and does not address the breadth of Argos Defendants' initial challenges.

### 1. Plaintiffs' class seeks to include more than just "new homebuyers."

First, Plaintiffs do not seek to include only "new homebuyers" in their class. Rather, they seek to certify a class defined as "[a]ll *current owners* of residential properties where 868 concrete was used in flatwork applications." (Doc. 66 at 1 (emphasis added).) Thus, Plaintiffs' cursory

5

remark does not address whether the economic loss rule under South Carolina law would affect individuals who are not "new homebuyers" and who, without a doubt, fall into Plaintiffs' proposed class of "[a]ll current owners."

Plaintiffs' own supporting documentation demonstrates that they do not seek certification of only new homebuyers in South Carolina. For example, Exhibit 474,[3] which purports to be every potential class member, lists a South Carolina property in Line 412. A simple property-record search on the Beaufort County, South Carolina government website, available at https://goo.gl/cwY9Mk (last visited Mar. 28, 2018), indicates that this property has had at least three different homeowners since 1997.[4]

**2. Plaintiffs are incorrect in their assessment of South Carolina law.**

Plaintiffs also incorrectly state that South Carolina law excludes new homebuyers from the economic loss rule under *Kennedy v. Columbia Lumber & Manufacturing Co*. In *Kennedy*, the Supreme Court of South Carolina affirmed judgment for defendant Carolina Lumber, which the court found to be merely a supplier and not a builder or a developer, in a suit brought by a homeowner for breach of the warranty of habitability. 299 S.C. at 337-38. Unlike Plaintiffs here, the plaintiff in *Kennedy* did not pursue any negligence-based claims. *See id.* at 338 (noting that the

---

[3] Exhibit 474 is located at Doc. 66-8 on the public docket and purports to be a list of every potential class member listed by address. Plaintiffs have moved to file the document under seal and have only submitted a placeholder document on the public docket.

It is worth addressing here Plaintiffs' notation in their Response that they will file an "Amended List of Properties Where 868 was Poured with their Reply brief." (Doc. 98 at 6 n.4.) Plaintiffs' claims have been constantly evolving, from adding South Carolina claims at the last minute to removing two class representatives two years after filing suit because the 868 mix was apparently not poured at their property. Attempting to once again amend their list—after Argos Defendants filed their Opposition to the Motion for Class Certification—will just be the latest episode of these constant changes. This is improper. Argos Defendants object to it.

[4] Courts may take judicial notice of information contained on government websites. *See, e.g., Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1300 & n.25 (N.D. Fla. 2017) (taking judicial notice of Escambia County Property Appraiser's real property records).

complaint eventually "delete[d] his cause of action for negligence"). To the extent the court carved out an exception to the economic loss rule, it did so only to allow that a buyer could proceed against a "builder and seller, or either of them." *Id.* at 344. The court did not hold that a plaintiff could escape the economic loss rule in a suit against a product manufacturer or supplier like Carolina Lumber or Argos Defendants.

Moreover, the Supreme Court of South Carolina has called into question the broad application of *Kennedy* beyond those specific facts and held that manufacturers do not fall under *Kennedy*'s exception. *See Sapp v. Ford Motor Co.*, 386 S.C. 143, 145 (2009) (describing *Kennedy*'s exception to economic loss rule as "narrow"). In *Sapp*, the court articulated *Kennedy*'s limited application stating that it only applied to suits against a "developer or builder where the builder violates an applicable building code, deviates from industry standards, or constructs a house that he knows or should know will pose a serious risk of physical harm." *Id.* at 147. It did not apply to manufacturers of products—such as Argos Defendants—and concluded that pre-*Kennedy* federal court decisions barring negligence actions against manufacturers remained unaffected by *Kennedy* and were correctly decided. *Id.* at 150.

Thus, not only does Plaintiffs' treatment of South Carolina law fail to address every potential class member from South Carolina that they seek to represent, but also Plaintiffs' characterization of South Carolina law misses the mark.

### 3. Plaintiffs fail to address other threshold arguments that Argos Defendants would make under South Carolina law.

Plaintiffs also fail to address other arguments set forth by Argos Defendants in challenging the Amended Complaint—arguments that would be similarly brought against claims raised under South Carolina law. Argos Defendants argued that Plaintiffs had no right of action under the Georgia statute that prohibits tort suits resulting from the violation of a duty arising from a contract.

7

(*See* Doc. 28 at 13-14.) Argos Defendants also argued that the doctrine of *caveat emptor* barred Plaintiffs' claims under Georgia law. (*See id.* at 14-15.) Here, the parties have not had the opportunity to address any applicable South Carolina statute that might bar Plaintiffs' claims as a matter of law, the doctrine of *caveat emptor* under South Carolina law, or any other unique South Carolina doctrine that may bar a South Carolina homeowner's claims.

### III. Because every named Plaintiff is a Georgia resident, they may not pursue claims under South Carolina law.

Plaintiffs likewise fail to demonstrate that they possess standing to pursue claims under South Carolina law on behalf of South Carolina homeowners. Plaintiffs contend that they may represent South Carolina homeowners because those putative class members "just happen to reside a few miles across the state line." (Doc. 98 at 9.)[5] Yet, each named Plaintiff is a Georgia resident. None professes to own any property in South Carolina—much less any South Carolina property allegedly affected by the 868 mix.

It is axiomatic that "[c]lasses cannot bring claims on behalf of individuals they do not represent." *Pardini v. Unilever United States, Inc.*, No. 13-1675 SC, 2014 WL 265663, at *9 (N.D. Cal. Jan. 22, 2014). Thus, where "a representative plaintiff is lacking for a particular state, all claims based on that state's law are subject to dismissal." *Granfield v. NVIDIA Corp.*, No. C 11 05403 JW, 2012 WL 2847575, at *4 (N.D. Cal. July 11, 2012); *see also Pardini*, 2014 WL 265663, at *9 (dismissing claims under New Jersey law because plaintiffs had "no connection to New Jersey whatsoever"). As demonstrated above, South Carolina law must apply to any claims brought

---

[5] Plaintiffs would effectively erase a state line separating two equal sovereigns to oversimplify physical proximity. Exhibit 474 demonstrates that class members live much farther apart than "just . . . a few miles." For instance, it lists properties from Register, Georgia and St. Helena Island, South Carolina. As the crow flies, over seventy-five miles separate these two locales.

on behalf of any South Carolina homeowners. Because each named Plaintiff is a Georgia resident and none is a South Carolinian, all claims based on South Carolina law must be struck.

Relatedly, these Georgia plaintiffs lack standing to bring claims under South Carolina law. They do not reside in South Carolina and their properties are not located in South Carolina. They suffered no alleged injury in South Carolina. Nor can they demonstrate that South Carolina law applies to their claims. Courts routinely dismiss claims where the purported class representative attempts to bring a class action under the laws of other states where he has not suffered any potential injury or where those states' laws would not apply to the putative class representatives claims. *See, e.g.*, *Smith v. Lawyers Title Ins. Corp.*, No. 07-12124, 2009 WL 514210, at *3 (E.D. Mich. Mar. 2, 2009) (dismissing claims under Arizona, Colorado, Maryland, Minnesota, Missouri, New Jersey, Tennessee, and Washington law because putative class representative had "not alleged injury in" those states "nor [were] his particular claims based on the application of the laws of those states); *Stone v. Crispers Rests., Inc.*, No. 6:06-cv-1086-Orl-31KRS, 2006 WL 2850103, at *1 (M.D. Fla. Oct. 3, 2006) (similar).

Because Plaintiffs have no South Carolina representative and each named Plaintiff—a Georgian through and through—lacks standing to pursue any claim under South Carolina law in this case, their claims on behalf of South Carolina homeowners must be struck.

**IV.     Plaintiffs cite no authority to support the proposition that they can now seek to certify a class including South Carolina residents.**

Plaintiffs contend that because a class definition can be modified during class certification proceedings, they may now include non-Georgia residents in their claims for relief under Georgia law. Plaintiffs cite no case for such a sweeping proposition.

For example, Plaintiffs cite *Prado-Steiman ex rel Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000), for the proposition that a class certification order may be amended at any time before a

9

decision on the merits. (Doc. 98 at 7.) But *Prado-Strienman* involved a single-state class and did not address the propriety of adding any non-state residents to the class definition at the class certification stage. And in *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-cv-3066-JEC, 2009 WL 856306 (N.D. Ga. Feb. 9, 2009), and *In re Domestic Air Transportation Litigation*, 137 F.R.D. 677 (N.D. Ga. 1991), the Northern District of Georgia similarly noted that class definitions may be revised as a result of discovery, but in both of those cases the claims were brought under *federal* anti-trust law. Unlike here, there was no concern that altering a class definition would deprive the court and litigants of critical preliminary briefing on the application of a different state's laws.

Thus, none of the cases cited by Plaintiffs support the proposition that they can haphazardly throw non-Georgia residents into a potential class. To Argos Defendants' knowledge, it would be unprecedented to allow a party to do so, and Plaintiffs have not cited any case where a court has ever permitted this to happen.

**V.      Plaintiffs acknowledge that they may not add theories of liability at the class certification stage.**

Plaintiffs cannot redefine their proposed class to include new theories of liability at the certification stage. *See Smith v. Secco, Inc.*, No. 4:15CV00147, 2016 WL 3541412, at *3 (E.D. Ark. Mar. 11, 2016). Plaintiffs concede this point but attempt to escape it by stating that their theory of recovery remains consistent—namely, that it involves a single course of conduct and only "broad claims" for products liability. They attempt to distinguish the result in *Smith* by claiming that *Smith* involved entirely new theories of liability. But that is exactly what Plaintiffs seek to do here by adding South Carolina claims—adding entirely new theories of liability under South Carolina law.

Plaintiffs cannot deny that they now seek to bring whole new theories of liability and causes of action under South Carolina law. As discussed above, Plaintiffs' motion for class certification would make this litigation, for the first time, now encompass South Carolina law and causes of action. This is precisely what *Smith* prohibits.

## VI. Plaintiffs missed their deadline to amend or add parties.

This Court's Amended Scheduling Order mandated that the last day to file motions to amend or to add parties was June 13, 2017. (Doc. 53 at 1.) This deadline was over a year (thirteen months) after Plaintiffs filed their initial complaint in May 2016. (*See* Doc. 1.) On September 2, 2016, Plaintiffs served their initial disclosures which included a South Carolina contractor "with knowledge of defective mixes, including dusting and strength issues." (Pls.' Initial Disclosures at 5, attached as Exhibit 1.) Plaintiffs also listed a South Carolina VP of Construction with "[k]nowledge of dusting issues; customer complaints; and remediation/repair work" who works for the Mungo Company. (*Id.* at 4.) In turn, Mungo Company builds homes primarily in South Carolina. *See* www.mungo.com/ (last visited Mar. 28, 2018) (listing five South Carolina localities, including Charleston, under "Find Your New Home"). The disclosures also included an Argos employee at the Hilton Head, South Carolina plant. (Pls.' Initial Disclosures at 3.) Plaintiffs cannot now represent that they did not know the 868 mix was used in South Carolina, and thus they had no opportunity to timely move for leave to amend their pleadings to change their class definition to include South Carolinian homeowners.

## VII. Plaintiffs make several assertions in their Response that are incorrect.

A number of assertions in Plaintiffs' Response need to be corrected. To start, and as explained in Sections II and VI above, Plaintiffs misstate South Carolina law. Plaintiffs also

incorrectly imply they were unaware that South Carolina properties received the 868 mix when in fact they were aware at an early point in the litigation.

Another assertion in Plaintiffs' Response that requires correction is when Plaintiffs feign surprise and claim that they are "deeply troubled" by the fact that Argos Defendants have limited its discovery responses to documents that relate to the use of the 868 mix in Georgia.[6] (Doc. 98 at 5 n.2.) Importantly, Plaintiffs acknowledge that Argos Defendants produced documents from certain South Carolina plants that "may be relevant to the case as pertaining to the sale of the at-issue concrete . . . for residential use *in Georgia*"—that is, documents originating from South Carolina plants that fall within the scope of this litigation. (Doc. 98 at 4 (emphasis added) (quoting Argos Defendants' response to Plaintiffs' discovery meet and confer).) Nevertheless, Plaintiffs go so far as to represent that they will seek "to compel the South Carolina discovery that Argos now says it did not make." (*Id.*)

Plaintiffs' suggestion that they thought Argos Defendants were going to produce every single document relating to South Carolina is belied by the very exhibits Plaintiffs attach to their Response. Argos Defendants have been clear from the outset that they would not produce documents related to South Carolina properties in a case where the operative pleading limits the claims to Georgia residential properties. This was made clear in Argos Defendants' responses to

---

[6] Plaintiffs also make several assertions about the candor of Argos Defendants' counsel. (*See, e.g.*, Doc. 98 at 4 n.1 (characterizing a meet and confer representation as "another example of a disingenuous statement").) This is not the first time that Plaintiffs have baselessly attacked Argos Defendants' counsel as falling short of ethical and professional standards. (*See, e.g.*, Doc. 49 at 10-11 (accusing Argos Defendants of conduct "designed to mislead this Court"); Doc. 51 at 19-20 (addressing Plaintiffs' accusation that Argos Defendants' counsel was trying to mislead the Court through proper quotation formatting); Doc. 98-4 at 1 (Argos Defendants' counsel responding to Plaintiffs' "baseless accusations of bad faith litigation conduct").)
   This needs to stop. Undersigned counsel requests that Plaintiffs either present Rule 11 letters or stop attacking counsel's candor and professionalism.

Plaintiffs' discovery requests when Argos Defendants objected to Plaintiffs' definition of the "Savannah, Georgia Area," stating that it was "not relevant to Plaintiffs' claims and disproportionate to the needs of the case to the extent the 50-mile radius surrounding Savannah, Georgia, includes area within South Carolina" because "Plaintiffs' putative class claims are limited to residential construction in Georgia." (Doc. 98-3 at 6.)

Plaintiffs imply that Argos's counsel's letter of June 22, 2017, led them to believe that Argos would be producing all South Carolina-related documents. That reading is belied by the portions of the letter that Plaintiffs quote, which indicate that only documents from South Carolina plants that pertain to the sale of the at-issue concrete for residential use in Georgia would be produced. (Doc. 98 at 4.) Moreover, a letter from Plaintiffs' counsel two weeks later shows that this implication is flat wrong. Plaintiffs' counsel stated "I understand that Argos is objecting to producing customer information for customers or properties located in South Carolina." (Doc. 98-5 at 3.) Plaintiffs did in fact understand that Argos would not be producing documents for South Carolina residential properties. Indeed, after acknowledging Argos's position, Plaintiffs' counsel asked for a smaller subset of South Carolina documents: customer complaints. (*Id*.) This is yet further proof that Plaintiffs' counsel fully understood Argos's position.

Argos Defendants' June 22, 2017, letter is a clear attempt to inform Plaintiffs of the scope of relevant discovery. Had Plaintiffs disagreed, the proper method was to further meet and confer and, if still not satisfied, move to compel. Plaintiffs did not do so. Reading the June 22 letter itself, as well as Plaintiffs' response, shows that Plaintiffs understood that Argos Defendants would produce documents from certain South Carolina plaints only to the extent they were "relevant to the case as pertaining to the sale of the at-issue concrete . . . for residential use in Georgia," such as because they were "documents regarding quality control, testing, and similar actions." (Doc. 98

13

at 4.) To now claim that Plaintiffs were unaware of Argos Defendants' position that it would not be producing documents related to South Carolina properties to justify adding South Carolina class members is improper. Plaintiffs were well-aware of Argos's position on the production of South Carolina-specific documents at an early point in this litigation. They have no basis for claiming otherwise.

## CONCLUSION

For the reasons set forth in Argos Defendants' Motion and for the reasons set forth above, Argos respectfully asks that this Court grant its Motion to Strike Plaintiffs' Motion for Class Certification, in Part.[7]

Respectfully submitted,

March 28, 2018

/s/ Jennifer R. Burbine
Jennifer R. Burbine (GA Bar No. 167807)
McGuireWoods LLP
1230 Peachtree Street, NE, Suite 2100
Atlanta, Georgia 30309-3534
(404) 443-5736 (Telephone)
(404) 443-5798 (Facsimile)
jburbine@mcguirewoods.com

R. Trent Taylor
(Admitted *pro hac vice*)
McGuireWoods LLP
Gateway Plaza
800 Canal Street
Richmond, Virginia 23219
(804) 775-1182 (Telephone)
(804) 775-1061 (Facsimile)
rtaylor@mcguirewoods.com

*Attorneys for Defendants Cementos Argos S.A., Argos USA Corp., Argos Cement, LLC, and Argos Ready Mix LLC*

---

[7] If the Court is inclined to let Plaintiffs pursue any claims on behalf of South Carolina homeowners, Argos Defendants request that they be afforded an opportunity to move to dismiss those claims under South Carolina law.

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which sent notification of such filing to all counsel of record.

/s/ *Jennifer R. Burbine*
Jennifer R. Burbine