# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

BECKY MCGAFFIN; JIM MCGAFFIN; NATHAN LAVOIE; DANIEL NUNN; STEFANIE NUNN; and RACHALE LAVOIE,

    Plaintiffs,

v.

CEMENTOS ARGOS, S.A.; ARGOS USA CORP.; ARGOS CEMENT, LLC; and ARGOS READY MIX LLC,

    Defendants.

CIVIL ACTION NO.: 4:16-cv-104

## O R D E R

This matter comes before the Court on Defendants' Motion to Strike Plaintiffs' Motion for Class Certification. (Doc. 84.) For the reasons outlined below and detailed in Defendants' pleadings, the Court **GRANTS** Defendants' Motion. While Plaintiffs' Motion for Class Certification will remain on the docket, Plaintiffs cannot broaden the scope of their proposed class to include claims regarding homes located outside the state of Georgia.[1]

## BACKGROUND

The facts and procedural background of this case are laid out in detail in the parties' numerous pleadings, and the Court need not fully restate them in order to rule on Plaintiffs' Motion to Strike. Plaintiffs claim that the concrete that Defendants supplied to their residential

---

[1] In its Motion, Defendants sought to strike Plaintiffs' Motion for Class Certification "to the extent that it seeks to broaden the proposed class to include homeowners outside of Georgia." (Doc. 84, p. 1.) To be clear, in this Order, the Court does not exclude from the proposed class individuals that legally reside outside of Georgia but who own residential properties within Georgia. In other words, the location of the home, not the homeowner's legal residence, controls.

properties contains a common defect inherent to the mixture of the concrete. (See generally doc. 23, pp. 7–19.) They contend that this common defect has caused a tremendous amount of concrete dust to infiltrate their homes. (Id.) Plaintiffs, all individuals who own homes within Georgia, filed this lawsuit on May 6, 2016. (Doc. 1.) They directly asserted numerous claims and proposed to assert the same claims on behalf of a class of similarly situated individuals defined as follows:

> All persons who own a home in the State of Georgia, purchased during the period May 6, 2013 to and including May 6, 2016, where and when Argos designed and manufactured concrete not properly proportioned in that it contained insufficient cement and/or excessive fly ash and/or the wrong type of fly ash and when said concrete was used in foundations, footings, driveways, walkways, garages, patios, slabs and other areas of the person's house and property.

(Id. p. 19.) Plaintiffs amended their Complaint on July 21, 2016. (Doc. 23.) That amendment contained a slightly revised definition of the proposed class:

> All persons who own a lot and a dwelling in the State of Georgia, purchased during the period May 6, 2013 to and including May 6, 2016, for which Argos supplied defective concrete not properly proportioned in that it contained insufficient cement and/or excessive fly ash and/or the wrong type of fly ash and when said concrete was used in slab applications for the person's dwelling and property.

(Id. at p. 32.)

Defendants then moved to dismiss Plaintiffs' Amended Complaint for failure to state a claim. (Doc. 28.) The parties fully briefed that motion. (Docs. 28, 37, 41.) On January 13, 2017, the Court granted the Motion to Dismiss in part and denied the motion in part. (Doc. 44.) The parties' briefs on the Motion to Dismiss only relied on Georgia law, and the Court analyzed the sufficiency of Plaintiffs' claims only under Georgia law. Following the ruling on the Motion to Dismiss, the parties engaged in substantial discovery pursuant to the Court's Scheduling Orders. (See docs. 53, 65.)

On January 29, 2018, Plaintiffs filed their Motion to Certify Class. (Doc. 66.) That motion contained the following definition of the proposed class:

> All current owners of residential properties where Argos 30RAF868 concrete was used in flatwork applications, i.e., poured as slabs on grade, including the slab on which the home is built, driveways, walkways, patios, and/or garage floors, between April 10, 2013 and October 21, 2013.

(Id. at p. 1.) On February 28, 2018, Defendants filed the instant Motion to Strike Plaintiffs' Motion to Certify. (Doc. 84.) Defendants argued that Plaintiffs' Motion for Class Certification and supporting materials "made clear for the first time that [Plaintiffs] intend to broaden their class to include homeowners in South Carolina." (Id. at p. 3.) They maintained that Plaintiffs should not be allowed to amend their Complaint through their Motion for Class Certification. (Id. at pp. 3–5.) Defendants further contended that they had litigated the Motion to Dismiss and engaged in discovery without notice that they would have to defend against South Carolina claims. (Id.)

Plaintiffs filed a response in opposition to Defendants' Motion to Strike. (Doc. 98.) Plaintiffs argued that the pleadings and correspondence between the parties gave Defendants fair notice that the case would include claims regarding South Carolina properties. (Id. at pp. 3–6.) Plaintiffs contended that only through class discovery were they able to ascertain that Defendants' defective concrete was also supplied to a significant number of residences in South Carolina. (Id. at p. 6.) Plaintiffs further reasoned that the Federal Rules of Civil Procedure and precedent from the Eleventh Circuit Court of Appeals "reflect the inherent flexibility of class definitions." (Doc. 98, p. 7.)

Defendants filed a reply to Plaintiffs' Response. Defendants reiterated their argument that inserting claims arising under South Carolina law would deprive the parties and the Court of the "threshold" Rule 12(b)(6) assessment of these claims. (Doc. 104, pp. 4–5.) Defendants also

3

highlighted variations between Georgia law and South Carolina law applicable to Plaintiffs' claims. (Id. at pp. 4–8.) Defendants further contended that because the named Plaintiffs are all residents of Georgia, they cannot represent South Carolina homeowners; that Plaintiffs may not add new theories of liability at the class certification stage; and that Plaintiffs missed the deadline to amend their Complaint. (Id. at pp. 8–11.)

The Court held a hearing on Defendants' Motion for Class Certification and related motions on November 8, 2018. (Doc. 150.) Following that hearing, this matter was stayed for the parties to pursue settlement discussions. (Doc. 163.) After the parties did not reach resolution, the Court then held another hearing on May 22, 2019. At that hearing, the parties provided additional argument regarding several motions including the Motion to Strike. (Doc. 174, pp. 181–209.) At the conclusion of the hearing, the Court indicated that it was inclined to grant the Plaintiffs' Motion for Class Certification as to liability because common issues of fact and law predominate. (Id. at pp. 233–237.) However, the Court explicitly reserved ruling as to whether the class would include any South Carolina properties and allowed for additional briefing from the parties. (Id. at pp. 244—45.) The parties have now filed their post-hearing briefs through which they maintain their respective support of and opposition to the Motion to Strike. (Docs. 175, 176.)

**DISCUSSION**

Much of the parties' briefing and oral argument on this motion has focused on when the Plaintiffs knew of the prospective South Carolinian plaintiffs and whether Plaintiffs provided timely notice to Defendants of their intent to include claims arising under South Carolina law. The Court need not resolve the parties' arguments on those issues to resolve Defendants' motion. Even if the Plaintiffs did not learn of the putative South Carolinian plaintiffs until well into

4

discovery and shortly before they filed their Motion for Class Certification, the Court would not allow Plaintiffs to insert claims arising under South Carolina law into this action. Expanding the class to include such claims would frustrate the very purposes of judicial efficiency and economy that class litigation under Rule 23 is designed to promote.

As the Court explained at the May 22, 2019 hearing, the Court is inclined to grant Plaintiffs' Motion for Class Certification at least as to liability because of common issues of law and fact as to the proposed class members' homes within Georgia. Plaintiff has argued that the same common issues of fact that predominate as to the Georgia homes also exist as to the homes in South Carolina. Indeed, it does appear that the alleged defects in the putative plaintiffs' homes in South Carolina arise from the same factual background as the alleged defects in Plaintiffs' homes in Georgia. However, the law under which those allegations would be litigated differs. Defendants point out, and Plaintiffs do not dispute, that while claims pertaining to homes located in Georgia would be judged under the substantive law of Georgia, South Carolina's substantive law would govern any claims as to homes located in South Carolina. (See Doc. 104, pp. 4–5.)

"Although there is no categorical bar to class treatment where the law of multiple states will apply, courts have expressed some skepticism of such treatment, particularly in substantive areas where the content of state law tends to differ." Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1180 (11th Cir. 2010) (citing Coca-Cola Bottling Co. of Elizabethtown v. Coca-Cola Co., 95 F.R.D. 168, 177 (D. Del. 1982)). "Undeniably, it falls to the plaintiff to demonstrate the homogeneity of different states' laws, or at least to show that any variation they contain is manageable." Id. (citing Klay v. Humana, Inc., 382 F.3d 1241, 1262 (11th Cir. 2004)). Plaintiffs have attempted to minimize any

5

differences between South Carolina law and Georgia law. (Doc. 175, pp. 10–14.) However, Defendants have provided compelling examples of variations between how the states would assess Plaintiffs' claims and Defendants' defenses.[2] (See Doc. 104, pp. 5–8; doc. 174, pp. 195; doc. 176, pp. 2–3.) Moreover, while Plaintiff contends that the variations in state law go only to damages, this understates their impact. For instance, the Court's sifting of Plaintiffs' various claims in the Order on Defendants' Motion to Dismiss demonstrates just how critical state law doctrines are to the viability of Plaintiffs' claims. (See Doc. 44, pp. 5–28.) After an extensive discussion of Georgia precedent, the Court allowed some claims to survive while dismissing other claims pursuant to nuances in Georgia's substantive law including the economic loss rule, limitations on the recovery for injuries to health, and limitations on the duty to disclose. (Id.) Plaintiffs do not sufficiently address whether the analysis of these critical threshold issues would differ under South Carolina law. Further, Plaintiffs do not address Defendants' arguments regarding the difference between South Carolina and Georgia's statutes of limitations. Thus, Plaintiffs have not demonstrated the "homogeneity of different states' laws." Sacred Heart Health Sys., Inc., 601 F.3d at 1180.

Plaintiffs have also not demonstrated that the variation between the laws of Georgia and South Carolina "is manageable." Id. The differences between the law applicable to South Carolina homes and Georgia homes would be particularly difficult to manage given the unique procedural posture of this case. Plaintiffs sought to expand the class to include South Carolina homes after the litigation of Defendants' Motion to Dismiss and after significant class-based discovery. Again, the litigation of Defendants' Motion to Dismiss required the parties and the Court to delve deeply into Georgia substantive law. If the Court were to allow Plaintiffs to now

---

[2] At the very least, the parties' disputes regarding the amount of differences between the law of the two states demonstrates that the interjection of South Carolina claims will muddle the litigation of this matter.

expand the class to include South Carolina claims, Defendants would at least be given the opportunity to similarly test the sufficiency of those claims under Rule 12(b)(6). That motion would require the parties and the Court to delve deeply into the law of an entirely different jurisdiction.[3] That motion practice, not to mention additional class-based discovery, would unduly delay and complicate the litigation of the claims of the Georgia class members.

At the May 22, 2019 Motions hearing, Plaintiffs' counsel conceded that the addition of South Carolina class members may result in a "slight delay" but argued that the delay could be mitigated by creating a subclass for the South Carolina claims. (Doc. 174, p. 200.) However, even Plaintiffs' counsel conceded that if the Georgia claims proceeded on their current track, the South Carolina subclass may not "catch up." Having two subclasses proceeding on entirely different timeframes would cause delay and complication and would diminish many of the benefits of class litigation. The Court would essentially have two different lawsuits, each in a different stage of litigation. Moreover, even if the South Carolina class could "catch up" to the Georgia class, the variations between the law of the two states would still permeate throughout the litigation of this case. From legal rulings at the summary judgement stage to instructions to the jury on the applicable law, the assessment of Plaintiffs' claims under the divergent laws of two jurisdictions would cause complication, confusion, and delay such that common issues of law and fact would no longer predominate. See Fed. R. Civ. P. 23(b)(3). Thus, the inclusion of South Carolina claims would cause difficulties in managing the class action that outweigh the benefits of including these claims in the class. See Fed. R. Civ. P. 23(b)(3)(D).

---

[3] As Defendants point out, while this Court often applies the law of different jurisdictions, a South Carolina court would be better equipped to conduct the analysis of South Carolina law than a court located in Georgia.

## CONCLUSION

For the above reasons as well as those stated by the Defendants in their pleadings and oral argument, the Court **GRANTS** Defendants' Motion to Strike. Plaintiffs' Motion for Class Certification remains before the Court, but Plaintiffs will not be allowed to assert claims regarding homes located outside the state of Georgia.

**SO ORDERED**, this 30th day of August, 2019.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA