**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

BECKY MCGAFFIN; JIM MCGAFFIN;
NATHAN LAVOIE; DANIEL NUNN;
STEFANIE NUNN; and RACHALE
LAVOIE,

            Plaintiffs,

        v.

CEMENTOS ARGOS, S.A.; ARGOS USA
CORP.; ARGOS CEMENT, LLC; and
ARGOS READY MIX LLC,

            Defendants.

CIVIL ACTION NO.: 4:16-cv-104

**O R D E R**

    This matter is before the Court on Plaintiffs' Motion for Class Certification.  (Doc. 66.)

Plaintiffs also filed a Motion for Hearing on the Motion to Certify, (doc. 69), which the Court

granted, (doc. 145).  The Court heard argument on November 8, 2018, (doc. 150), and again on

May 22, 2019, (doc. 173).[1]  For the reasons and in the manner stated at the May 22, 2019 hearing

---

[1]  On May 22, 2019, the Court further heard argument and ruled on four *Daubert* motions: doc. 79
(Defendants' Motion to Exclude Opinions of Allen M. Chung), doc. 80 (Defendants' Motion to Exclude
Opinions of Brian J. Wolfe), doc. 108 (Plaintiffs' Motion to Exclude Certain Opinions of Keith R. Ugone),
and doc. 111 (Plaintiffs' Motion to Exclude Opinion of Mark A. Rhodes)).  The Court provided detailed
analysis and rulings on these motions on the record at the May 22, 2019 hearing.  With the exception of
two opinions by Brian J. Wolfe (as to airborne silica and its respirable dangers), the Court ruled that all
proffered opinions were from qualified experts, who applied reliable methodologies, fit to the facts of this
case, and that the expert opinions would be of assistance to the Court at the class action stage.  Thus, subject
to the single exception, the four *Daubert* motions were denied, as these experts' opinions satisfy the
gatekeeper standard and are appropriately considered as to class certification.  *See Sher v. Raytheon Co*.,
419 Fed. App'x 887 (11th Cir. 2011).  Thus, for these reasons stated at the hearing, the Court **DENIES**
Defendants' Motion to Exclude Opinions of Allen M. Chung, (doc. 79), **DENIES IN PART AND
GRANTS IN PART** Defendants' Motion to Exclude Opinions of Brian J. Wolfe, (doc. 80), **DENIES**
Plaintiffs' Motion to Exclude Certain Opinions of Keith R. Ugone, (doc. 108), and **DENIES** Plaintiffs'
Motion to Exclude Opinion of Mark A. Rhodes, (doc. 111).  The Court has considered the non-excluded
opinions of these experts in ruling on Plaintiffs' class certification motion.

and in this Order, the Court **GRANTS IN PART** Plaintiff's Motion for Class Certification. (Doc. 66.)[2]  Plaintiff certifies the proposed class as to the issue of liability only.  Additionally, for the reasons stated in the Court's Order granting Defendant's Motion to Strike, the Court limits the proposed class to individuals owning affected properties located within the state of Georgia.

Due to confidentiality issues, both hearings on this Motion (including the exhibits addressed therein and transcripts thereof) were sealed.  This Order refers to many of the matters that the parties have sought to maintain under seal and the Court has allowed to be filed under seal. Therefore, for the reasons stated in the Court's prior sealing orders, the Clerk of Court shall file an unredacted version of this Order **UNDER SEAL** in a manner that the Order may be accessed by the parties to this case but shall not be available on the public docket.  The Court shall provide a redacted version of this Order that the Clerk shall file on the Court's public docket.

### BACKGROUND[3]

### I.     The parties and putative class.

Plaintiffs Jim and Becky McGaffin, Rachale and Nathan LaVoie, and Daniel and Stefanie Nunn, filed this putative class action against Defendants Cementos Argos S.A., Argos USA Corp., Argos Cement, LLC and Argos Ready Mix LLC (collectively, "Argos").  (Doc. 23.)  Plaintiffs

---

[2]  At the conclusion of the hearing, the Court ordered counsel for the Plaintiffs to provide the Court with a draft proposed order on the Motion for Class Certification.  The Court has relied heavily on that proposal in issuing this Order.  However, the Court has scrutinized the Order and has made certain that the conclusions contained herein are supported by the record and relevant authorities.

[3]  In this Section and throughout this Order, the Court makes several statements regarding the proof supporting Plaintiffs' claims and at times expresses preliminary conclusions regarding the evidence the Court has reviewed.  It is necessary for the Court to make these statements and conclusions to make the assessments underlying a class certification determination.  Further, the Court makes these statements and conclusions after a thorough review of the record in this case.  However, the Court stresses that it only makes these statements and conclusions for the purposes of ruling on Plaintiffs' Motion for Class Certification.  Defendants dispute many of the factual matters discussed herein, and discovery in this case is still ongoing.  Nothing in this Order should be considered a final determination on the merits of any of the parties' claims and defenses.

allege that certain concrete supplied by Argos was defective in design and that Argos failed to

warn that this concrete, sold for slab or flatwork use in and around their homes, was inappropriate

for such use. (*Id.* at pg. 2, 10.) Each of these couples purchased a new home that was built utilizing

Argos concrete in the slab foundation, porches, garages, driveways and sidewalks. (*Id.* at pg. 4.)

In discovery, Plaintiffs have testified as to their experiences with dusting and other surface

durability problems with that Argos concrete. (Doc. 66-1-460, pp. 58-65; 479, pp. 4-8; 462, pp.

183-190.)

Following an amended complaint, motions practice, and fact and expert discovery as to

class certification issues, Plaintiffs have identified some 600 properties where a certain Argos mix,

called 30RAF868 or "868," ███████████████████████, was poured. (Doc. 66-1-474;

Doc. 107-546 (updated).) They have moved to certify a class of the following:

> All current owners of residential properties where Argos 868
> concrete was used in flatwork applications, i.e., poured as slabs on
> grade, including the slab on which the home is built, driveways,
> walkways, patios, and/or garage floors, between April 10, 2013 and
> October 21, 2013.[4]

(Doc. 66-1, p. 1.)

The McGaffins and Nunns seek to be appointed class representatives, contending that the Argos

868 mix concrete in and around their homes has presented common surface durability and dusting

problems, rendering it defective, that their interests are aligned with those of the absent class

---

[4] Argos' counsel has confirmed that 868 mix was only used in flatwork applications in Georgia and South
Carolina. (Doc. 174, pp. 182-83.) Argos moved to strike the class definition insofar as it includes
individuals owning affected properties in South Carolina as class members. (Doc. 84.) The Court granted
that Motion by Order issued contemporaneously with this Order. Thus, for the reasons stated in that Order,
the class shall be limited to individuals owning properties in Georgia.

members, and that they have worked and will continue to work diligently to prosecute the interests of the proposed class.[5]  (*Id.* at p. 22.)

Cementos Argos S.A., a publicly-traded corporation based in Colombia, South America, is the fourth largest concrete producer in the United States.  *See* www.argos-us.com/About-Argos. Cementos Argos conducts business in the United States through subsidiary entities including the other named Argos Defendants.  (Doc. 66-1, p. 6.)  This case is based on acts and omissions of the Savannah Division of Argos' United States operations, which includes eight ready-mix concrete plants in:  Savannah, Statesboro, Rincon, Richmond Hill, Liberty, Brunswick, and Pooler, Georgia, and Hilton Head, South Carolina.  (Doc. 66-1-461, pp. 196-97.)



---

[5] Although the LaVoie home includes Argos concrete that has manifested similar dusting issues, the Argos concrete in and around the LaVoie home is not 868 mix.  Accordingly, Plaintiffs Nathan LaVoie and Rachale LaVoie do not presently seek to be appointed as class representatives.





III.    **Argos' investigation supports that 868 mix was defective for use in slab and flatwork concrete.**

As reflected in Argos' documents, starting in approximately September 2013, Argos received multiple complaints about 868 mix concrete that was purportedly excessively dusting, at multiple locations, in both interior and exterior slab and flatwork applications.  (Doc. 66-1-56; 107; 110-113; 131-134; 191; 464, p. 48-50; 466, p. 26-29; 469, p. 12-18; 58A (3 driveways in Emerald Plantation); 58B (2 driveways in Savannah Quarters); 253 (5 driveways in Godley Park).) Argos' Director of Quality Assurance Godwin Amekuedi knew, at the outset of its Savannah dusting investigation, even prior to any testing, that the problem was the use of the wrong mix, for the wrong application, because Argos' 868 mix had been approved only for footer applications. (Doc. 107-534, pp. 160-61; Doc. 66-1-187.)  Amekuedi recommended that Argos tear out and replace at least all exterior flatwork concrete.  (Doc. 107-534, pp. 160-61; Doc. 66-1-64.)  Argos' documents, including internal emails, as well as deposition testimony from Argos personnel directly involved in 868 mix matters, demonstrate that there was a common problem with 868 mix when used in slab or flatwork applications, resulting in a Savannah-area dusting issue.  (*See e.g.*, Doc. 66-1-15; 17; 20; 41; 56; 58A; 58B; 64; 71; 127; 182 p. Argos_040004537-38; 183; 187; 189; 191; 212; 246; 253; 254; 256; 274; 277-284; 335; 336, 350; 351; 451; 459, pp. 123-24; 467, pp. 31-33; 470; 512, pp. 123-24, 160-61; Doc. 107-156; 248; 535, pp. 32-33.)

Argos' documents further record that the "root cause" of the Savannah dusting claims was its use of the "wrong mix."  (Doc. 66-1-41, pp. 3-4 (identifying "Dusting" as the "Primary Reason" for the Claim, and "Wrong Mix" as the "Root Cause."); Doc. 66-1-182, p. Argos_040004537-38 (containing a similar chart); Doc. 66-1-187 ("dusting is a durability issue"); Doc. 66-1-183, p. Argos_100000050 (Melton timeline admitting that the "…mix was not intended for slab applications.").)  Although Argos' experts contend that 868 mix dusting and durability issues could

have been mitigated by certain finishing practices, Argos' documents support Plaintiffs' contentions that 868 was not designed for, and thus not appropriate for, slab or flatwork applications.  (*See e.g.*, Doc. 66-1-41, pp. 3-4; 182, p. Argos_040004537-38; 187; 459, pp. 123-24; 467, pp. 31-33; 470, p. 1-2, 12; 512, pp. 123-24, 160-61.)  Prior to litigation, in responding to Savannah dusting complaints, Argos remediated both exterior and interior slabs of 868 concrete.  (Doc. 66-1-350; 351; 461, p. 119-155 (reviewing emails of complaints and Argos' response thereto at Exs. 15-17, 20, 194, 253, 254, 274, 303, 330, 335, 336, 338); 469, p. 21.)  Argos continued to receive complaints through at least April 2016.[7]  ((Doc. 66-1-56, p. Argos_030005672 (April 20, 2016 complaint of dusting driveway).)  Testimony from Argos' employees and its documents further reflect a corporate decision to remediate 868 mix concrete on a case-by-case basis, only in response to formal individual complaints, and to take no action as to any other 868 mix concrete for which Argos did not receive formal complaints.  (Doc. 66-1-64; Doc. 107-531, p. 219.)

## IV.  Expert evidence further supports Argos' conclusion that 868 mix is defective for flatwork/slab use ████████████████████████████████████████
████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[7] The Complaint was filed May 5, 2016.  (Doc. 1.)

██████████████████████████████████████████████████████

██████████████████████████████████████████████ Mr. Wolfe says that use

of 868 mix will consistently and repeatedly produce slabs with surface durability and dusting

issues.  (*Id*.)

On the other hand, Argos' concrete expert Mark A. Rhodes contends that, due to an

inappropriate sample and/or sample size, Mr. Wolfe lacks sufficient data to draw the conclusion

that 868 is defective and will dust excessively in all flatwork applications.  (Doc. 82, p. 7; Doc.

80, pp. 10, 18.)   Argos' other concrete expert, Harry Moats, contends that proper finishing

techniques could have resulted in slabs of 868 mix that had only minimal levels of dusting.  (Doc.

82, p. 7; Doc. 82-9, p. 1.)  That said, Mr. Moats expressed agreement with Mr. Wolfe's report and

conclusions and noted that, per Argos' documents, 868 mix seemed to be a problem wherever it

was poured.  (Doc. 107-526, p. HM0000598; 532, p. 153.)

Additional experts, industrial hygienists – Plaintiffs' Allen Chung and Argos' Jeffrey Cook

– collected samples of the dust from Plaintiffs' homes.  (Doc. 107, p. 21.)  Without prior agreement

or knowledge that the other side was doing so, both sent their samples to the same laboratory

(Environmental Analysis Associates, Inc., or "EAA") for scanning electron microscopy ("SEM")

analysis, and even to the same EAA chemical engineer, Dan Baxter.  (*Id*. at 21-22.)   Although

Argos quibbles as to the collection of certain samples, the significance of the levels of these

markers, and the possibility of alternative sources, the EAA SEM reports and their interpretation

from both industrial hygienists confirmed ███████████████████████████████████████

█████████████████████████████████████ – in the dust in and around the Plaintiffs'

homes.  (Doc. 107-471, p. 1 (of report); 540, p. 81; 541, p. 31-32.)

**V.      Plaintiffs present a remediation plan with a "cost per square foot" damages formula.**

Plaintiffs' expert Mr. Wolfe, who has developed and overseen hundreds of concrete remediation plans, proposes a location-dependent remediation plan.  (Doc. 61-1-470, p. 12).  He opines that exterior (sidewalk, driveway, porch) 868 mix slabs or flatwork should be removed and replaced, that garage slabs be ground down and sealed, and that interior slabs be ground to a solid surface, without the necessity of sealing because floor coverings will be replaced over the indoor remediated concrete.  (*Id.*)  He further opines that the damages can be calculated on a square foot basis, with the cost varying by location, much as Argos calculated its prior estimated and actual remediation costs.  (*Id.*)

Argos' expert Mr. Rhodes developed and executed a similar remediation plan, with a similar per square foot damages calculation in another class action, post-certification.  (Doc. 107-533, pp. 44-48.)  Argos' expert economist Dr. Keith Ugone contends that Mr. Wolfe's damages methodology is flawed because Argos' own data demonstrated that costs varied widely depending upon individualized issues.  (Doc. 107-510, pp. 45-48 (of report).)

<b>LEGAL STANDARD FOR CLASS CERTIFICATION</b>

To obtain class certification, Plaintiffs bear the burden of satisfying the requirements of Rule 23(a) and at least one sub-part of Rule 23(b).  *City of Hialeah v. Rojas,* 311 F.3d 1096, 1101 (11th Cir. 2002); *Turner v. Beneficial Corp.,* 242 F.3d 1023, 1025 (11th Cir. 2001).  The Rule 23(a) requirements are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  The class must also be "adequately defined and clearly ascertainable."  *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).  Rule 23(b)(3), under which Plaintiffs seek certification, further

requires evidence that (1) the common issues of law or fact predominate over individual questions, and (2) a class action is superior to other available methods of adjudication.

Courts perform a "rigorous analysis" of the particular facts and arguments asserted in support of class certification. *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). This analysis entails some overlap with the merits of the underlying claim, but merits questions are considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites are satisfied. *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1194-95 (2013). *See also Navelski v. Int'l Paper Co.,* 261 F. Supp. 3d 1212, 1215-16 (N.D. Fla. 2017) (quoting *Amgen* for the rule that "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

Rule 23(c)(4) further provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."

Whether to certify a class is committed to the district court's sound discretion. *See Hines v. Widnall*, 334 F.3d 1253, 1255 (11th Cir. 2003); *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1347 (11th Cir. 1983). Moreover, a class certification order is subject to alteration or amendment at any time prior to a decision on the merits. *See* Fed. R. Civ. P. 23(c)(1)(C); *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1254 (11th Cir. 2006).

## DISCUSSION

### I.   Rule 23(a)

#### A.   Numerosity

Numerosity requires that joinder of all members of the putative class be "impractical." Fed. R. Civ. P. 23(a)(1). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is

inadequate, more than forty adequate[.]" *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (quoting 3B Moore's Federal Practice ¶ 23.05[1] at n. 7 (1978)).  Argos poured over 21,000 cubic yards of 868 mix on over 600 properties, the vast majority of which are residential.   (Doc. 66-1-474; Doc. 107-546 (updated); Doc. 66-1-64; 38; 43-49; 187, p. Argos_100000093; 212; 327, p. 1; Doc. 82-7, p. 74, 118; 8, p. 3, 15 (over 21,000 cubic yards of 868 poured).)  Argos does not appear to contest numerosity, and a class of nearly 600 residential property owners meets the numerosity requirement.   It is large enough to benefit from the efficiencies contemplated by Rule 23, but not so large as to become unwieldy.

### B.    Commonality

The threshold for establishing commonality is not high, and "for purposes of Rule 23(a)(2) even a single common question will do." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).  Class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.  The key consideration is whether a class action can "generate common answers apt to drive the resolution of the litigation." *Id.* (emphasis in original) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L.Rev. 97, 132 (2009)).  Commonality is satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride Antitrust Lit.*, 220 F.R.D. 672, 687 (S.D. Fla. 2004).

Here, the record demonstrates numerous questions of fact and law that, based on common evidence, will likely yield answers common to all putative class members.  Indeed, Argos' single course of conduct as to the 868 mix, including its design and intended use and whether Argos warned anyone of the substitution of 868 mix for the Savannah Division's standard residential mix

█████████████████████████ demonstrates common questions as to defect and liability as to Plaintiffs' (and the putative class members') claims.

### C.    Typicality

To satisfy the third requirement of Rule 23(a), representative plaintiffs' claims and defenses must be typical of the claims and defenses of the class.  Fed. R. Civ. P. 23(a)(3).  But "[c]lass members' claims need not be identical to satisfy the typicality requirement." *Ault v. Walt Disney World Co*., 692 F.3d 1212, 1216 (11th Cir. 2012).  The question is "whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Cooper v. Southern Co*., 390 F.3d 695, 713 (11th Cir. 2004), overruled on other grounds by *Ash v. Tyson Foods, Inc*., 546 U.S. 454, 457 (2006) (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)).  Such a nexus "is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984).  Typicality is satisfied when "a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *Andrews v. AT&T Co.,* 95 F.3d 1014, 1022 (11th Cir. 1996), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639, 641 (2008).

Here, Argos poured 868 mix for flatwork and slab applications on the McGaffin and Nunn properties between April 10 and October 21, 2013, as it did on some 600 other properties.  (Doc. 66-1-451; 452; 453; 456; 457.)  Argos sold and distributed over 21,000 cubic yards of 868 mix, largely for flatwork and slab applications, ███████████████████████████ ██████. (Doc. 66-1-64; 38; 43-49; 187, p. Argos_100000093; 212; 327, p. 1; Doc. 82-7, p. 74, 118; 8, p. 3, 15.)  The McGaffin and Nunn properties were thus poured with the "wrong mix," for

the wrong application.  Although some remediation has occurred, defective 868 mix concrete remains and continues to cause dust in their homes.  (Doc. 66-1-479, pp. 4-8; 462, pp. 183-190.) The McGaffins' and Nunns' claims and damages arise from the same core conduct giving rise to all other putative class members' claims and damages.  As discussed *supra*, the evidence already adduced provides common answers to common questions, evidence and answers that will prove not only the named Plaintiffs' claims and damages, but also those of absent class members, and do so on a class-wide basis.  There is more than a sufficient nexus between and among the claims of the McGaffins and the Nunns and other members of the putative class on whose property 868 was poured to demonstrate typicality.

### D.  Adequacy of Representation

The adequacy of representation requirement demands a demonstration that the class representatives "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). "'Adequacy of representation' means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel."  *Piazza v. Ebsco Inds., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (citation omitted).

The McGaffins and the Nunns are adequate representatives.  They have no claim and no interest different from or antagonistic to absent class members.  No defense is particular to either the McGaffins or the Nunns.  The McGaffins and the Nunns have already vigorously prosecuted this action.  They have provided extensive information for initial disclosures and responses to Argos' substantial discovery and been deposed.  They have allowed representatives and experts for Argos (and the putative class) to inspect and test their properties.  They have further retained and diligently worked with counsel experienced in class actions and attended hearings before the Court.  Rule 23(a)(4) is satisfied.  (Doc. 66-1, p. 22.)

### E.     Ascertainability

A threshold requirement that is not mentioned in Rule 23, but is implicit in the analysis, requires plaintiffs to demonstrate that the proposed class is "'adequately defined and clearly ascertainable.'" *Little v. T-Mobile USA, Inc*., 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). This analysis of objective criteria must be "a manageable process that does not require much, if any, individual inquiry." *Newberg on Class Actions* § 3.3 p. 164 (5th ed. 2012).

Here, Argos has produced spreadsheets, delivery tickets, batching comparison reports, and other evidence identifying every property on which 868 mix was poured, how many cubic yards were poured, the delivery dates, and other pertinent information. (Doc. 66-1-38 (spreadsheet of 868 pours); Doc. 66-1-451; 456; 457; 476; 477 (delivery tickets); Doc. 66-1-352; 475; 478; Doc. 107-521 (batching comparison reports); Doc. 66-1-64; 43-49; 187, p. Argos_100000093; 212; 327, p. 1; 467; Doc. 82-7, p. 74, 118; 8, p. 3, 15 (amount of cubic yards poured).) Although many of these documents refer to "lot numbers" in new developments, Plaintiffs have converted most "lot number" references to street addresses via review of publicly-available subdivision plans and public records and have identified the names of the homeowners. (Doc. 66-1-64; 474; Doc. 107-546 (updated).) Plaintiffs have thus identified the Savannah-area properties with 868 mix concrete. Argos' remediation records, complaint files, and binders of investigative files, as well as builder and concrete finisher files, further detail whether, and if so, what remediation, repair, or replacement occurred. (Doc. 66-1-56; 58A; 58B; 253; 254; 336; 338; 451 (complaint forms); Doc. 66-1-239; 17; 41-49; 182 p. Argos_040004537-38; 240; 327; 330; 350; 351 (remediation, repair, replacement documents); Doc. 66-1-233; 277-284 (meeting minutes).) Using this objective information, each putative class member has been or will be identified and can be provided notice

of the claims against Argos for its defective 868 concrete.  Plaintiffs have provided an updated spreadsheet of the addresses of properties where 868 was poured to the Court, satisfying ascertainability.

## II.     Rule 23(b)(3)

### A.     Predominance

#### 1.     Predominance as to liability issues.

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability . . . ."  *Babineau v. Federal Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (alterations and quotations omitted).  Accordingly, in evaluating predominance, courts (1) identify the parties' claims and defenses and their elements, (2) determine whether these issues are common questions or individual questions by analyzing how each party will prove them at trial, and (3) determine whether the common questions predominate.  *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016).  The Eleventh Circuit requires district courts to "assess predominance with its overarching purpose in mind—namely, ensuring that 'a class action would achieve economies of time, effort, expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Id.* at 1235 (quoting *Windsor*, 521 U.S. at 615).  Importantly, "[w]hether an issue predominates can only be determined after considering what value the resolution of the classwide issue will have in each class member's underlying cause of action."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004).

Under the proposed class definition, every member received 868 mix poured as flatwork or slabs.  ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████



He opines that the 868 mix will consistently and repeatedly produce slabs with surface dusting issues.  (*Id.* at 2, 12.)  At deposition, Mr. Wolfe explained that ██████████████████████████████████████████████ "it's going to be nearly impossible to achieve a surface that doesn't dust."  (Doc. 109-555, p. 184.)

Argos challenges Mr. Wolfe's opinions with its own experts, arguing that the 868 mix is not defective.  Argos' concrete expert Mr. Rhodes contends that Mr. Wolfe neither considered possible alternative dusting causes nor conducted sufficient testing to draw the broad conclusion that all, or even most, 868 mix will dust.  (Doc. 80, p. 15-18.)  Argos' second concrete expert, Mr. Moats, contends that if non-parties like builders and concrete finishers had properly done their jobs, it is entirely possible that any given batch of 868 mix would have only minimal dusting. (Doc. 82, p. 7; Doc. 82-9, p. 1.)

Argos' Mr. Moats, however, at least in his notes, expressed agreement with Mr. Wolfe's report and conclusions and, in reviewing Argos' materials, noted that the 868 mix seemed to be a problem wherever it was poured.  (Doc. 107-526, p. HM0000598; 532, p. 153.)  The Court further reviewed voluminous Argos 868 mix investigation materials that were submitted with the class-certification briefs.  Those records do not differentiate as to 868 mix dusting depending on the weather, the amount of water added, different finishers or finishing techniques, soil conditions, temperature, the amount of sun and wind exposure, or other possible variables.  Rather, contrary

to what Argos' experts now say about individualized questions, the common thread throughout Argos' documents reflected that there was a consistent dusting problem with the 868 mix used in flatwork and slab applications.   Argos took a universal approach in addressing the Savannah dusting issues.[8]   (Doc. 66-1-15; 17; 20; 41; 56; 58A; 58B; 64; 71; 127; 182 p. Argos_040004537-38; 183; 187; 189; 191; 212; 246; 253; 254; 256; 274; 277-284; 335; 336, 350; 351; 451; 459, pp. 123-24; 461, p. 127-29; 467, pp. 31-33; 470; 512, pp. 123-24, 160-61; Doc. 107-156; 248; 531, p. 219; 535, pp. 32-33.)

Accordingly, Plaintiffs have offered a class-wide causation argument and a reliable theory that Plaintiffs' claims that the 868 mix was defective as to flatwork concrete uses that are capable of class-wide proof.   This theory is similar to that of the Plaintiffs in a case involving an allegedly defective product called TrimBoard in *Thomas v. Louisiana-Pac. Corp*., 246 F.R.D. 505, 516 (D.S.C. 2007).   That court explained:

> Plaintiffs' theory is that TrimBoard is defective and completely unsuitable as an exterior trim product, and because Plaintiffs allege TrimBoard is completely unsuitable as an exterior trim product and will fail during its useful life even if all instructions are followed, evidence regarding improper installation and improper maintenance has no bearing on Plaintiffs' theory.

*Id.*   Plaintiffs here are advancing a similar theory about 868 mix concrete – that the product is defective and completely unsuitable for use in slab or flatwork concrete.   Plaintiffs here similarly contend, although their theory is contested by Argos, that there is virtually no way to use 868 mix in slab or flatwork concrete applications and obtain concrete that has appropriate surface durability

---

[8] To the extent that the conflicting expert testimony must be weighed at the class-certification stage, greater weight here is given to Plaintiffs' experts' class-wide theory, as it is entirely consistent with Argos' documents and testimony. *Cf. Sher v. Raytheon Co.,* 419 F. App'x 887, 890 (11th Cir. 2011) (finding error because district court declined to rule on *Daubert* motions and failed to sufficiently evaluate and weigh conflicting expert testimony on class certification).  Here, the opinions of Plaintiffs' concrete expert Brian Wolfe, in light of their consistency with Argos' pre-litigation investigation findings, are sufficient to authorize a jury to find defect and liability on a class-wide basis.

and minimal dusting.  Further, in *Thomas*, the court noted that if the plaintiff were to prove that "TrimBoard is completely unsuitable for use as exterior trim, such proof will advance the claims of the absent class members."  *Id.*  The same is true here.  If Plaintiffs can prove what they say they can, and as the Court's peek at the merits has shown they may be able to, as to the unsuitability of 868 mix for flatwork or slab concrete applications, that would advance the claims of all class members.  *See also Martin v. Behr Dayton Thermal Prods.,* 896 F.3d 405, 416 (6th Cir. 2018) ("Resolving the issues in one fell swoop would conserve the resources of both the court and the parties. Class treatment of the seven certified issues will not resolve Defendants' liability entirely, but it will materially advance the litigation."), *cert. denied*, 139 S. Ct. 1319 (2019).[9]

Plaintiffs have demonstrated predominance, at least as to liability.  All questions on Argos' negligence, whether 868 is defective as to flatwork and slabs and its propensity to dust and damage real and personal property are common to all putative class members.  The Court further finds that such common questions of fact and law as to liability, including defect, predominate over any individual issues in this case.  Accordingly, predominance is met as to liability issues.

### 2.    Predominance as to damages issues.

As Plaintiffs point out, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate."  *Allapattah Svcs. v. Exxon Corp.,* 333

---

[9]  The Court declines to certify the class on a series of limited questions as the Court did in *Martin*.  Though Defendants have argued that legal hurdles, particularly the economic loss rule, require an individualized determination of liability, Plaintiffs have proposed that they can prove liability on a class wide basis.  Plaintiffs contend, and they have produced evidence in support of this theory, that the 868 mix is inherently defective as to flatwork and slabs and that it will always dust.  The Plaintiffs' theory of liability is not so complicated that it should be litigated piecemeal issue by issue.  Thus, it is appropriate to limit certification to liability, while understanding that individualized determinations as to damages may be necessary.  *See, Thomas*, 246 F.R.D. at 516–17.  Moreover, the parties have not proposed a set of issues or specific questions to which the Court could limit certification.  Crafting such limitations at this stage without such a proposal and discussion by the parties would likely inhibit the parties' efforts at efficiently conducting discovery.  In the course of discovery and litigation, should either party find that the limitation of certification is not sufficiently detailed, they may petition the Court for modification of this Order.

F.3d 1248, 1261 (11th Cir. 2003); *see also Thomas v. Louisiana-Pac. Corp*., 246 F.R.D. 505, 516-17 (D.S.C. 2007) ("While the court may have to make individualized determinations regarding damages, the court finds this alone does not preclude certification[,]" as "Rule 23 explicitly envisions class actions with . . . individualized damage determinations."); *In re Tri–State Crematory Lit.,* 215 F.R.D. 660, 692 n. 20 (N.D. Ga. 2003) ("The requirement of determination of damages on an individual basis does not foreclose a finding of predominance or defeat certification of the class.").

In assessing whether to certify a class, the damages inquiry "is limited to whether or not the proposed methods [for computing damages] are so insubstantial as to amount to no method at all . . . . [Plaintiffs] need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis." *Klay*, 382 F.3d at 1259-60 (alterations in original) (quoting *In re Terazosin,* 220 F.R.D. at 698). "Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification." *Id.* "It is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification." *Id.* at 1260.

Here, Plaintiffs' expert opines that damages, in the form of appropriate and necessary remediation costs for the defective concrete, can be calculated according to the costs per square foot, taking into account the location of the concrete, whether in the house, in a garage, or exterior (porches, driveways and walkways). (Doc. 66-1-470, p. 12.) Thus, they contend that a straight-forward mathematical formula can be applied to calculate each property owner's damages. Each area, in square feet, is multiplied by its applicable remediation cost per square foot. The totals are

added for all applicable areas for each Plaintiff and putative class member.  Plaintiffs note that Argos compiled its own calculations and determined an estimated cost for repair and replacement of the 868 concrete, and thus contend that its remediation spreadsheets support Plaintiffs' proposed damages analysis.  (*See e.g.* Doc. 66-1-239; 43-49, 240, 327, 330.)

But Argos' expert Dr. Ugone and its counsel have pointed out questions regarding individualized damages.  (Doc. 82, pp. 11-23; Doc. 107-510, pp. 45-48 (of report).)  Moreover, even if damages could appropriately be calculated by Plaintiffs' proposed class-wide square-foot methodology, this proposal has not yet been finalized, as the actual per-square-foot costs have not yet been reduced to a present-market dollar amount.  Accordingly, at this time, the question of damages will not be certified on a class-wide basis.  This issue may be re-visited, in accordance with Rule 23(c)(1)(C).

### B.    Superiority

To certify a class action, a court also must conclude "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P 23(b)(3). Factors relevant to the superiority inquiry include: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action.  *Id.*  The focus should be "on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."  *Klay*, 382 F.3d at 1269 (citing *In re Managed Care Lit.,* 209 F.R.D. 678, 692 (S.D. Fla. 2002) (noting that this factor "requires the Court to determine whether there is a better method of handling the controversy other than through the class action mechanism")).

This case, insofar as class certification is concerned, involves a prominent manufacturer in the Savannah-area concrete industry and properties in Argos' Savannah Division where Argos used a single concrete mix (868 mix), for a limited time period (April 10 – October 21, 2013).  The key, common questions of law and fact revolve around the design, formulation and use of the 868 mix. ████████████████████████████████████████████████████

████ Plaintiffs contend that this defective 868 mix lacks surface durability and, accordingly, dusts excessively.  Argos' liability should be decided once, in this class action.

As to the first two factors, no similar cases have been filed.  No putative class members have expressed any interest in individually controlling the prosecution of the action.  Indeed, given the wide use of experts at this early stage, individual actions would likely be cost prohibitive and extremely impractical.  *See Navelski v. Int'l Paper Co.,* 244 F. Supp. 3d 1275, 1310 (N.D. Fla.), *reconsideration denied,* 261 F. Supp. 3d 1212 (N.D. Fla. 2017) ("it is likely that class members would have little interest in pursuing separate actions, as this matter involves relatively small individual claims compared to the cost of litigating complex legal issues against a relatively large corporate entity like Defendant.")  Accordingly, these two factors weigh in favor of the superiority of a class action.

Argos, like the defendant in the *Navelski* class action, contends that a class action is not a superior method to adjudicate Plaintiffs' (and the putative class members') claims, and that an alternative method of adjudication, namely, the filing of individual claims by each of the homeowners allegedly harmed in this case, would be superior.  (*See id.*; Doc. 82, pp. 33-34).  However, as in *Navelski*, in light of the Court's findings regarding the other Rule 23 criteria, Argos' contention that a class action is not a superior method to adjudicate Plaintiffs' claims is unpersuasive, at least with respect to the question of liability.

As to the desirability or undesirability of concentrating the litigation of the claims in the particular forum, the 868 mix was formulated and manufactured and delivered and poured from Argos' Savannah Division plants, on over 600 Savannah-area properties.  The decision to utilize 868 mix in the Savannah Division was made here and implemented at the Argos plants in this division.  *Navelski* is again informative.  That court explained, as to a case involving 160 homes, that joinder was "impracticable due to the number of potential claimants and, if liability claims proceed separately, there is a very real risk of inconsistent adjudications holding Defendant to varying standards of conduct with respect to the same common nucleus of operative facts."  244 F. Supp. 3d at 1310.  The same is true here.  There is no way to join hundreds of individual cases, and if homeowners were to proceed with individual lawsuits, there would be a real risk of inconsistent adjudications as to the same questions arising from Argos' single course of conduct.  Moreover, as the court explained in evaluating superiority in *Navelski*, "repeated litigation of the same core liability issues would be grossly inefficient and wasteful of the resources of the parties and the judiciary."  *See id.*  Here, it would likewise waste substantial time and resources of the parties and various courts to address issues individually when questions of liability can be determined on a class-wide basis in this Court under Plaintiffs' theory of the case.  The facts and proof in this case are not simple.  Hundreds of exhibits, hundreds of pages of deposition testimony, and multiple lengthy, complicated expert reports have been reviewed by the Court; to ask multiple courts to repeat this process, multiple times over, would be inefficient and wasteful.

Finally, as to the fourth factor, manageability, again like in *Navelski*, "because proof during the liability phase will not differ among class members, it is unlikely that management of the class action will become overwhelming or unreasonably difficult."  *Id.*  Under the Plaintiffs' theory of

the case, and Argos' rebuttal of that theory, it appears that the proof and facts are going to be the same for each Plaintiff and class member as to liability.

For all of these reasons, certifying this case as a class action and addressing the common claims based on Argos' single course of conduct is the most efficient and superior method of handling this controversy.

## III.   Certification and Conclusion

Common issues of law and fact as to whether Argos is liable and whether its 868 mix is defective predominate over other questions in this case.  Moreover, as addressed above, all of the Rule 23(a) and (b)(3) factors are satisfied, at least as to questions of liability.  Accordingly, the Court, in the exercise of its discretion, grants Plaintiffs' Motion for Class Certification, in part. The issue of liability is certified, under Rule 23(c)(4), as to the following class:

> All current owners of residential properties located in the state of Georgia where Argos 868 concrete was used in flatwork applications, i.e., poured as slabs on grade, including the slab on which the home is built, driveways, walkways, patios, and/or garage floors, between April 10, 2013 and October 21, 2013.

Further, named Plaintiffs Jim and Becky McGaffin and Daniel and Stefanie Nunn are appointed as class representatives.  The law firm Pope McGlamry, P.C., including attorneys Michael J. Moore, Wade H. ("Trip") Tomlinson, C. Neal Pope, R. Timothy Morrison, Jay F. Hirsch, Kimberly Johnson, and Courtney Mohammadi, and Raymond L. Moss, of Moss & Gilmore, LLP, are appointed as class counsel.

Counsel for all parties are further instructed to confer as to the Notice to be provided to the Class and as to a proposed scheduling order for further discovery, motions practice and trial of this

case.  A form of Proposed Notice and Proposed Scheduling Order are due to be filed within twenty-one (21) days of the entry of this Order.

**SO ORDERED**, this 30th day of August, 2019.

_____

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA