IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JIM McGAFFIN; BECKY McGAFFIN; DANIEL NUNN; and STEFANIE NUNN, <br><br> *Plaintiffs,* <br><br> v. <br><br> ARGOS USA, LLC, <br><br> *Defendant.* | Civil Action File No.: <br><br> <u>4:16-cv-00104-RSB-BKE</u> <br><br> **JURY TRIAL REQUESTED** |

### <u>PLAINTIFFS' UNOPPOSED MOTION AND SUPPORTING BRIEF FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES FOR CLASS COUNSEL</u>

Having successfully negotiated a settlement for the class they represent, Class Counsel hereby requests that the Court award to them $3,507,000 in fees, costs, and expenses in accordance with the Settlement Agreement and the Court's March 24, 2020 Order preliminarily approving the Settlement.  While not binding on the Court, the parties' agreement is entitled substantial weight where, as in this case, the fee negotiations were conducted at arm's length and only after the merits of the litigation were settled.  This is particularly true because no class member has objected.  Class Counsel is entitled to the requested award, costs, and expenses to compensate them for the services they have rendered to the Settlement Class in prosecuting this case and obtaining a Settlement that provides substantial benefits to the Settlement Class.

The parties were engaged in settlement negotiations for more than a year, including a formal meditation, numerous in-persons meetings, and follow-up telephone conversations.  After four years of litigation, including significant motions practice, extensive written discovery, 24

1

depositions, testing, *Daubert* hearings, and a successful request for class certification, which certification Defendant has sought to appeal, the parties reached a settlement.

With respect to attorneys' fees and expenses, the request is for an award of $3,507,000.00, which includes more than $297,759.15 in expenses. This amount is extremely reasonable in light of the time expended by Class Counsel in this case and the complexity of the legal issues at play.

## I.    GENERAL BACKGROUND[1]

This case is based on alleged acts and omissions of the Savannah Division of Argos' United States operations, Argos USA, LLC, a Delaware corporation (hereinafter "Argos"). The case involves eight ready-mix concrete plants located in: Savannah, Statesboro, Rincon, Richmond Hill, Liberty, Brunswick, and Pooler, Georgia, and Hilton Head, South Carolina. (ECF No. 66-1-461, pp. 196-97). Plaintiffs Jim and Becky McGaffin, and Daniel and Stefanie Nunn, filed this putative class action on May 6, 2016. (ECF No. 1). Plaintiffs alleged therein and in their Amended Complaints (ECF Nos. 1,23, and 196) that certain concrete supplied by Argos was defective in design and that Argos failed to warn that this concrete, sold for slab or flatwork use in and around their homes, was inappropriate for such use. (ECF No. 23 at p. 2, 10).

Each couple purchased a new home that was built utilizing Argos concrete in the flatwork including slab foundation, porches, garages, driveways and/or sidewalks. (*Id.* at p. 4.) Argos moved to dismiss the case, but, following briefing, including a motion for reconsideration as to the economic loss rule, the Court allowed Plaintiffs to proceed on their negligent design and manufacture claim because they alleged Argos' liability from concrete dust damages their real and

---

[1] In this Section, Plaintiffs include several statements regarding the proof supporting Plaintiffs' claims. Argos disputes and denies many of the factual matters discussed herein.

personal property and requires constant cleaning.  (ECF No. 44 at p. 29).  Plaintiffs were also allowed to proceed on their negligent failure to warn claim as to the Argos concrete.  (*Id.*).

In discovery, the Plaintiffs were deposed and testified as to their experiences with dusting and other surface durability problems with that Argos concrete. (ECF No. 66-1-460, pp. 58-65; 479, pp. 4-8; 462, pp. 183-190.)   Plaintiffs alleged these dusting and surface durability problems led to excessive dust coating the interiors of their homes, furniture, and other personal property, requiring excessive cleaning, and damaging some of their personal property. (*See, e.g.*, ECF No. 23 at p. 12-13).  Plaintiffs further facilitated inspections of their homes, and testing of the air and concrete in and around their homes, by multiple experts retained by Argos and by their own counsel.

Following an amended complaint, motions practice, and fact and expert discovery as to class certification issues, Plaintiffs identified single family, residential properties where a certain Argos mix, called 30RAF868 or "868," which contained excessive Class F fly ash, was poured. (ECF No. 66-1-474; ECF No. 107-546 (updated)).   In a motion filed January 29, 2018, the McGaffins and the Nunns moved to certify a class of the following:

> All current owners of residential properties where Argos 868 concrete was used in flatwork applications, i.e., poured as slabs on grade, including the slab on which the home is built, driveways, walkways, patios, and/or garage floors, between April 10, 2013 and October 21, 2013.

(ECF No. 66-1, p. 1).[2]

The McGaffins and Nunns sought to be appointed class representatives, contending that the Argos 868 mix concrete in and around their homes had too high a percentage of the ingredient

---

[2] The 868 mix was only used in flatwork applications in Georgia and South Carolina. (ECF No. 174, pp. 182-83.)

fly ash and that, as a result, the concrete was inappropriate for use in slab or flatwork applications, resulting in common surface durability and dusting problems, rendering it defective. They argued that their interests were aligned with those of the absent class members, and that they had diligently prosecuted the interests of the proposed class. (*Id.* at p. 22). On August 30, 2019, this Court granted Plaintiffs' Motion for Class Certification in part. (ECF 178). On September 13, 2019, Argos sought permission from the Eleventh Circuit Court of Appeal to file an interlocutory appeal of the certification order. On March 18, 2020, the Plaintiffs filed a Second Amended Complaint to clarify the identity of the Defendants as Argos USA LLC, and that class claims include owners of residential properties where Argos 868 was poured in both Georgia and South Carolina. (ECF No. 196). On March 24, 2020, the Court entered an Order Preliminary Approving Class Action Settlement and Conditionally Certifying the Settlement Class. (ECF No. 198).

## II.  THE PARTIES' SETTLEMENT AGREEMENT AND THE COURT'S ORDER OF PRELIMINARY APPROVAL

During the pendency of Plaintiffs' Motion for Class Certification, the Court entered an Order staying the case to facilitate the Parties' mediation. (ECF No. 163.) Pursuant to that Order, the Parties filed a Joint Status Report on March 6, 2019, to report that the February 20, 2019 formal mediation was unsuccessful and to request that the Court lift the stay. (ECF No. 169.) After the second of two hearings on Plaintiffs' Motion for Class Certification and related *Daubert* motions, this Court entered an Order on August 30, 2019, certifying a liability issue class under Rule 23(c)(4). (*See* ECF Nos. 150, 174, 178). Argos thereafter filed a Petition for Permission to Appeal that Order on September 13, 2019, in the United States Court of Appeals for the Eleventh Circuit. Plaintiffs filed their response to that Petition on September 23, 2019.

In late September 2019, while meeting and conferring about their respective proposals for notifying the class and scheduling additional fact discovery, the Parties agreed that resuming

settlement negotiations would be constructive in potentially resolving this litigation and jointly requested another stay.  On October 9, 2019, the Court stayed this litigation pending settlement negotiations.  On October 23, 2019, counsel for Plaintiffs, outside counsel for Argos, in-house counsel for Argos, and a business representative from Argos met in-person at the Atlanta office of McGuireWoods, LLP.  The parties thereafter convened multiple conference calls and exchanged multiple proposals for settlement throughout October and November 2019.  On December 11, 2019, counsel for Plaintiffs, outside counsel for Argos, in-house counsel for Argos met in-person again at the Atlanta office of McGuireWoods, LLP.  At that meeting, the parties reached a settlement in principle of the case.  Over the next few months, the parties negotiated various terms of that agreement and drafted formal settlement papers.

On March 12, 2020, the parties executed a written settlement agreement providing for a total settlement value of $10.02 million, consisting of the following: (1) payment of $6.7 million in cash paid into the Settlement Fund by Argos, $100,000 of which was separately negotiated as $25,000 incentive awards to each Named Class Representative; (2) up to $320,000 for the cost of Notice and Administration of the Settlement that Argos will pay; and (3) injunctive relief that Argos will undertake as a result of this settlement, and credit related to Removal and Replacement already performed by Argos or at its expense, collectively valued at approximately $3 million. (*See* No. ECF 197-1; ECF No. 202, Edwards Decl. at ¶¶ 6-10).  On March 24, 2020, this Court entered an Order Preliminarily Approving Class Action Settlement and Conditionally Certifying Settlement Class.  (ECF No. 198).

Class Members who timely returned and satisfactorily completed the Proof of Ownership Form will receive a payment from Argos calculated by multiplying the Settlement Class

Member(s)' Eligible Concrete[3] times the Value Per Yard of Eligible Concrete[4] as those terms are defined in the Settlement Agreement at ¶¶ 2.o., and 2.tt., respectively.

In addition to the monetary benefits, as a result of the *McGaffin* case, Argos will make material changes to its practices and procedures to address concerns raised by Plaintiffs and Class Counsel including: (i) as of the Effective Date, Argos will not deliver any 868 mix for residential uses from any of its United States locations; (ii) as of the Effective Date, Argos will perform rigorous testing to confirm strength and durability of the concrete and document the results before using any concrete mix that has a fly ash percentage above 50% for residential flatwork; and (iii) as of the Effective Date, Argos agrees to disclose to any purchaser of residential concrete if the percentage of fly ash in a mix equals or exceeds 45%. (*See* No. ECF 202, Edwards Decl. at ¶¶ 6-10).

With respect to attorneys' fees, the Preliminary Approval Order provides that, "No later than ten days prior to the Fairness Hearing, the Settlement Class/Class Counsel may file a Motion seeking fees, costs and expenses relating to any of the claims, counts, allegations or causes of action asserted in the Complaint. Argos has agreed not to object to any request for attorney's fees and expenses not exceeding $3,500,000.00 or 35% of the Total Settlement Value, whichever is greater." (ECF 198 at ¶ 20).

As required by the Preliminary Approval Order, the Settlement Administrator provided the Court-approved notice to the Settlement Class Members by first-class mail and through the

---

[3] As defined in the Settlement Agreement, "Eligible Concrete" means the amount of 868 concrete delivered to an Affected Property (expressed in cubic yards) as shown on Argos Delivery Tickets and public records produced during the Litigation minus any Ineligible Concrete.
[4] As defined in the Settlement Agreement, "Value Per Yard of Eligible Concrete" means the quotient from dividing the Net Settlement Amount by the Total Eligible Concrete and is described as a dollar amount per cubic yard of Eligible Concrete.

settlement website (the "Notice").  The Notice expressly informed the Settlement Class of the fact that Class Counsel would seek attorneys' fees, costs, "not to exceed a total of $3.5 million or 35% of the Total Settlement Value, whichever is greater."  (*See* ECF No. 203, Ex. D, Notice to Class Members following the Steinhart Decl. at ¶ 17).  In addition, the Notice made clear that Settlement Class Members could object to the Settlement or to the requested attorneys' fees and expenses: "If you are a Class Member, you can Object to the Settlement or to requests for fees and expenses by Class Counsel. To Object, you must file your objection with the Court . . ."  *Id*. at ¶ 21. Significantly, no objections were made by any of the Settlement Class Members.  Additionally, Class Counsel spoke with over a dozen Class Members during the 45-day Settlement Administration period and none of them complained or referred to Class Counsel's requested fee. (*See* ECF No. 203, Ex. A, Tomlinson Decl. at ¶ 41; Ex. B, Moss Decl. at ¶29).  Accordingly, this motion represents Plaintiffs and Class Counsel's formal request that the Court approve an award of attorneys' fees, costs and expenses in the amounts stated herein to which Argos does not object.

## III.   THE COURT SHOULD APPROVE AN AWARD OF $3,507,000.00 IN ATTORNEYS' FEES, COSTS AND EXPENSES

To further effectuate the parties' Settlement and to reasonably compensate Class Counsel for their fees, costs and expenses, Plaintiffs and Class Counsel respectfully request that the Court order, upon final settlement of this action, that $3,507,000.00 be paid to Class Counsel.  The Settlement Agreement and the Court's Preliminary Approval Order expressly provide for this award, and state that Argos does not object to it.  The $3,507,000.00 fee award completely resolves all outstanding claims for fees, costs and expenses pursuant to Plaintiffs' claims.

In addition to representing a fair, adequate and reasonable settlement of those claims, the requested fee award is justified by the time and expense incurred by Class Counsel over the course of representation of the Settlement Class, by the complex nature of the matter, and by the benefits

received by the Settlement Class as a result of the litigation and settlement.  Also of note, the Settlement here set a floor for every Class Member's recovery, but the entire Settlement Fund (less fee and incentive awards) will be distributed in a mathematically equitable fashion such that the payouts for those Class Members who verified ownership of an Affected Property increased per yard of Eligible Concrete.  The value per cubic yard of Eligible Concrete paid out to Class Members is based on the yards of Total Eligible Concrete for which Proof of Ownership Forms were timely provided.  Thus, because Class Counsel negotiated that all funds be distributed (except for uncashed checks), participating Class Members' value per yard, and therefore their actual recovery, will increase significantly.  None of the Settlement Fund reverts to Argos due to the participation rate.

Class Counsel has spent thousands of hours investigating, litigating and settling this matter. All of that time was "contingency" time, meaning that Class Counsel would not be paid for its work unless and until there was a recovery for the Class, if ever.  Further, but for this case, Class Counsel could have worked on other matters.  (*See* ECF No. 203, Ex. A, Tomlinson Decl. at ¶ 37; ECF No. 203, Ex. B, Moss Decl. at ¶ 25).  Further, Class Counsel advanced case expenses of almost $300,000.00 to mount this case and to achieve the relief proposed in the proposed Settlement Agreement.  (*See* ECF No. 203, Ex. A, Tomlinson Decl. at ¶ 36; ECF No. 203, Ex. B, Moss Decl. at ¶ 24).  These expenses were advanced with no guarantee or expectation of payment of such expenses except by prevailing in the case.   Class Counsel's ability to obtain reimbursement for expenses advanced on behalf of Plaintiffs and the Settlement Class was thus entirely at risk in this case and contingent on the degree of success achieved by the Plaintiffs in the litigation. *Id.*  The expenses Class Counsel incurred were reasonable and necessary to properly investigate, prosecute and settle this matter.  (*See* ECF No. 203, Ex. A, Tomlinson Decl. at ¶ 36;

Ex. B, ECF No. 203, Moss Decl. at ¶ 24; Exhibit A. attached hereto, Caplan Decl. at ¶ 32).  The

requested fee is reasonable and justified.  (*See* ECF No. 203, Ex. A, Tomlinson Decl. at ¶ 39; ECF

No. 203 Ex. B, Moss Decl. at ¶ 27; Ex. A, Caplan Decl. at ¶¶ 32-33).

### A.      The Court Should Give Great Weight to the Parties' Agreement

This Court is not bound by the parties' agreement, and, indeed, is required by Rule 23 to

evaluate the requested fee independently.  Nevertheless, the agreement is entitled to substantial

deference because it resulted from adversarial negotiations after the settlement as to the merits of

Plaintiffs' and the Class' substantive claims were decided.  *See, e.g., Ingram v. The Coca-Cola

Co*., 200 F.R.D. 685, 695 (N.D. Ga. 2001); *Elkins v. Equitable Life Ins. Co.*, No. 96-296-CIV-T-

17B, 1998 U.S. Dist. LEXIS 1557 (M.D. Fla. Jan. 27, 1998).  As one judge has written:

> The Court finds that the fee and expense negotiations were conducted at arm's
> length, only after the parties had reached agreement on all terms of the Settlement.
> There is no evidence in this case that the Settlement, or the fee and expense
> agreement, was in any way collusive.  Under these circumstances, the Court gives
> great weight to the negotiated fee in considering the fee and expense request.
>
> Such agreements between plaintiffs and defendants in class actions are encouraged,
> particularly where the attorneys' fees are negotiated separately and only after all
> terms of the settlement have been agreed to between the parties. *See Hensley v.
> Eckerhart*, 461 U.S. 424, 437 (1983) (noting that negotiated, agreed upon attorneys'
> fees are the "ideal" toward which the parties should strive and stating that
> "[i]deally, of course, litigants will settle the amount of a fee").

*Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, at *28 (M.D. Tenn. Aug.

11, 1999) (some citations omitted).

A similar viewpoint was expressed in a declaration submitted in another case by the Hon.

Sam Pointer, who served for thirty years as a District Judge for the Northern District of Alabama,

was the principal author of the Manual on Complex Litigation, and taught numerous workshops

on evaluating fee awards for other federal judges:

> In my view, when the parties have reached an arms-length agreement on the
> payment of fees and expenses and the defendant will pay them directly without
> contribution by (or impact upon) class members, a court ordinarily should defer to
> and approve the parties' agreement unless there is some discrete reason for the court
> to interfere, such as collusion between the parties or the absence of a fair and
> adequate settlement for the class.

Declaration of Sam C. Pointer, Jr., *In re Allstate Ins. Co. Underwriting and Rating Practices Lit.*,

M.D.L. No. 1457 (M.D. Tenn.) at ¶ 9 (a copy is attached as Exhibit B).

Many reasons support deferring to the parties' agreement in this case. First, while the
Court, starting from scratch, might come to a different number, the reality is that there is no one
"reasonable fee" mandated by applicable law.  The notion of reasonableness encompasses a range
of numbers about which there can be a legitimate difference of opinion.  So long as the requested
fee is one that the Court agrees is within the range of what is reasonable, it should be approved.
Second, reducing the requested fee would undercut settlements and discourage competent
attorneys from handling class actions.

### B.      The Requested Fee is Reasonable Under the Percentage Method

### 1.      The Common Benefit Doctrine and Eleventh Circuit Law

Courts have long recognized that appropriate awards of attorneys' fees in class action cases
such as this encourage attorneys to seek redress for wrongs caused to classes of persons and to
discourage similar future misconduct:

> [C]ourts ... have acknowledged the economic reality that in order to encourage
> `private attorney general' class actions brought to enforce ... laws on behalf of
> persons with small individual losses, a financial incentive is necessary to entice
> capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to
> devote their time to complex, time-consuming cases for which they may never be
> paid.

*Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 679, 687 (M.D. Ala. 1988); *In re Domestic Air*

*Transp. Antitrust Litig.,* 148 F.R.D. 297, 348-49 (N.D. Ga. 1993); *Francisco v. Numismatic Guar.*

*Corp. of Am.,* No. 06-61677-CIV., 2008 WL 649124 (S.D. Fla. Jan. 31, 2008); *Pinto v. Princess*

*Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334, 1338-39 (S.D. Fla. 2007); *see also Deposit Guar. Nat'l*

*Bank v. Roper,* 445 U.S. 326, 338-339 (1980).

> As one court stated:
>
> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and
> effort when it is successful, then effective representation for plaintiffs in these
> cases will disappear. ... We as members of the judiciary must be ever watchful to
> avoid being isolated from the experience of those who are actively engaged in the
> practice of law. It is difficult to evaluate the effort it takes to successfully and
> ethically prosecute a large plaintiffs' class action suit. It is an experience in which
> few of us have participated. The dimensions of the undertaking are awesome.

*Muehler v. Land 0 'Lakes, Inc.,* 617 F. Supp. 1370, 1375-76 (D. Minn. 1985).

Further, it is well established that counsel whose work results in a substantial benefit to a

class are entitled to a fee under the common benefit doctrine. *Boeing Co. v. Van Gemert,* 444 U.S.

472, 478 (1980). The doctrine serves the "twin goals of removing a potential financial obstacle to

a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs

of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec.*

*Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989). The doctrine also ensures those who benefit are

not "unjustly enriched." *Van Gemert,* 444 U.S. at 478.

The controlling authority in the Eleventh Circuit is *Camden I Condominium Ass'n, Inc. v.*

*Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991), which holds that fees in common fund cases must

be calculated using the percentage rather than the lodestar approach. *Camden I* does not require

any particular percentage. While noting awards typically range from 20% to 30% and suggesting

25% is the benchmark, the court stated: "There is no hard and fast rule … because the amount of

any fee must be determined upon the facts of each case." 946 F.2d at 774; *see also, e.g., Waters*

*v. Int'l. Precious Metals Corp.*, 190 F.3d 1291, 1294 (1999). In selecting the percentage in a

particular case, a district court should apply the factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), as well any other pertinent factors. *Camden I*, 946 F.2d at 776. Additionally, "[t]he district court has wide discretion to award attorneys' fees based on its own expertise and judgment because of 'the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Dikeman v. Progressive Exp. Ins. Co*., 312 F. App'x. 168, 171 (11th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Additionally, "the attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014).

Following *Camden I*, percentage-based fee awards in the Eleventh Circuit have averaged around 33% of the class benefit. *See, e.g., Wolff v. Cash 4 Titles*, 2012 WL 5290155 at \*5-6 (S.D. Fla. Sept. 26, 2012) (noting that fees in this Circuit are "roughly one-third"); T. Eisenberg, et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. Law Rev. 937, 951 (2017) (the median fee from 2009 to 2013 was 33%); B. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811 (2010) (during 2006 and 2007 the median fee was 30%); Decl. of H. Hughes, *Champs Sports Bar & Grill Co. v. Mercury Payment Systems, LLC*, No. 1:16-CV-00012-MHC (N.D. Ga.) (ECF No. 82-1 at p. 4-5) (90% of the hundreds of common fund settlements a leading Atlanta mediator has negotiated provide for a fee of one-third of the benefit). However, "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Camden I*, 946 F.2d at 774-75. *See Waters v. Cooks Pest Control*, No. 2:07-cv-00394-LSC, 2012 WL 2923542 at \*16 (N.D. Ala. July 17, 2012) (awarding 35% of the fund as reasonable); *Faircloth v. Certified Finance Inc.* No. Civ. A. 99-3097, 2001 WL 527489 (E.D. La. May 16, 2001) (awarding attorneys' fees in the amount of

12

35% of the settlement value plus interest and reimbursement of expenses). Many of these cases were solely for the fee, plus additional costs for expenses and costs. While the requested fee is 35% of the total recovery, it is worth noting that after expenses and costs are subtracted, the fee itself is 32.01%.

### 2. The Fee is Reasonable and Supported by the *Johnson* Factors

The requested fee is reasonable and supported by the *Johnson* and *Camden I* factors. These factors are discussed below.[5]

### a) *The Time and Labor Involved*

"Although the hours claimed or spent on a case should not be the sole basis for determining a fee, ... they are a necessary ingredient to be considered." *Johnson*, 488 F.2d at 717. Class Counsel have spent over 8,056.2 hours in the massive effort to resolve this case and will continue to spend additional time with the settlement administration. The successful prosecution of this action required Class Counsel to address complicated legal issues and defenses, including issues of product liability, real property, and the economic loss rule. Extensive motions practice occurred even prior to discovery. Class Counsel also reviewed thousands of documents obtained through three sets of requests for production, served subpoenas on at least 36 non-party builders and concrete finishers, attended 24 depositions throughout the Southeast United States, tested the concrete and dust at Class Representatives' homes, retained and deposed experts, engaged in

---

[5] Three of the factors do not apply and thus can be disregarded: the undesirability of the case; the nature of the attorney-client relationship; and time limitations imposed by the client or circumstances. *Johnson* noted that civil rights attorneys who accept unpopular cases may suffer hardships deserving of a higher fee, which Class Counsel did not suffer. Second, Class Counsel did not have continuing relationships with the named plaintiffs that would have caused them to offer a volume discount or reduced fee to obtain future business. Third, no deadlines in this matter delayed Class Counsel's ability to work on other matters.

extensive motions practice, and have fully briefed issues currently on appeal in the Eleventh Circuit Court of Appeals.  (*See* ECF No. 203, Ex. A, Tomlinson Decl. at ¶¶ 6, 35; ECF No. 203 Ex. B, Moss Decl. at ¶¶ 6, 23).  In the course of discovery, working from delivery tickets often bearing only subdivision and lot numbers, counsel located physical addresses of residences where the 868 concrete was poured.  (*See* ECF No. 107-546 (updated); ECF No. 203, Ex. A, Tomlinson Decl. at ¶¶ 30, 32).  The work performed is reasonable and justified in view of the issues, the complexity and importance of the case, the manner in which the case was defended, and the result. (*See* Ex. A, Caplan Decl.¶¶ 29, 31-33).

> b)      *The Novelty and Difficulty of the Questions*

This case presented many novel and difficult legal questions, including what damages, if any, Plaintiffs could recover from a manufacturer under the economic loss rule.  Additionally, the parties vigorously contested issues related to class certification and the Court ultimately found common issues of law and fact as to whether Argos is liable and whether its 868 mix is defective predominated over other questions in the case.  Accordingly, the Court granted Plaintiff's Motion for Class Certification in part.  Argos appealed that order to the Eleventh Circuit of Appeals, and that appeal has been stayed pending final resolution in this Court.

> c)      *The Skill Requisite to Perform the Legal Services Properly*

This is a class action involving a product delivered to real property, an area where few class action attorneys tread.  The skill necessary to litigate this case, despite the consistently tough opposition of reputable law firms with significant resources, is high.

> d)      *The Preclusion of Other Employment*

"This guideline involves the dual consideration of other available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that

once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718.  The amount of time required to prosecute this action limited the amount of time and resources Class Counsel could devote to other matters over the last four years.

e)      *The Customary Fee in the Community*

Pope McGlamry and Moss & Gilmore customarily enter into contingent fee agreements allowing for recovery of 40% in low risk cases and up to 50% in higher risk cases with difficult liability issues.  This case certainly qualifies as a "higher risk" case with difficult liability issues, yet the fee percentage requested is below the firms' customary contingency fee.

f)      *Whether the Fee is Fixed or Contingent*

"The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fees expectations when he accepted the case." *Johnson*, 488 F.2d at 718.  The inherent risks involved in filing and prosecuting a class action on a contingency fee basis weigh strongly in favor of the requested fee.  Class counsel accepted this matter on an entirely contingent basis, incurred significant expenses in prosecuting this action over the course of four years, and have not yet received any compensation.  Throughout the years, there has been a real possibility that Class Counsel would not recover anything for the Class.

g)      *The Amount Involved and the Results Obtained*

Class Counsel negotiated a settlement worth $10.02 million, $6.7 million of which was in cash benefits.  The monetary award for each Class Member who timely submitted a Proof of Ownership Form will be approximately $548.28 on the low end, to $86,902.38 on the high end,

with the average homeowner receiving $20,895.51.[6]  This is a significant benefit and recovery for Class Members.  Considering the complexities of this case and the vigorous defense of opposing counsel and the appeal that was filed, this is an excellent recovery when there was a very real chance the Class would not recover anything.

In addition to Class Members receiving a monetary award that is expected to be several thousands of dollars, Class Counsel negotiated a Settlement Agreement that provides other non-monetary benefits.  Namely, Argos will not deliver any 868 mix for residential uses from any of its United States locations; Argos will perform rigorous testing to confirm strength and durability of the concrete and document the results before using any concrete mix that has a fly ash percentage above 50% for residential flatwork; and Argos will disclose to any purchaser of residential concrete if the percentage of fly ash in a mix equals or exceeds 45%.  (*See* ECF No. 202, Edwards Decl. at ¶¶ 6-10).  Courts may consider the non-monetary relief provided to the Class as "part of the settlement pie." *Poertner v. Gillette Co.*, 618 Fed. App'x. 624, 628 (11th Cir) (per curiam), *cert denied sub nom. Frank v. Poertner*, 136 S.Ct. 1453 (Mar. 21, 2016)  "When the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund."  *Harris v. Associated Bank, N.A. (In re Checking Account Overdraft Lit.)*, No. 1:09-MD-02036-JLK, 2013 WL 11319244, at *12 (S.D. Fla. Aug. 2, 2013).  And when analyzing the value of non-monetary benefits, courts should consider changes to a defendant's business practices. *See Fought v. Am. Home Shield Corp.*, 668

---

[6] The estimated Value Per Cubic Yard is based upon all Class Members' Proof of Ownership Forms received by Rust as of June 12, 2020 (and is based on the requested awards of fees, expenses, and costs).  Although unlikely, it is possible a participating Class Member may have mailed their Proof of Ownership Form by the June 8, 2020 postmark deadline that has not yet been received by Rust.  Accordingly, this number may vary slightly.  Any revised estimate will be presented to the Court at the Final Fairness Hearing on June 25, 2020.

16

F.3d 1233, 1243-44 (11th Cir. 2011) (portion of fee properly allocated to compensation for "non-monetary benefits [counsel] achieved for the class — like company-wide policy changes..."). *See also George v. Academy Mort. Co.*, 369 F.Supp. 3d 1356 (2019) (holding the class action provided significant non-monetary relief by prompting the defendant to change its practices). This factor weighs in favor of Class Counsel's requested fee.

h)   *The Experience, Reputation, and Ability of the Lawyers*

Class Counsel consists of some of the leading class action lawyers in the United States. Pope McGlamry has extensive experience litigating class actions on both the plaintiff and defense side in venues across the country and have recovered hundreds of millions of dollars for class members over the last thirty years. (*See* ECF No. 203, Ex. A, Tomlinson Decl. at ¶¶ 19, 33-34). Pope McGlamry has developed a national reputation in class action litigation and many of their lawyers have served in leadership positions in MDLs and class actions. (*See* Ex. A, Caplan Decl. ¶ 27). Similarly, Moss & Gilmore has extensive experience with class actions, securities litigation, the False Claims Act, and other complex fraud and contractual litigation. (*See* ECF No. 203 Ex. B, Moss Decl. at ¶¶ 19-21).

i)   *Awards in Similar Cases*

The reasonableness of a fee may also be considered in light of awards made in similar litigation within and without the court's circuit." *Johnson*, 488 F.2d at 719. This case appears to be unique, given the relatively small number of class members who have substantial value averaging over $20,000. Class Counsel was unable to locate instances of factually similar litigation or similar recoveries in cases with comparable class sizes.

Additionally, it is worth noting, the absence of any objection by Class Members to the requested attorneys' fees and reimbursement of costs and expenses is significant and supports the

reasonableness of the requested fee. *In re Friedman's Inc.*, No. 1:03-cv-3475-WSD, 2009 U.S. Dist. LEXIS 43758, at *18 (N.D. Ga. May 22, 2009) (holding that "the lack of objections is 'strong evidence of the propriety and acceptability' of the fee request" (quoting *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992)).

### B.       The Requested Fee is Reasonable Under a Lodestar Cross-Check

The Eleventh Circuit has authorized courts to use the lodestar method as a cross-check on the reasonableness of a percentage-based fee. *Waters v. Int'l. Precious Metals Corp.*, 190 F.3d 1291, 1298 (1999). If this Court decides to do a lodestar cross-check, the requested fee easily passes muster. As of June 9, 2020, Class Counsel has spent 8,056.2 hours on this litigation. The value of this time is $5,000,442.50, calculated using rates, which are reasonable and routinely approved in other class actions. (*See* ECF No. 203, Ex. A, Tomlinson Decl. at ¶ 38; ECF No. 203 Ex. B, Moss Decl. at ¶ 26; Ex. A, Caplan Decl. ¶ 30). Utilizing the lodestar approach, Class Counsel's actual time and hourly rate greatly exceeds the amount of fees and expenses requested. (*Id*). The current rates that Class Counsel charge are consistent with the prevailing hourly rates for complex civil litigation in Georgia.

Pope McGlamry:

| Timekeeper | Position | Hourly Rate | Hours Spent | Amount |
|---|---|---|---|---|
| C. Neal Pope | Shareholder | $1,100 | 16.4 | $18,040.00 |
| Michael J. Moore | Shareholder | $975 | 332.2 | $323,895.00 |
| Jay F. Hirsch | Shareholder | $950 | 75.1 | $71,345.00 |
| Kimberly J. Johnson | Shareholder | $725 | 831.3 | $602,692.50 |
| Wade ("Trip") Tomlinson | Shareholder | $950 | 1,094.7 | $1,039,965.00 |
| Timothy R. Morrison | Shareholder | $950 | 177.8 | $168,910.00 |
| Courtney L. Mohammadi | Associate | $600 | 1,674.6 | $1,004,760.00 |

| Michael P. Morrill | Associate | $525 | 991.4 | $520,485.00 |
| Erica Wofford | Paralegal | $300 | 185.1 | $55,530.00 |
| Stacey Burke | Law Clerk pending bar results / Contract Attorney | $325 | 942.7 | $306,377.50 |
| Amy Busby | Law Clerk pending bar results / Contract Attorney | $325 | 450.9 | $146,542.50 |
| Alyse Calcagno | Law Clerk | $175 | 129.0 | $22,575.00 |
| **PMKM Total** | | | 6,901.20 | $4,281,117.50 |

Moss and Gilmore:

| Timekeeper | Position | Hourly Rate | Hours Spent | Amount |
|---|---|---|---|---|
| Raymond L. Moss | Partner | $925 | 618 | $571,650.00 |
| Eric Van Atta | Paralegal | $275 | 537 | $147,675.00 |
| **Moss & Gilmore Total** | | | 1,155 | $719,325.00 |

Chief Judge Thomas W. Thrash Jr. recently approved similar rates in *In re Equifax Inc. Customer Data Security Breach Lit.*, Case No. 1:17-md-2800-TWT, 2020 WL 256132 at *39-40 (N.D. Ga. Mar. 3, 2020), finding class counsel's rates are reasonable and well supported, including specifically the hourly rates charged by Roy Barnes ($1,050), Ken Canfield ($1,000), Normal Siegel ($935), and Amy Keller ($750). *See also*, *Adams v. Berryhill*, CV 114-104, 2017 WL 2415645, at *3 (S.D. Ga. June 2, 2017) (finding a total award of $20,400.00 for twenty-four hours of representation, with an effective hourly rate of $850.00, is generous and reasonable); *Yarnevic v. Apfel*, 359 F. Supp. 2d 1363, 1365 (N.D. Ga. 2005) (finding $21,057.75 in attorney's fees resulting in a $643.00 hourly rate was reasonable); *Hosley v. Colvin*, No. 5:09-CV-379 (MTT), 2016 WL 7394532, at *2 (M.D. Ga. Dec. 21, 2016) (finding $20,000.00 for 23.40 hours of representation, or $854.70 per hour was reasonable); *Andrews v. Colvin,* No. 5:12-CV-275 MTT, 2014 WL 4287150, at *1 (M.D. Ga. Aug. 29, 2014) (finding $23,177.75 for 32 hours of representation, or $724.31 per hour was reasonable); *Mobley v. Colvin*, No. 1:12-CV-64 WLS, 2014 WL 1320100, at *1 (M.D. Ga. Mar. 31, 2014) (finding fee amounting to $874.00 per hour

was reasonable); *Savage v. Astrue*, No. CIV. A. 5:06CV196CAR, 2010 WL 2012032, at *3 (M.D. Ga. May 20, 2010) (finding $27,310.00 in attorney's fees for 33.8 hours of representation, or $807.99 per hour reasonable).

Class Counsel respectfully submits that there are few lawyers that have the collective expertise in Georgia law and class actions that Class Counsel possesses.  Indeed, Class Counsel includes attorneys who have litigated some of the largest class actions in the history of Georgia. Such experience made possible the favorable resolution of this case.  As such, the fee award is incredibly reasonable.

## III.    The Court Should Reimburse Class Counsel for Their Expenses

It has long been held that "plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action." *Behrens v. Wometco Enters.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).  "Since counsel in a class action will necessarily incur substantial costs and expenses over the course of many years and will presumably have paid the expenses by the time a fee request is considered by the Court, providing for reimbursements of costs and expenses is a component of affording adequate compensation to counsel in order to encourage attorneys to pursue common fund cases." *In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *59 (S.D.N.Y. Aug. 25, 2005).  *Accord North Star Capital Acquisitions, LLC v. Krig*, No. 3:07-cv-264-J-32 MCR, 2011 U.S. Dist. LEXIS 4596, at *18 (M.D. Fla. Jan. 10, 2011) (citing *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983)).

Here, the costs and expenses Class Counsel seek are subsumed within the requested amount of $3,507,000.00.  As of June 10, 2020, Class Counsel reasonably and necessarily incurred $297,759.15 in expenses for items such as court reporter fees; deposition transcripts, concrete

20

testing, document and database reproduction and analysis; e-discovery costs; expert witness fees; travel for meetings, hearings, and depositions, paying the mediator, copying, and other customary expenses.  (*See* ECF No. 203, Ex. A, Tomlinson Decl. at ¶ 36; ECF No. 203 Ex. B, Moss Decl. at ¶ 24; Ex. A, Caplan ¶ 32).  The Court should thus approve Class Counsel's expense reimbursement request. *See, e.g., Columbus Drywall*, 2012 WL 12540344, at *7-8.

## <u>CONCLUSION</u>

For the foregoing reasons, Class Counsel respectfully request that the Court approve the requested fee of $3,507,000, which includes costs and expenses.

Respectfully submitted this 15th, day of June, 2020.

Respectfully submitted,

*/s/ Wade H. Tomlinson, III*
**Wade H. Tomlinson, III**
GA Bar No. 714605
**C. Neal Pope**
GA Bar No. 583769
**Michael J. Moore**
GA Bar No. 520109
**Jay F. Hirsch**
GA Bar No. 357185
**Kimberly J. Johnson**
GA Bar No. 687678
**Courtney L. Mohammadi**
GA Bar No. 566460
POPE, McGLAMRY, KILPATRICK,
MORRISON & NORWOOD, P.C.
3391 Peachtree Road, NE, Suite 300
P.O. Box 191625 (31119-1625)
Atlanta, GA  30326
(404) 523-7706
Fax:  (404)524-1648
Email:  efile@pmkm.com

**Raymond L. Moss**
GA Bar No. 526569
MOSS & GILMORE LLP

3630 Peachtree Road, Suite 1025
Atlanta, GA  30326
(678) 381-8601
Fax:  (815) 364-0515
Email:  rlmoss@mossgilmorelaw.com

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2020, I electronically filed the foregoing **PLAINTIFFS'**
**UNOPPOSED MOTION AND SUPPORTING BRIEF FOR AN AWARD OF**
**ATTORNEYS' FEES, COSTS AND EXPENSES FOR CLASS COUNSEL** with the Clerk of
the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.


       */s/ Wade H. Tomlinson, III*
       **Wade H. Tomlinson, III**
       GA Bar No. 714605
       *ATTORNEY FOR PLAINTIFFS*