**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| JIM McGAFFIN; BECKY McGAFFIN; DANIEL NUNN; and STEFANIE NUNN, <br><br> *Plaintiffs,* <br><br> v. <br><br> ARGOS USA, LLC, <br><br> *Defendant.* | Civil Action File No.: <br><br> <u>4:16-cv-00104-RSB-BKE</u> <br><br> **JURY TRIAL REQUESTED** |

<u>**FINAL ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF
CLASS ACTION SETTLEMENT, CERTIFYING SETTLEMENT CLASS, AND
APPROVING ATTORNEY'S FEES, COSTS, AND EXPENSES AND
INCENTIVE AWARDS**</u>[1]

This matter came before the Court on June 25, 2020, via Video Teleconference, for a fairness hearing regarding the proposed settlement preliminarily approved by the Court on March 24, 2020.  ECF No. 198.  The Court received evidence presented by Class Counsel. No party appeared to object to the settlement.

Pursuant to Fed. R. Civ. P. 23(e), the Court has reviewed the parties' Settlement Agreement and other materials submitted by the parties, heard argument of counsel, and has concluded that the Settlement is fair, reasonable, and adequate and that Final Approval is due to be granted.

Accordingly, **IT IS HEREBY ORDERED**:

---

[1]  For the reasons stated on the record during the June 25, 2020 Video Teleconference hearing, the Court hereby ORDERS that all documents previously filed under seal in this case shall remain under seal until further Order of the Court.

## I.    INTRODUCTION

### A.  Factual Background and Procedural History

This litigation involves new residences in the Savannah, Georgia area (in both Georgia and South Carolina) where Defendant Argos delivered a particular concrete mix for use in the slabs of their homes and on other flatwork on their properties, which concrete is defective in design and warnings.   Named Plaintiffs/Class Representatives and the Class Members own residences where this particular concrete mix was utilized.   They contend that this Argos concrete mixture was neither designed nor intended for slab or flatwork uses and that the slabs and flatwork suffer from surface durability and dusting issues.   They further contend that Argos failed to warn builders and concrete finishers that the concrete mixture delivered to these residences was inappropriate for slab or flatwork concrete.   Argos has vigorously denied liability and defended against these claims.

In litigating this case for more than four years, the parties have conducted significant motions practice and engaged in extensive discovery on class and some merits issues.   Following this Court's certification of a liability class under Rule 23(c)(4) on August 30, 2019 (*see* ECF No. ECF 178), Argos filed a Petition for Interlocutory Appeal, which Plaintiffs opposed in the Eleventh Circuit.   During the pendency of that petition to appeal, the Parties reached a proposed settlement.   This Court preliminarily approved the Parties' settlement and ordered the provision of Notice to the Class on March 24, 2020. (ECF No. 198).

### B.  Material Terms of the Settlement:

#### 1.   The Settlement Class

The Court conditionally certified the following Settlement Class under Fed. R. Civ. P. 23(b)(3):

All Owner(s) of ascertainable Affected Property (any Residential Property in the State of Georgia or the State of South Carolina with 868 concrete as Flatwork thereon) on March 5, 2020 with at least one yard of Eligible Concrete (the amount of 868 concrete delivered to an Affected Property (expressed in cubic yards) as shown on Argos Delivery Tickets and public records produced during the Litigation, minus any Ineligible Concrete).  Excluded from the Class are:

- Owners of an Affected Property which property has been the subject of a settlement agreement with Argos as to 868 concrete;
- Owners of an Affected Property where 868 was poured only for Footers, or all 868 concrete has been Removed and Replaced from the property by Argos and/or at Argos' expense;
- Owners of an Affected Property who are Argos employees, the spouse of an Argos employee, or child of an Argos employee;
- Owners of an Affected Property who are judicial officers serving on the U.S. District Court for the Southern District of Georgia or on the U.S. Court of Appeals for the Eleventh Circuit; or
- Commercial properties where 868 concrete was poured.

The Court finds, for settlement purposes, that: (a) the members of this Settlement Class are so numerous that joinder of all of them in the action is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of the named Plaintiffs Jim and Becky McGaffin and Daniel and Stefanie Nunn are typical of the claims of the Settlement Class Members; (d) common questions of law and fact exist and predominate over questions affecting only individual Settlement Class Members; and (e) the named Plaintiffs and their counsel have fairly and adequately represented and protected the interests of all the Settlement Class Members and will do so through the completion of the distribution of the Settlement Fund.

2. <u>Monetary Relief</u>

Defendant Argos will, within three (3) days of the entry of this Final Order and Judgment, deposit $6,700,000 into the Settlement Fund.  From that Fund, as discussed more fully *infra* at Section III, an award of $3,507,000 will be distributed to Class Counsel as reasonable attorneys' fees and reimbursement of costs and expenses of the litigation, and incentive awards

of $25,000 will be paid to each of the Class Representatives, Jim McGaffin, Becky McGaffin, Daniel Nunn, and Stefanie Nunn. These disbursements are to be made within ten (10) business days of the Effective Date of the Settlement.

The balance of the Settlement Fund, $3,093,000, is to be distributed proportionally to participating Settlement Class Members who timely submitted a Proof of Ownership Form based upon the amount of Eligible Concrete on such Settlement Class Member's Affected Property. The Settlement Administrator received 150 timely Proof of Ownership Forms, which reflect a total of 5,656.31 cubic yards of Eligible Concrete. Therefore, in accordance with the Allocation Amount formula provided int the Settlement Agreement, the Value Per Cubic Yard of Eligible Concrete is $3,093,000, divided by 5,656.31, the cubic yards of Total Eligible Concrete, or $546.82. The amount of Eligible Concrete was determined for each Affected Property by review of Argos' delivery tickets. The distribution or "Allocation Amount" to participating Settlement Class Members will be equal to the product of the Value Per Cubic Yard ($546.82) and the amount of Eligible Concrete on their Affected Property. This will provide a range of recoveries to the Class Members of $546.82 to $86,670.97.

Separately from the Settlement Fund, Defendant Argos has agreed to pay the expenses of the Settlement Administrator, Rust Consulting, up to $320,000.

3.  Injunctive and Other Relief

Additionally, Defendant Argos has agreed to substantial injunctive and other relief which adds significant non-monetary value to the Settlement. This includes Argos' agreement to (1) not deliver any 868 mix for residential uses from any of its United States locations, (2) perform rigorous testing to confirm and document the strength and durability of any concrete that has a fly ash percentage greater than 50% for residential flatwork, and (3) disclose to any

4

purchaser of residential concrete if the percentage of fly ash in a mix equals or exceeds 45%. Additionally, Argos expended over $400,000.00 and hundreds of hours in employee time remediating or paying for the remediation of many Settlement Class Members' properties. Argos USA, LLC's Vice President of Ready Mix, Richard "Rick" Edwards, affirmed that a reasonable estimate of the value of this additional non-monetary relief is at least $3,000,000. *See* ECF No. 202, Edwards Decl. at ¶¶ 6-10. The Court finds this estimate to be credible and, given that no opposition to this or any other provision of the Settlement has been submitted, accepts this valuation of the non-monetary relief. The Court therefore finds the total monetary and non-monetary value of the Settlement to be $10,020,000.

4. Release of Claims

In consideration of the monetary and non-monetary relief provided by Defendant Argos, the Class has agreed to release Argos from any claim arising out of or in any way relating to the 868 concrete, whether known or unknown, whether asserted or that could have been asserted, with the exception of medical harm and personal injury claims, are released. The Release is set forth in full in the Settlement Agreement and was additionally provided to the Class in the Class Notice. *See* ECF No. 197-1; ECF No. 203, Ex. D, Steinhart Decl. at pp. 6, 8.

5. Attorneys' Fees and Expenses and Incentive Awards

Class Counsel have applied for a percentage-based fee of $3,507,000, which fee includes $297,759.15 in reasonable costs and expenses. This fee amounts to 35% of the total settlement value of $10,020,000, in accordance with the terms of the Settlement Agreement, and was negotiated by the parties only after the negotiations regarding the relief to be afforded to the class had concluded. Additionally, Class Counsel have applied for incentive awards of $25,000 to each of the named Plaintiffs/ Class Representatives, which Argos has agreed to pay in addition to

the $6,600,000 settlement fund for Class Members.   Under prevailing precedent and the circumstances of this case, these requests are reasonable, and for the reasons set forth in more detail *infra*, the requests will be approved.

   6. Notice

  The evidence before the Court confirms that all 495 class members were mailed class notice in accordance with all applicable requirements.   Although 16 Notices were returned as undeliverable, 15 of those were re-issued to a forwarding address based on information provided by the postal service and through skip-tracing by the Settlement Administrator.  *See* ECF No. 203, Ex. D, Steinhart Decl. at ¶ 7.

  "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B).   The Court's preliminary approval order approved the Parties' Notice and Notice Plan, finding that they satisfied Rule 23(c)(2)(B) and 23(e)(1)(B).  The Notice explained the nature of the action, defined the class, detailed the claims, issues, and defenses, explained the requirements for objections and exclusions, and explained the binding effect of the class judgment on the members of the Class.  *See* Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).   The Notice was mailed to all Class Members who could be identified by Class Counsel and the Claims Administrator through reasonable effort. *See* ECF No. 203, Ex. D, Steinhart Decl. at ¶¶ 3, 5.  The Court finds that the requirements of Rule 23(c)(2)(B) and Rule 23(e)(1)(B) have been met.

  **B.** **Compliance with 28 U.S.C. § 1715**

  The Parties' Settlement is subject to 28 U.S.C. § 1715.  Per that statute, Defendant was required, within ten days after the proposed class action settlement was filed, to provide notice of the proposed settlement to: (1) the U.S. Attorney General; and (2) the State Attorneys General of

Georgia and South Carolina. Defendant has represented through counsel that these notices were timely provided. *See* ECF 201.  Accordingly, 28 U.S.C. § 1715 has been satisfied.

## II.    FINAL APPROVAL OF PROPOSED SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS

The Court, having considered the Settlement Agreement, the submissions of the parties in support of the Motion for Preliminary Approval and Motion for Final Approval of the Settlement, and the Parties' argument at the final approval hearing on June 25, 2020, hereby finds the Settlement is fair, reasonable, and adequate, and certifies the Settlement Class.

### A.  The Proposed Settlement is Fair, Reasonable, and Adequate

Settlements of class actions are favored. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The proposed Settlement Class here was preliminarily approved on March 24, 2020, after the Parties submitted their proposed settlement and supporting briefs.  (*See* ECF No. 198).   Upon final review after class notice, the Court finds that the settlement satisfies the requirements for final approval.  The *Bennett* factors guide whether courts approve proposed class settlements in the Eleventh Circuit, requiring consideration of: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.  *See, e.g.*, *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558-59 (N.D. Ga. 2007); *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1217 (11th Cir. 2012) (court must make findings that settlement "is not the product of collusion" and "that it is fair, reasonable and adequate").

Following the 2018 amendments to Rule 23, courts also consider the (largely overlapping) factors listed in Rule 23(e)(2) including:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### 1. The Class Was Adequately Represented

The first prong of Rule 23(e)(2) requires evaluating whether the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). Traditionally, adequacy of representation has been considered in connection with class certification, evaluating: "(1) whether [the class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555.

Adequacy is satisfied.  The Class Representatives share the same interests as absent Class Members, assert the same claims stemming from the same event, and share the same injuries. They have no claim and no interest different from or antagonistic to absent Class Members. The Class Representatives vigorously prosecuted this action leading to the proposed settlement, actively participating in discovery, attending hearings, and permitting multiple inspections of their homes. They have retained and diligently worked with counsel experienced in class actions, as the Court found in appointing Plaintiffs' counsel as Class Counsel.  Class Counsel also worked diligently, for more than four years, to bring this case to resolution.  No Class Members submitted any objection to the Settlement, and only one opted out, indicating that the Class is satisfied with the representation provided by Class Counsel and the Class Representatives.

2.   <u>The Settlement Was Negotiated at Arm's Length</u>

The parties have shown that the settlement was the product of informed, arms-length negotiations among Plaintiffs, Defendant, and their respective counsel.  This case involved substantial motion practice and discovery, as well as two lengthy hearings on Plaintiffs' Motion for Class Certification and several related *Daubert* motions.  Throughout much of that process, the parties were negotiating, in an attempt to reach a fair and reasonable settlement.  Following the partial grant of Plaintiffs' Motion for Class Certification, those discussions intensified, and the Settlement was reached at arms-length following extended negotiations.

3.   <u>The Relief Provided to the Class is Adequate</u>

As discussed above, the monetary and non-monetary relief provided to the Class by the Settlement is substantial.  Class Members who timely submitted Proof of Ownership Forms for their Affected Properties stand to receive an average payout of $20,757.29.  This is a significant recovery in any litigation, and is even more so when considered in light of the risks, cost, and delay of continued litigation, as further discussed below.

a.   *The Risks, Costs, and Delay of Continued Litigation*

This litigation has lasted more than four years.  Significant motions practice has been conducted at the Rule 12 stage, class certification stage, and on experts and document confidentiality/sealing.  The parties completed extensive class discovery prior to the Motion for Class Certification, including twenty-four depositions.  Although the Court partially granted Plaintiffs' Motion for Class Certification, that Order is pending Defendant's request for interlocutory appeal in the Eleventh Circuit.  Should the Order be affirmed, merits discovery would proceed, followed by the summary judgment stage and trial.  Additionally, the Court's certification under Rule 23(c)(4) encompassed the issues of causation and defect, leaving the

question of damages, such that any class-wide trial on these limited issues would not finally determine the litigation. Each class member would then be required to prove the amount of damages. Ultimately, the costs and delay of such extended procedure are immense, and support that the settlement is fair, reasonable, and adequate.

Further, the risks to Plaintiffs of a smaller recovery than that obtained through the Settlement, or even of no recovery at all, are also significant. While Plaintiffs support that the certification of a Rule 23(c)(4) "issue" class is correct in this matter, Defendant has sought an interlocutory appeal to the Eleventh Circuit, implicating novel issues of law not fully resolved in this Circuit. Therefore, there remain risks of decertification on top of the typical risks associated with any litigation. The Court therefore finds the risks, costs, and delay of continued litigation weigh in favor of approving the Settlement

b. *The Method of Distributing Relief is Effective*

The method for distributing the Settlement Fund is effective. Under the Settlement, the Settlement Class Members who timely submitted a Proof of Ownership Form to the Settlement Administrator will receive compensation from the Settlement Fund between $546.82 and $86,670.97, with an average payment of $20,757.29. These payments are reasonably and rationally related to the problem they are intended to remedy, namely the allegedly defective 868 concrete on their properties. Each payout is based directly on the amount of 868 concrete on each Class Member's Affected Property which was poured for slabs or flatwork that was not remediated or replaced at Argos' expense. Class Members will receive Allocation Amounts based on the amount of Eligible Concrete on their Affected Property, as a percentage of the Total Eligible Concrete (defined as the number of cubic yards for which Proof of Ownership forms were timely filed). This factor likewise weighs in favor of approving the Settlement.

c.  *The Terms Relating to Attorneys' Fees are Reasonable*

The third consideration under Rule 23(e)(2)(C) is whether the attorneys' fees requested under the settlement are reasonable.  Fed. R. Civ. P. 23(e)(2)(C)(iii).  Here, Class Counsel are requesting a fee based on a percentage of the benefits available to the class.  As addressed in detail below, the Court finds that the request is reasonable under prevailing precedent and the facts of this case.  As such, this factor weighs in favor of approving the settlement.

d.  *Agreements Required to Be Identified Under Rule 23(e)(3)*

The Rule requires the Court to consider any agreements required to be identified under Rule 23(e)(3).  Counsel represent that no such agreements exist as to this Settlement, and none has been brought to the Court's attention.

4.  <u>The Class Members are Treated Equitably Relative to Each Other</u>

The final Rule 23(e)(2) factor asks whether the Settlement provides equitable "treatment of some class members vis-à-vis others," and whether it apportions "relief among class members [that] takes appropriate account of the differences among their claims[.]" Adv. Comm. Notes 23(e)(2) (2018).  As discussed above, each Settlement Class Member who timely submitted a Proof of Ownership Form will be entitled to a payment based directly on the amount of 868 concrete on their Affected Property.  In this way, while Class Members will not all receive the same cash relief, the relief they are provided "takes appropriate account of the differences among their claims[.]"  As Plaintiffs' concrete expert, Brian Wolfe, stated in his declaration, "the settlement's compromise damages model or allocation plan . . . based upon Argos delivery tickets, is an appropriate methodology to fairly allocate the settlement funds among property owners."  *See* ECF No. 203, Ex. C at ¶ 6.  Also of note, the Settlement here set a floor for every Class Member's recovery, but the entire Settlement Fund (less fee and incentive awards) will be

distributed in a mathematically equitable fashion.  Thus, those Class Members who timely filed Proof of Ownership Forms for an Affected Property will receive larger Allocation Amounts due to other Class Members' non-participation because Allocation Amounts are based on the cubic yards of Total Eligible Concrete for which Proof of Ownership forms were filed.  None of the Settlement Fund reverts to Argos based on the participation rate.

Further, the lack of any objection to the Settlement indicates the Settlement Class Members are in agreement that the distribution plan is fair and equitable.  Moreover, all Class Members – even those who did not timely submit a Proof of Ownership Form – benefit from the injunctive relief provided by the Settlement, including significant safety precautions that Defendant will implement, valued at approximately $3 million. *See* ECF No. 202, Edwards Decl. at ¶¶ 6-10.

The Rule 23(e)(2) factors adopted in the 2018 amendments thus support that the Settlement is fair, reasonable, and adequate

5.   The *Bennett* Factors Support Approving the Settlement

Eleventh Circuit precedent also requires the Court to consider the factors provided in *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984). These factors include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011). Many *Bennett* factors overlap those found in Rule 23(e)(2); all of them support final approval.

As discussed above, the ultimate outcome of this litigation absent settlement is far from certain.  Factors (1), (4), and (6) all weigh in favor of approving the settlement.  Success at trial is always uncertain, but the complexity, expense, and likely protracted litigation that would be expected in this case increase the chances that Plaintiffs and the Class might not ultimately succeed in this case.  For the reasons discussed above regarding the novelty and uncertainty of a Rule 23(c)(4) "issue" class, these factors weigh in favor of approval.  Likewise, the proceedings were at a crucial stage for both sides when the agreement was reached.  Although the Plaintiffs obtained an issue-class certification, Defendant Argos partially succeeded in fending off certification and has sought an interlocutory appeal of the certification order.  Both sides faced significant risk and substantial expense, both in money and time, in further litigation and thus shared a genuine interest in reaching an adequate compromise for both sides.

The terms of the Settlement are well within the range of possible recovery in this case and within the range where a settlement is fair, reasonable, and adequate.  The Settlement Fund obtained for the Class by Class Counsel is significant, and the range of payouts to individual Settlement Class Members is undoubtedly within, if not exceeding, the range of likely recovery following protracted litigation given the claims and types of damages that remained available to the Plaintiffs.  These factors support approval.

As no Class Member objected to the Settlement, the fifth *Bennett* factor weighs decidedly in favor of approval.  The lack of complaint from the Class Members strongly indicates a fair, reasonable, and adequate recovery.

**B.  Class Certification is Appropriate**

Even where certifying a class under Rule 23 for settlement purposes only, Rule 23(a) and at least one part of Rule 23(b) must be satisfied.  *Amchem Products, Inc. v. Windsor*, 521 U.S.

591, 613-14, (1997).  The Court previously determined that the requirements of Rules 23(a) and (b)(3) were likely to be satisfied, and now affirms that they have been satisfied.

1.   The Requirements of Rule 23(a) Are Satisfied

a.  *Numerosity*

The proposed Class consists of 495 homeowners in Georgia and South Carolina, rendering individual joinder impracticable.  Numerosity is satisfied.

b.  *Commonality*

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' such that 'all their claims can productively be litigated at once.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011).  All members of the Class suffered the same injury from the same conduct – allegedly defective concrete, of the same mix design, poured on their properties in slabs or flatwork – and are asserting the same legal claims.  Each Class Member's property has the same type of concrete poured for flatwork applications for which Plaintiffs contend it was not suited.  Therefore, questions of fact and law are common across the Class.

c.  *Typicality*

As discussed *supra*, the Class Representatives' claims are typical of the Class as a whole because they arise from the same facts and involve the same legal theories.  Typicality is satisfied.

d.  *Adequacy of Representation*

The Court has previously determined that the Class Representatives do not have any interests antagonistic to the other Class Members.  Further, as discussed in more detail *infra*, the

attorneys retained by Plaintiffs and appointed Class Counsel by the Court are highly qualified and experienced.  This factor is satisfied.

2.   The Requirements of Rule 23(b)(3) Are Satisfied

a.   *Predominance*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to … relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016).

The Court finds that common questions predominate in this case as every person in the Class received the same allegedly-defective concrete mix, which defect is consistent across the entire Class. The Class has been impacted by conduct equally applicable to each Class Member. The only potentially significant individual issues involve damages, which rarely present predominance problems. *See, e.g.*, *Home Depot,* 2016 WL 6902351, at *2; *In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299, 311-16 (N.D. Cal. 2018); *see also Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) (individualized damages generally do not defeat predominance).

b.   *Superiority*

"The inquiry into whether the class action is the superior method for a particular case focuses on increased efficiency." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (internal quotation omitted). "The focus of this analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the

plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted).

Here, Plaintiffs and Class Counsel have shown that the costs associated with bringing this suit would dwarf any recovery that could be expected by an individual plaintiff. In fact, out of the entire Class, only the named Plaintiffs have taken the step of bringing a lawsuit. This indicates that individual actions are not realistically available to the plaintiffs, and that a class action is the superior method.

### III. PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES, AND MOTION FOR INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES

#### A. The Requested Fee is Reasonable Under the Percentage Method

In the Eleventh Circuit, the calculation of attorneys' fees in class actions is done under the percentage method. *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991). The Eleventh Circuit has suggested a "benchmark" of 25% of the class recovery, but this "is no hard and fast rule . . . because the amount of any fee must be determined upon the facts of each case. *Id.* at 774. In selecting the percentage in a particular case, a district court should apply the factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), as well any other pertinent factors. *Camden I*, 946 F.2d at 776. The pertinent *Johnson* factors are discussed below.

Additionally, this Court "has wide discretion to award attorneys' fees based on its own expertise and judgment because of 'the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Dikeman v. Progressive Exp. Ins. Co.*, 312 F. App'x. 168, 171 (11th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Additionally, "the attorneys' fees in a

class action can be determined based upon the total fund, not just the actual payout to the class." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014).

### 1. The Time and Labor Involved

This case is now over four years old. Class Counsel engaged in extensive motions practice, discovery (depositions and document review, as well as expert testing, reports, depositions, and motions), hearings, and other efforts over those years. The total recorded time for attorneys and staff at Pope, McGlamry and Moss & Gilmore exceeds 8,000 hours. The fee requested is well supported by the time and labor expended by Class Counsel.

### 2. The Novelty and Difficulty of the Questions

The Court finds that this case presented many novel and difficult legal questions, including what damages, if any, Plaintiffs could recover under the economic loss rule. Additionally, the parties vigorously contested class-certification issues. There were significant disputes over scientific and economic opinions, as well. The use of Rule 23(c)(4) and argument for an "issues-only" class by Class Counsel in seeking class certification was unusual and creative and ultimately led to the certification of a class for the purposes of determining Argos' liability and causation. The skill of Class Counsel in making such an argument led to substantial benefits to the Class.

### 3. The Skill Required to Perform the Legal Services Properly and the Experience, Reputation, and Ability of the Lawyers

This is a class action involving a product delivered to real property, an area where few class action attorneys tread. The skill necessary to litigate this case, especially in light of the consistently tough opposition of reputable law firms with significant resources, is high. Further, Class Counsel has extensively detailed their experience and reputation in the Declarations of Wade Tomlinson, III and Raymond L. Moss. *See* ECF No. 203, Exs. A & B. The Court finds

the skill required to litigate this case and the experience, reputation, and ability of Class Counsel to support the reasonableness of the fee award.

### 4. The Preclusion of Other Employment

"This guideline involves the dual consideration of other available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718.  The amount of time required to prosecute this action limited the amount of time and resources Class Counsel could devote to other matters over the last four years.  This factor supports the fee award.

### 5. The Customary Fee

Class Counsel explained that each firm generally practices under contingent fee agreements with recoveries between 40% and 50%, depending on the risk associated with a particular case.  Given the risks involved in this case, the requested fee of 35% (including expenses) is well below the "customary fee" that Class Counsel would otherwise charge.

### 6. Whether the Fee is Fixed or Contingent and the "Undesirability" of the Case

Class Counsel stated that their agreement with the named Plaintiffs is an entirely contingent fee basis.  To date, Class Counsel has incurred significant expenses, in the hundreds of thousands of dollars, in prosecuting the case and has not yet received any compensation.  Further, as stated above, class action cases involving products liability claims and real property involve many thorny issues and are often avoided by experienced class action attorneys.

### 7. Time Limitations Imposed by the Client or Circumstances

This factor does not impact the reasonableness determination in this case.

18

8.  The Amount Involved and the Results Obtained

As detailed above, the Settlement involves significant monetary and non-monetary value for the Class.  Class Counsel negotiated a settlement worth $10.02 million, including $6.7 million in cash.  The monetary award for each Class Member who timely submitted a Proof of Ownership Form will be significant, ranging from approximately $546.82 to $86,670.97, with an average of approximately $20,757.29.  This is a significant benefit and recovery for Class Members.

Considering the complexities of this case, the vigorous defense of highly skilled opposing counsel, and the risks of the requested appeal, this is an excellent recovery in the face of a very real chance the Class would not recover anything.  In addition to substantial monetary benefits for participating Class Members, Class Counsel negotiated other non-monetary benefits, including Argos' agreement not to provide 868 concrete for residential uses anywhere in the United States, and agreements to rigorously test any concrete mix with fly ash percentage above 50% and disclose the fly ash contact to any purchaser of residential concrete if the percentage of fly ash in a mix equals or exceeds 45%.  *See* ECF No. 202, Edwards Decl. at ¶¶ 6-10.  This recovery, valued at over $10 million, is a significant result for the Class.  Courts may consider the non-monetary relief provided to the Class as "part of the settlement pie." *Poertner v. Gillette Co.*, 618 Fed. App'x. 624, 628 (11th Cir) (per curiam), *cert denied sub nom. Frank v. Poertner*, 136 S.Ct. 1453 (Mar. 21, 2016)  "When the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund." *Harris v. Associated Bank, N.A. (In re Checking Account Overdraft Lit.)*, No. 1:09-MD-02036-JLK, 2013 WL 11319244, at *12 (S.D. Fla. Aug. 2, 2013).  And when analyzing the value of non-monetary benefits, courts should consider changes to a defendant's business

practices. *See Fought v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243-44 (11th Cir. 2011) (portion of fee properly allocated to compensation for "non-monetary benefits [counsel] achieved for the class — like company-wide policy changes..."). *See also George v. Academy Mort. Co.*, 369 F.Supp. 3d 1356 (N.D. Ga. 2019) (holding the class action provided significant non-monetary relief by prompting the defendant to change its practices). This factor weighs in favor of the requested fee.

9.       Fee Awards in Similar Cases

The request of 35% of the total settlement value is in line with percentage fee awards in other class actions. *See, e.g., Waters v. Cooks Pest Control*, No. 2:07-cv-00394-LSC, 2012 WL 2923542 at \*16 (N.D. Ala. July 17, 2012) (awarding 35% of the fund as reasonable); *Faircloth v. Certified Finance Inc.* No. Civ. A. 99-3097, 2001 WL 527489 (E.D. La. May 16, 2001) (awarding attorneys' fees in the amount of 35% of the settlement value plus interest and reimbursement of expenses). In this case, Class Counsel's request of 35% of the total settlement value includes reimbursement of costs and reasonable expenses, which totaled nearly $300,000. The Court further notes that while the requested fee is 35% of the total recovery, after expenses and costs are subtracted, the fee itself is 32.01%. Therefore, the fee requested is below that of other approved fee awards and, in light of the *Johnson* factors, is reasonable.

**B. A Lodestar Cross-Check Supports the Requested Fee**

While not required, this Court finds that a lodestar cross-check of the requested fee further supports its reasonableness. Class Counsel included a table of hourly rates, hours expended, and the resulting fees under a lodestar calculation in its Motion for Attorneys' Fees. *See* ECF No. 204 at pp 18-19. Mike Caplan, a well-respected class action attorney based in Atlanta, has attested to the reasonableness of the fees proposed by Class Counsel. *See* ECF No.

204, Ex. A, Caplan Decl., at ¶¶ 31-33.  Class Counsel calculates the value of their time to total $5,000,442.50, significantly more than the requested percentage-based fee, even without including expenses.  Based on Mr. Tomlinson, Mr. Moss, and Mr. Caplan's declarations and the Court's knowledge and experience in the practice of law, the rates and hours claimed by Class Counsel are reasonable and appropriate.   The lodestar cross-check further supports that the requested fee is reasonable.

### C.  Reimbursement of Class Counsel's Expenses

It has long been held that "plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action."  *Behrens v. Wometco Enters.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).  Over four years of litigation in this case, including twenty-four depositions taken around the country, Class Counsel incurred nearly $300,000 in expenses for items such as court reporter fees; deposition transcripts; concrete testing; document and database reproduction and analysis; e-discovery costs; expert witness fees; travel for meetings, hearings, and depositions, mediator fees, copying, and other customary expenses.  (*See* ECF No. 203, Ex. A, Tomlinson Decl. ¶ 36; ECF No. 203, Ex. B, Moss Decl. at ¶ 24; and ECF No. 204, Caplan Decl. at ¶32).  These reasonable expenses are subsumed within Class Counsel's reasonable percentage-based fee request, and the Court finds these expenses reasonable and appropriate.

The Court hereby GRANTS' Class Counsel's Motion for an Award of Attorneys' Fees, Costs, and Expenses and awards Class Counsel $3,507,000.

### D.  The Incentive Awards are Appropriate

Courts routinely approve incentive awards to compensate class representatives for the services they provide and the risks they incur on behalf of the class.  *See, e.g., Ingram v. The*

*Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001); *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006).  Here, the parties negotiated incentive awards of $25,000 for each Class Representative separately and following the negotiation of the settlement fund for the Class as a whole.  The $100,000 requested is in addition to the $6,600,000 Settlement Fund negotiated by the parties (although the entire $6.7 million will be deposited in the same fund for ease of administration).  Therefore, the requested awards do not diminish the recoveries for the remainder of the Class.

The Class Representatives have put forth significant time and effort on behalf of the Class.  They have been involved in this case for over four years, since before the complaint was filed.  Three of the four were deposed during discovery.  They opened their homes to allow inspection and testing by the parties and allowed multiple cores to be drilled out of their concrete.  In short, the Class Representatives have diligently prosecuted the interests of the Class.

Further, the agreed-upon incentive awards were fully disclosed in the Class Notice approved by the Court, and no Class Member objected to the incentive awards (or any other aspect of the Settlement).  The lack of objection strongly supports that the requested award is reasonable and appropriate.

Lastly, the requested award is comparable to awards approved in other cases.  *See, e.g., Allapattah Servs.*, 454 F. Supp. 2d at 1218-19 (collecting cases and listing incentive awards of $25,000, $20,000, $10,000, $3,000, $2,000, $1,500); *Ingram,* 200 F.R.D. at 694 (approving $300,000 award to named plaintiff); *Hainey v. Parrott,* No. 1:02-CV-733, 2007 WL 3308027, at *3 (S.D. Ohio Nov. 6, 2007) (approving four $50,000 incentive awards); *Brotherton v. Cleveland,* 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001) (approving $50,000 incentive award);

*Muransky v. Godiva Chocolatier, Inc.*, 922 F. 3d 1175 (11th Cir. 2019) (approving $10,000 incentive award); *Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

The substantial role played by Class Representatives justifies the requested incentive award, and the Court hereby GRANTS to each Class Representative an incentive award of $25,000.

## IV.    CONCLUSION

**WHEREFORE** for the foregoing reasons, the Court hereby:

GRANTS Plaintiffs' Unopposed Motion for Final Approval of the Class Settlement;

CERTIFIES the settlement class pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e);

CERTIFIES the above-stated Class, and APPOINTS Jim McGaffin, Becky McGaffin, Daniel Nunn, and Stefanie Nunn as Class Representatives and Pope McGlamry and Moss and Gilmore as Class Counsel;

DIRECTS the Parties to proceed to fulfill the terms of their Settlement Agreement;

GRANTS Plaintiffs' Motion for an Award of Attorneys' Fees, Costs and Expenses in the amount of $3,507,000; and

GRANTS Plaintiffs' Motion for Incentive Awards for Class Representatives in the amounts of $25,000 per Class Representative.

The Court hereby RETAINS JURISDICTION to enforce the terms of the Settlement Agreement, including distribution of the Settlement Fund to the Class, the payment of attorneys' fees and incentive awards, and the fulfillment of the injunctive relief agreed-to by Argos.

**SO ORDERED**, this 26th day of June, 2020.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA